# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CMG WORLDWIDE, INC., and MARILYN MONROE, LLC, ) ) ) Plaintiffs, ) ) v. ) ) BRADFORD LICENSING ASSOCIATES, ) THE SHAW FAMILY ARCHIVES, LTD., ) and JAMES E. DOUGHERTY, ) ) Defendants. ) | CASE NO. 1:05-cv-0423-DFH-WTL |

## AFFIDAVIT OF LEN REITER

After having first been duly sworn, Len Reiter states:

1. I am an adult over the age of eighteen (18), have personal knowledge of the matters stated herein, and am competent to attest to such matters.

2. I am currently the president of Bradford Licensing Associates ("Bradford"). I have held this position since 1984.

3. Bradford is a New Jersey business entity with its primary place of business located at 209 Cooper Avenue Upper Montclair, New Jersey. Bradford is a full service licensing agency that assists entities that own intellectual properties and earns licensing fees from the goodwill associated with those properties, *i.e.*, it facilitates contractually – based agreements through which an individual or entity pays licensing fees to use images owned by its clients. Bradford's responsibilities are assigned contractually by the property rights owner rather than any licensee. Accordingly, Bradford's responsibilities

and duties are specified in the representation agreements its signs with the property rights holder.

4. Bradford has never advertised or solicited business in Indiana through visits, telephone calls, written communications or otherwise, and I am unaware of any Bradford representative and/or agent having ever made any trip to Indiana on any Bradford-related business.

5. Bradford has no office, employees or agents located in the State of Indiana. There are no known records or incidents of any Bradford employee ever being in Indiana on Bradford related business.

6. Bradford has never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than this action.

7. Bradford has no governmental licenses in Indiana.

8. Bradford has never entered into any contractual relationship with any resident or citizen of Indiana or any business entity with its primary place of business in Indiana.

9. Bradford maintains a passive worldwide web Internet site located at http://www.bradfordlicensing.com (the "Internet site"), and Bradford does not accept orders or conduct business directly through this Internet site. A true and accurate paper reproduction of Bradford's Internet site is attached hereto as Exhibit A.

10. On or about February 1, 2004, Bradford entered into a Licensing Representation Agreement with Valhalla Productions ("Valhalla"), a New Hampshire Company with its principal place of business in New Hampshire (the "Representation

Agreement"). A true and accurate copy of the Representation Agreement is attached hereto as Exhibit B.

11. Pursuant to the Representation Agreement, Valhalla employed Bradford to market its intellectual property rights relating to photographs owned by the Jim Dougherty and Norma Jeane Limited Collection and the Shaw Family Archives relating to a documentary movie entitled Marilyn's Man (the "Marilyn's Man property") on a worldwide basis. The Representation Agreement was expressly made subject to the parties' understanding and agreement that Bradford does not do business in the State of Indiana.

12. Pursuant to the Representation Agreement, Bradford has facilitated some licensing agreements between Valhalla and other business entities relating to the Marilyn Man's property (the "Agreements"). A true and accurate copy of a representative Agreement is attached hereto as Exhibit C. Most of these Agreements involve European and/or Australian business entities. Regardless, at Bradford's insistence, the Agreements specifically provide language in Section 1.1 governing the grant of license that "LICENSEE understands that advertising and distribution of said Licensed Products through retail, mail order catalogs, the internet and any other form of commerce must preclude sales in the state of Indiana, USA." Bradford insists that this is standard language in the agreements it facilitates. To the extent that any entity marketed or sold Marilyn's Man products in Indiana, it did so in violation of its representations to Bradford and the terms and conditions of its Agreement with Valhalla.

13. Further, Bradford was not actually a party to any of the Agreements—its only contractual relationship relating to the Marilyn's Man property is with Valhalla.

Additionally, none of the Agreements involve entities located in or primarily doing business in Indiana. Instead, as set forth above, Bradford insisted and the Agreements specifically command that any and all of the entities with whom Bradford assisted Valhalla in reaching Agreements were not to advertise, sell and/or conduct business relating to the Marilyn Man's products in Indiana.

14. Additionally, though Bradford has done no business with any Indiana entities, in 1992 Bradford entered into a contractual relationship with Pez Candy, Inc. ("Pez"), a New York Corporation with its primary place of business located in Connecticut. Pez wanted Bradford's assistance in licensing its famous brand name for use by others. Pursuant to this relationship, Bradford assisted Pez with the facilitation of a License Agreement between Pez and Playing Mantis, Inc. ("Playing Mantis"), an Indiana Corporation with its primary place of business in Indiana. Pez and Playing Mantis thereafter entered into a Licensing Agreement, which was renewed by Pez and Playing Mantis from 1997 until its termination in 2004. A true and accurate representative copy of a License Agreement is attached hereto as Exhibit D. The subject of the License Agreement was the authorization of Playing Mantis to manufacture die cast miniature trucks displaying the Pez brand. At no time did the License Agreement and/or the relationship between Pez and Bradford involve or relate to Marilyn Monroe or any images of Marilyn Monroe.

15. Bradford has never contracted with Playing Mantis. Its only contract was with Pez.

16. Pursuant to the License Agreement, Playing Mantis sent quarterly sales reports to Pez, which were then carbon copied to Bradford. Based on the figures and

pursuant to the License Agreement, Playing Mantis paid Pez approximately $50,000 in licensing fees from 1997 through 2004. Playing Mantis never paid any money to Bradford. During this same period, Pez paid approximately $15,000 to Bradford pursuant to its contract with Bradford. Again, Bradford received no fees directly from Playing Mantis.

17. Finally, on or about December 16, 2004, Bradford received unsolicited emails from The Time Factory, a business entity with its principal place of business in Indianapolis Indiana inquiring into the possibility of obtaining a license in the Marilyn's Man property. A true and accurate copy of the emails is attached hereto as Exhibit E.

18. Bradford refused to enter into any contractual arrangement with The Time Factory on the grounds that Bradford does not do business in Indiana.

19. Bradford has made no efforts to serve, directly or indirectly, the Indiana market for its services. In fact, Bradford has specifically structured its business activities to avoid the privilege of conducting business in Indiana.

FURTHER AFFIANT SAITH NOT

I affirm, under the penalties for perjury, that the foregoing representations are true to the best of my knowledge.

Dated: 5/20/05

958577.1