# Exhibit B

```
```
# 

# TABLE OF CONTENTS

SUBJECT                                                                                                             PAGE

1. Definitions...........................................................................................................1

2. Objectives of Licensing Program......................................................................2

3. BLA's Role, Responsibilities and Obligations....................................................2

    3.1. BLA's Role, and Responsibilities..............................................................2
    3.2. BLA's Obligations....................................................................................4

4. OWNER's Role, Responsibilities and Obligations.............................................4

    4.1. Resources.................................................................................................4
    4.2. Legal........................................................................................................4
    4.3. Identification of BLA................................................................................5

5. Confidentiality....................................................................................................5

6. Warranties..........................................................................................................5

    6.1. OWNER's Warranties..............................................................................5
    6.2. BLA's Warranties....................................................................................6

7. Indemnification...................................................................................................6

    7.1. Indemnities to OWNER............................................................................6
    7.2. Indemnities to BLA...................................................................................6

8. Exclusivity..........................................................................................................6

9. Reservation of Rights.........................................................................................7

10. Territory...........................................................................................................7

11. Term.................................................................................................................7

    11.1. Commencement......................................................................................7
    11.2. Renewal.................................................................................................8

12. Limitations on Liability....................................................................................8

13. Compensation...................................................................................................8

    13.1. BLA Compensation................................................................................8
    13.2. Expenses................................................................................................8
    13.3. Post-Term Licenses and Compensation..................................................9
    13.4. Licensee Payment...................................................................................9
    13.5. BLA's books and records; inspection; inspection by OWNER..............9
    13.6. Compensation and reimbursement of BLA...........................................10

14. Return of Material..........................................................................................10

15. Independent Counsel. .....................................................................................................10

16. Miscellaneous. ..............................................................................................................10
    16.1. Notice. ..................................................................................................................10
    16.2. Independent Contractor. .......................................................................................10
    16.3. Entire Agreement/Waiver. ...................................................................................11
    16.4. Assignment ..........................................................................................................11
    16.5. Headings. .............................................................................................................11
    16.6. Governing Law. ...................................................................................................11
    16.7. Arbitration. ..........................................................................................................11

Case 1:05-cv-00423-DFH-WT Document 67 Filed 06/22/2005 Page 3 of 15

# LICENSING REPRESENTATION AGREEMENT

Agreement made as of February 1, 2004 between Valhalla Productions, a New Hampshire company, having it's principal place of business at PO Box 4211 Portsmouth, NH 03802 ("OWNER"), and Bradford Licensing Associates ("BLA"), a New York limited partnership, having its principal place of business at 209 Cooper Ave., Upper Montclair, NJ 07043.

WHEREAS, OWNER has developed and is in the process of further developing certain proprietary intellectual property, and will continue to develop said proprietary intellectual property, including art work, illustrations, names, logos, characters, and related elements (collectively "the Properties"); and

WHEREAS, one of the reasons for creation of the aforesaid intellectual property is to create revenue from it through the licensing of Rights to use it to third parties; and

WHEREAS, OWNER is willing and desirous to grant Licenses on terms satisfactory to it to other parties primarily on a royalty-generating basis to use certain of the Rights related to the aforesaid creative properties as part of a coordinated, planned licensing program; and

WHEREAS, BLA is skilled in marketing, soliciting, negotiating and structuring Licenses as well as in operating and administering the licensing of the Properties; and

WHEREAS, OWNER is engaging the services of BLA in connection with the development, implementation and administration of the licensing of the Properties;

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein, and for other good and valuable consideration, the parties hereby agree as follows:

1. Definitions.

(a) "Rights" means the right to use the Properties including without limitation names, logos, characters, copyrights, trademarks, designs, slogans, fictional locales and similar material now or hereafter developed or owned by OWNER having their origin directly in the Properties developed by OWNER which may be developed on the basis of the concepts of the Properties for purposes including without limitation:

(i) the manufacture, production, and distribution of tangible products making use of such intellectual property primarily for ultimate retail sales specifically including but not limited to apparel and accessories, social expressions (party goods), greeting cards, home furnishings, gift items, novelties and all types of collectibles.

(b) "License" means any grant of Rights by OWNER to a third party whether on a royalty-generating or a fixed fee basis.

(c) "Licensed Products" means any goods, services or promotions manufactured, distributed, sold, provided or otherwise developed or offered under a License.

(d) "Licensee" means any third party to whom OWNER grants a License as well as any other party acting under a License whether as a sub-licensee or otherwise.

(e) "Licensing Revenues" shall mean all revenues from royalties, guarantees, advances and fees engendered through BLA's efforts with respect to licensing the Properties, limited to the rights granted to it under this Agreement, except as limited by paragraph 13.1(a).

(f) "Term" means the period commencing upon execution of this Agreement and continuing until terminated in accordance with paragraph 11.

(g) "Properties" refers to the OWNER's property(ies), as listed in Exhibit A.

2. Objectives of Licensing Program.

2.1. OWNER's objectives in granting Licenses are:

(a) to create a source of income;

(b) to increase consumer visibility of OWNER's intellectual Properties;

(c) to enhance the image and perception of OWNER's Properties, especially by selectively choosing Licensed Products and by regulating the channels of distribution of Licensed Products;

(d) to expand and extend the awareness of OWNER's trademarks into new categories of consumer goods.

3. BLA's Role, Responsibilities and Obligations.

3.1. BLA's Role and Responsibilities. BLA shall endeavor consistent with good business practice to accomplish the above objectives by carrying out the following responsibilities:

(a) New Licensees. To promote and market the Rights in accordance with this Agreement to potential Licensees in all licensing applications and all markets, authorized by this Agreement by: diligently searching for, developing and obtaining new Licenses for OWNER; identifying and approaching prospective Licensees; developing product treatments; negotiating terms and conditions of prospective Licenses;

(b) New Themes and Categories. To develop in conjunction with OWNER new product categories;

2

(c) <u>Administration</u>. To manage OWNER's Licensing program in accordance with this Agreement by:

(i) Handling all aspects of securing new Licenses such as, but not limited to, product approval, art approval, quality approval, Licensee approval, trademark usage, insurance coverage, negotiating contractual obligations within parameters established by OWNER, advertising and packaging approval and the like, all of which shall be subject to OWNER's final approval which shall be at OWNER's sole discretion;

(ii) Supervising and monitoring Licensees to review advertising and promotional activities to oversee adherence to quality control standards, and generally to monitor performance of, and insure compliance with, all other contractual provisions and obligations;

(iii) Supervising and monitoring the financial aspects of the Licenses, including the collection of royalties and all other payments as referred to in paragraph 13, advising as to the untimely payment of royalties and other payments due and the untimely submission of financial reports due as well as analyzing such reports to verify compliance with contractual obligations and assisting in OWNER's efforts to achieve such compliance. Licensee royalty payments are to be made payable to Bradford Licensing Associates and sent to BLA. As part of its responsibilities under this subparagraph BLA may, at OWNER's request, or after recommending such an audit to OWNER, with OWNER's permission, from time to time conduct audits of Licensees or engage others to conduct such audits. The expense of any such audit shall be borne by the parties in the same proportion as the parties share in the revenues generated by such Licensee, unless either party gives notice to the other that it will not participate in the audit, in which case any increased royalties that the audit reveals to be due shall be the property of the party conducting the audit to the extent of the documented cost of audit plus thirty percent (30%) (it being understood that all Licensee agreements will require such licensees to pay the expenses of audits when willful discrepancies are disclosed or when errors in excess of one (1%) per cent of total royalties due are revealed);

(iv) When and if appropriate, coordinating and supervising the joint efforts among Licensees and OWNER to develop and implement joint advertising, merchandising and promotional efforts and programs, subject to OWNER's final approval;

(v) Enhance OWNER's licensing image and visibility in the licensing community as well as with the public by various public relations activities such as, for example, articles in the press, advertisements and trade show booths and the like;

(vi) Maximize OWNER's income and sources of income from licensing.

(d) <u>Unsolicited Requests</u>. To handle unsolicited requests to OWNER or BLA for Licenses;

(e) <u>Consultation</u>. To generally and continually consult with OWNER on all aspects of the development of the Properties including, without limitation, methods of

3

LA_DOCS\372851.1

(e) <u>Consultation</u>. To generally and continually consult with OWNER on all aspects of the development of the Properties including, without limitation, methods of maximizing the exposure and profitability of the intellectual properties underlying the Rights hereunder, and Licensing uses of them;

(f) <u>Foreign Agents</u>. BLA will retain agents in foreign territories. BLA will supervise foreign agents, all of whom shall report directly to BLA.

3.2. <u>BLA's Obligations</u>.

(a) <u>Good Faith Negotiations</u>. BLA has the authority to approach prospective Licensees on behalf of OWNER. It may enter non-binding negotiations and must reveal to all prospective Licensees that it has no final authority to commit OWNER to any agreement. BLA will submit all proposed License agreements in writing to OWNER. OWNER will respond to a proposed License agreement within ten (10) business days after receipt. OWNER will have absolute sole discretion in granting licenses, although OWNER shall not exercise this right unreasonably.

(b) <u>Resources</u>. BLA shall make all reasonable efforts to employ whatever resources are necessary to appropriately discharge its administrative responsibilities and obligations under this Agreement.

(c) <u>Rights</u>. BLA acknowledges that it shall gain no right whatsoever in the Rights by virtue of this Agreement.

4. <u>OWNER's Role, Responsibilities and Obligations</u>.

4.1. <u>Resources</u>. OWNER shall produce any and all statements, agreements and any correspondence from licensee to BLA, and shall provide marketing material, reproducible trademark artwork, style guides and information relating to the Properties, and will appropriately work with BLA to develop and implement the licensing program.

4.2. <u>Legal</u>.

(a) The parties shall each retain and use their own counsel in carrying out their duties under this Agreement. OWNER shall provide all appropriate legal assistance in approving Licenses, collection of payments and reports, enforcement of contractual obligations and filing trademark registrations for all product categories and territories. BLA shall be responsible for preliminary negotiations of licensing agreements, preparing initial drafts of agreements and the legal costs associated therewith. Final decisions regarding such matters shall be in OWNER's reasonable discretion after giving due regard to the maximization of revenue for BLA and OWNER a view towards long range goals of OWNER.

(b) OWNER shall approve a form License agreement which shall be the only form BLA shall use, with no changes except as specifically approved by OWNER; such approval of changes shall be at the sole discretion of OWNER.

(c) OWNER shall have complete and exclusive responsibility for the protection and defense of the Rights. OWNER shall enforce its ownership of the Rights and maintain the Rights in licensable condition. BLA shall promptly notify OWNER of any possible infringements of which it becomes aware or any claims against OWNER brought to its attention and shall provide reasonable cooperation in this regard. BLA shall take no other action whatsoever regarding any such infringements or claims.

4.3. <u>Identification of BLA</u>. OWNER will use its best efforts to include a statement as follows on all advertising for its licensing program:

"Exclusive Licensing Agent for The Jim Dougherty and Norma Jeane Limited Edition Collection Bradford Licensing Associates, New York, New York"

5. <u>Confidentiality</u>. During and after the Term of this Agreement, the parties shall keep confidential any of the other's proprietary information, knowledge or trade secrets, such as but not limited to, marketing and advertising plans, financial information and data, Licensing plans, research data and the like, of which it becomes aware during the course of its dealings with the other which is not in the public domain or otherwise known to any party to whom disclosure is made, unless it later falls into the public domain through no action of the other. If either party is uncertain about the status of a particular piece of information, it shall first consult with the other to determine such status. Should either party be served with a subpoena or formal or informal governmental inquiry, or similar request, for the disclosure of confidential information it shall immediately make known to the other the existence of such subpoena or request for disclosure and give the other party maximum permitted time to take whatever action it deems appropriate. Once such notification has been given, compliance with any such subpoena, inquiry or request for disclosure shall not be a violation of this provision.

6. <u>Warranties</u>.

6.1. <u>OWNER's Warranties</u>. OWNER warrants and represents that:

(a) It has the right and power to enter into and to fully perform this Agreement;

(b) BLA shall not be required to make any payments of any nature for, or in connection with, the acquisition, exercise or exploitation of the Rights other than the Licensee royalty payments contemplated under this Agreement and registration fees which a Licensee may be required to pay to register a particular trademark in its territory;

(c) It is the originator or creator or is otherwise fully authorized to use all of the Properties (including without limitation material which is or may be protected by copyright or trademark laws) which are subject matter of this Agreement. No use of the Properties permitted by this Agreement will violate any law or infringe upon or violate the rights of any other person, firm or corporation;

5

(d) It has not heretofore entered into any agreement with respect to the Rights which will limit either party's performance under this Agreement, except as set forth in Exhibit B, attached;

(e) No person, firm or corporation other than BLA has any right to perform services contemplated hereunder;

(f) No use of the Rights as envisioned by this Agreement will violate any law or infringe upon or violate the rights of any person, firm or corporation;

(g) It is the owner of the Properties.

6.2. <u>BLA's Warranties</u>. BLA warrants and represents that:

(a) It has the right and power to enter into and to fully perform this Agreement;

(b) It has not heretofore entered into any agreement with respect to the Rights which will limit either party's performance under this Agreement;

(c) It shall perform the services contemplated hereunder.

7. <u>Indemnification</u>.

7.1. <u>Indemnities to OWNER</u>. During the Term of this Agreement and thereafter, BLA shall indemnify and hold OWNER harmless from and against any and all claims, liabilities, obligations, losses, damages, penalties, actions, settlements, judgments, suits, costs and expenses including reasonable attorneys' fees on any trial, arbitration, mediation or appeal therefrom, or disbursements of any kind or nature whatsoever which arise out of a claim or cause of action brought by a third party including any Licensee against OWNER based upon: (i) any statements, agreements, or representations made by BLA (or any agent, employee, or representative of BLA) in soliciting prospective Licensees for OWNER when such statements, agreements or representations are false and material or are inconsistent with the terms of this Agreement; and (ii) any act or omission by BLA (or any agent, employee, or representative thereof) which is not authorized hereunder and which is in breach of the terms of this Agreement.

7.2. <u>Indemnities to BLA</u>. During the Term of this Agreement and thereafter, OWNER shall indemnify and hold BLA harmless from and against any and all claims, liabilities, obligations, losses, damages, penalties, actions, settlements, judgments, suits, costs, expenses including reasonable attorneys' fees, or disbursements of any kind or nature whatsoever which arise out of a claim or cause of action related to this Agreement brought by a third party, including any Licensee, against BLA or its officers, employees or agents, including, without limiting the foregoing, such claims arising out of BLA's handling of the licensing program and any alleged breach of any warranties made by OWNER hereunder or due to the Rights, but not including those claims or causes of action referred to in paragraph 7.1.

8. <u>Exclusivity</u>.

6

LA_DOCS\372851.1

During the Term BLA shall be the sole exclusive agent and representative of OWNER with regard to granting of Licenses in the Rights Territory. This Agreement shall not apply to the limited situation wherein OWNER creates tangible products making use of the Rights for free distribution as premiums to promote the Properties concept in respect to which BLA has not performed any services, provided however that if any Licensee produces similar products, OWNER will provide that Licensee the opportunity to sell OWNER the items at its usual wholesale price. OWNER may promote the Properties itself by using Licensee's products or items. OWNER shall purchase such items from Licensees at cost without royalties payable.

OWNER may grant to BLA non-exclusive rights to develop products under terms and conditions to be separately negotiated.

9. <u>Reservation of Rights</u>.

All rights not expressly granted to BLA herein are reserved to OWNER.

10. <u>Territory</u>.

This Agreement pertains to Licensees worldwide.

11. <u>Term</u>.

11.1. <u>Commencement</u>. The term of this Agreement will commence on signing by all parties and will continue for three (3) years or until terminated by the happening of one of the following events:

(a) By the other party if one of the parties discontinues its business, becomes insolvent, makes an assignment for the benefit of creditors, is placed in receivership, files a voluntary petition in bankruptcy, fails to vacate an involuntary bankruptcy petition filed against it within sixty (60) days from the date of such filing, or is dissolved for any cause whatsoever;

(b) By the other party if one of the parties fails to substantially comply with or perform any one or more of the terms or conditions of this Agreement, provided, however, that:

(i) the complaining party gives notice of the alleged breach to the other; and

(ii) the party to whom the complaint is addressed has thirty (30) business days to cure the alleged breach to the reasonable satisfaction of the complaining party.

(c) By OWNER, if BLA fails to use significant, conscientious and diligent efforts to promote the Properties, including failing to devote time and manpower to the OWNER account, failing to return phone calls or other communications from OWNER in a timely manner, failing to provide reports or other requests for information from OWNER and generally failing to actively market the Properties.

(d) If during the first year of this Agreement BLA fails to perform promised services, OWNER shall give notice to BLA and BLA shall have ninety (90) days to correct deficiencies.

11.2. <u>Renewal</u>. This Agreement shall be automatically renewed by BLA for successive additional three (3) year periods ("Renewal Term[s]"), provided, however, that OWNER shall have sixty (60) days prior to the automatic renewal date to deny renewal at its sole discretion. Renewal shall be on the same terms and conditions as stated in this Agreement. In the event OWNER denies renewal, this Agreement shall terminate at the end of the Initial Term or any applicable Renewal Term, and all of BLA's interest in and to the Rights shall terminate and revert to OWNER, subject only to the specific Post-Term Compensation set forth in paragraph 13.3 below.

12. <u>Limitations on Liability</u>.

12.1 BLA does not warrant that it will be able to place any Licenses for the Rights but it will exercise reasonable efforts, good faith and due diligence in attempting to do so.

12.2 BLA shall not be liable for any failure of OWNER to receive funds due from a Licensee or from any default or other act or omission of a Licensee, except as the direct result of an act or omission of negligence for which BLA is in breach of this Agreement. In no event will BLA be liable for negligence with respect to any audit or the failure to recommend that any audit be conducted, unless OWNER requests that a specific audit be conducted and BLA refuses to do so.

13. <u>Compensation</u>.

13.1. <u>BLA Compensation</u>.

In consideration of BLA's services hereunder, BLA will receive the following compensation:

(a) In consideration of BLA's services hereunder, BLA will receive as compensation 35% of Licensing Revenues generated in the United States and 45% of Licensing Revenues generated Internationally. This compensation schedule will apply to total combined Licensing Revenues earned from the Rights in the Territory, except as discussed in paragraph 13.1(b), where a lower rate shall apply. BLA will be responsible for compensating international agents. Licensing Revenues shall not include situations by mutual agreement where expenses incurred at the request of OWNER pursuant to paragraph 13.4 should be deducted from revenue prior to calculating BLA's compensation. The calculation of BLA's percentage of Licensing Revenues, as set forth above, shall not be calculated on an annual basis, but, rather, for the life of this Agreement.

13.2. <u>Expenses</u>. In addition to amounts paid pursuant to subparagraphs, 13.1 above OWNER shall reimburse BLA for all reasonable pre-approved expenses incurred at the request or direction of OWNER. Such expenses shall include, but shall not be limited to, costs incurred by BLA to attend OWNER's marketing or sales meeting (when requested by OWNER to so

attend), expenses incurred for producing promotional art work, samples or demos of products or the Properties when requested to do so by OWNER. It is specifically understood that all general marketing and promotional expenses, such as the cost or postage, mailings and the like, and attendance at trade shows shall all be borne by BLA.

13.3. Post-Term Licenses and Compensation. BLA shall be entitled to Post-term Compensation on the same basis as during the Term pursuant to sub-paragraph 13.1, 13.2 for Licenses in effect on the termination of this Agreement for term of such Licenses, including any renewals or extensions.. In addition BLA shall be entitled to the same compensation if within eighteen (18) months following termination, a License is entered into with a Licensee which, during the Term, had been approached by BLA and was so identified to OWNER and was in subject of serious negotiations with BLA.

13.4. Licensee Payment. Licensee royalty payments are to be made payable to Bradford Licensing Associates and sent to BLA. On or before the sixtieth (60th) day following the close of each calendar quarter, BLA shall furnish to OWNER a full and accurate statement of all amounts received by BLA and deposited into BLA's account during the preceding calendar quarter under all Licenses together with any payment due OWNER hereunder. It is understood that OWNER shall be provided copies of royalty reports when being furnished to BLA during the term of this Agreement.

13.5. BLA's books and records; inspection; inspection by OWNER. BLA shall maintain complete and accurate books and records with respect to its activities, receipts and disbursements with respect to the Properties and the licensing thereof hereunder, including without limitation all receipts, all payment and expenses, and all other financial matters in which it was involved with respect to the Properties. OWNER or its duly authorized representative shall have the right, after reasonable notice to BLA, during usual business hours, but not more than once each year, to examine the books and records pertaining to OWNER, at the place where the same are regularly maintained, insofar as they relate to the Properties, and make copies thereof and take extracts therefrom. Such examination shall be at the cost of OWNER, unless errors aggregating more than five percent (5%) of the total sum accrued (including advances) to OWNER are found to be to OWNER's disadvantage, in which case the reasonable cost of such examination shall be borne by BLA

13.6. Compensation and Reimbursement of BLA. OWNER shall not be responsible or liable for any payment or reimbursement to BLA, and BLA shall not be entitled to retain out of any monies received by it in connection with its performance of this Agreement, except as herein expressly provided.

9

14. <u>Return of Material</u>. Upon termination, BLA shall promptly return all materials and all other information related to dealing with or otherwise involving OWNER or any of its concepts, designs, logos or anything related thereto in its possession OWNER and OWNER shall arrange to communicate to all Licensees and other interested parties the fact that BLA no longer represents OWNER.

15. <u>Independent Counsel</u>. OWNER is not relying upon BLA's counsel for advice regarding the effect of this Agreement. OWNER has been advised by BLA's counsel to seek independent counsel review and has either done so or waives any and all claims against BLA and BLA's counsel resulting from the failure to do so.

16. <u>Miscellaneous</u>.

16.1. <u>Notice</u>. All notices and other communications between the parties shall be in writing and shall be deemed given on the date five (5) days after the same is either actually received, or mailed by certified or registered mail, return receipt requested, postage prepaid and addressed as follows:

    If to OWNER:    Valhalla Productions
                             PO Box 4211
                             Portsmouth, NH 03802
                             Attn: Schani Krug
                             Ph: 207-752-0624

    If to BLA:        Bradford Licensing Associates
                             209 Cooper Avenue
                             Upper Montclair, NJ 07043
                             Attn: Leonard Reiter
                             (973) 509-0200
                             (973) 509-7419 FAX

By giving notice in conformity with this paragraph a party may designate a specific individual to whom various administrative notices called for by this Agreement are to be sent. Both parties are under a continuing obligation to provide prompt notice if the addresses set forth above are changed.

16.2. <u>Independent Contractor</u>. This Agreement creates no agency, partnership, employment, joint relationship or joint venture between the parties hereto, or mutual responsibility on behalf of one party for the debts or liabilities of the other. The parties hereto agree that each is acting as an independent contractor and that any BLA employees are in no sense the employees, agents or servants of OWNER. Neither party shall have the power or authority to bind or obligate the other.

10

LA_DOCS\372851.1

16.3. <u>Entire Agreement/Waiver</u>. This Agreement contains the entire understanding between the parties and supersedes all prior agreements, representations and undertakings. It may only be modified, supplemented or altered by a writing signed by both parties. No failure or delay on the part of either party insisting on compliance with any provision herein or in exercising any right, power or remedy hereunder shall operate as a waiver or modification thereof; nor shall any single or partial exercise of any such right, power or remedy hereunder preclude any other or further exercise of any other right, power or remedy hereunder.

16.4. <u>Assignment</u>. This Agreement is not assignable by either party without the express approval of the other.

16.5. <u>Headings</u>. Provision and paragraph headings used in this Agreement are for convenience purposes only and shall not constitute part of this Agreement nor have any legal significance whatsoever in interpreting the provisions of this Agreement.

16.6. <u>Governing Law</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the State of New Jersey.

16.7. <u>Arbitration.</u> It is understood and agreed that any and all disputes, controversies or claims arising under or in any way related to the Agreement or to the parties' warranties and duties to be made and performed under the Agreement, including, without limitation, the general validity or enforceability of any of the provisions of this Agreement, shall be submitted to final and binding arbitration in Newark, New Jersey, under the auspices and rules of the American Arbitration Association. There shall be one arbitrator. The decision of the arbitrator shall be final and binding and shall be enforceable in any court of competent jurisdiction.

IN WITNESS HEREOF, the parties have caused this Agreement to be executed as of the date first above written.

VALHALLA PRODUCTIONS

By: _Schani Krug_
Name: SCHANI KRUG
Its: Director/ Producer

BRADFORD LICENSING ASSOCIATES

By: _[signature]_
Name: LEN REITER
Its: President

11

LA_DOCS\372851.1

# EXHIBIT A

## Property(ies)

The Jim Dougherty and Norma Jeane Limited Edition Collection

12

LA_DOCS\372851.1