UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CMG WORLDWIDE, INC., and )
MARILYN MONROE, LLC, )
                         )
       Plaintiffs, )
                         )
       v. )           CASE NO. 1:05-cv-0423-DFH-WTL
                         )
BRADFORD LICENSING ASSOCIATES, )
THE SHAW FAMILY ARCHIVES, LTD., )
and JAMES E. DOUGHERTY, )
                         )
       Defendants. )

## AFFIDAVIT OF LARRY SHAW

After having first been duly sworn, Larry Shaw states:

1.       I am an adult over the age of eighteen (18), have personal knowledge of the matters stated herein, and am competent to attest to such matters.

2.       I am currently the chief executive officer of Shaw Family Archives, Ltd. ("SFA"). I have held this position since the creation of SFA on June 19th of 2002.

3.       SFA is a Limited Liability Company formed under New York law, with its primary place of business located in New York.

4.       SFA was created as part of the settlement of a lawsuit (the "Lawsuit") between my father Sam Shaw and me, relating to the ownership of photographs taken my Sam and myself (the "photographs"). The settlement agreement was entered into by myself and my sisters Meta Shaw Stevens and Edith Shaw Marcus, as executors of my father's estate. The lawsuit settlement created SFA; vested ownership of the photographs in SFA; and provided that I owned

(15)



a fifty percent (50%) interest in SFA and both my sisters owned twenty-five percent (25%) interests respectively.

5.  SFA has never advertised or solicited business in Indiana through visits, telephone calls, written communications or otherwise.

6.  I personally visited Indiana on three occasions in the early 1990's for AAU wrestling meets, but I have never been to Indiana on any SFA business. Additionally, I am unaware of any SFA representative and/or agent having ever made any trip to Indiana on any SFA-related business.

7.  SFA has no office, employees or agents located in the State of Indiana. There are no known records or incidents of any SFA employee ever being in Indiana on SFA-related business.

8.  SFA has never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than this action.

9.  SFA has no governmental licenses in Indiana.

10.  SFA has never entered into any contractual relationship with any resident or citizen of Indiana or any business entity with its primary place of business in Indiana. In fact, SFA has, since its creation, purposefully refused to conduct business in Indiana as part of its business strategy.

11.  SFA maintains a passive worldwide web Internet site located at http://www.spc-promotions.com (the "Internet site"). SFA has a second affiliated Internet site located at http://www.samshaw.com (the "Sam Shaw site"). SFA does not accept orders or conduct business directly through either the Internet site or the Sam Shaw site. True and accurate paper

LS

reproductions of the Shaw Family Archives' Internet site and the Sam Shaw site are attached hereto as Exhibits A and B respectively.

12.     Currently, the SFA contains and owns photographs of Marilyn Monroe taken by Sam and/or myself (the "Marilyn Monroe Limited Edition Collection" images). These photographs and the right to market same were transferred to the SFA as part of the settlement agreement between the parties to the Lawsuit between myself and Sam Shaw's estate.

13.     On or about February 14, 2004 SFA entered into an Image Licensing Agreement with Schani Krug/Valhalla Productions ("Valhalla"), a New Hampshire film production company with its principal place of business in New Hampshire (the "Image Agreement").    A true and accurate copy of the Image Agreement is attached hereto as Exhibit C.  The Image Agreement was negotiated and entered into subject to SFA's policy of not conducting business in Indiana.  It does not involve any action and/or business activity by SFA in Indiana.

14.     The Image Agreement related to the use of SFA Marilyn Monroe Limited Edition Collection images in a film/video/DVD project pertaining to Marilyn Monroe's first husband, Jim Dougherty's, life story entitled "Marilyn's Man" (the "Project").  Pursuant to the Image Agreement, Valhalla, and its marketing agent Bradford Licensing, were entitled to use SFA Images solely in the Project and in the marketing, media and merchandising of the Project, so long as such marketing, media and merchandising were not done in Indiana.

15.     Prior to the creation of SFA, Meta Shaw Stevens and Edith Shaw Marcus communicated with Mark Roesler, the president of CMG Worldwide, Inc. ("CMG").  CMG was reportedly interested in seeing and perhaps using images in Sam Shaw's collection of images. Additionally there was a meeting between Meta Shaw Stevens, Edith Shaw Marcus and Mr. Roesler in New York, New York in late 1999 or early 2000.   These communications did not

(23)

relate to the transactions at issue in this lawsuit. Further, no contractual relationship developed from these communications. Finally, these communications were not conducted on behalf of SFA, which did not even exist as a legal entity at that time. In fact, at the time these conversations took place, the Lawsuit was ongoing between the different Shaw family members.

16.     Meta Shaw Stevens had follow-up conversations with Mr. Roesler following the creation of SFA in early 2002. These conversations did not lead to any business and/or contractual relationship between SFA and CMG, and none of these conversations related to the transactions at issue in this lawsuit.

17.     SFA has made no efforts to serve, directly or indirectly, the Indiana market for its services. In fact, SFA has specifically structured its business activities to avoid the privilege of conducting business in Indiana.

FURTHER AFFIANT SAITH NOT

I affirm, under the penalties for perjury, that the foregoing representations are true to the best of my knowledge.

Dated: _MAY 25, 2005_                    _Larry Shaw_

959162.1

Shaw Family Archives © 2003



Marilyn Monroe
©Shaw Family Archives

For Business and Licensing Inqui
contact Larry Shaw at: 845.359.

EXHIBIT

tabbies

1A



Home



Home



Home

**Marilyn Monroe**
**Shaw Family Archives ©2003 All rights reserved. Photos by Sam Shaw.**



**Home**

**Marilyn Monroe**
**Shaw Family Archives ©2003 All rights reserved. Photos by Sam Shaw.**



**Home**

**Marilyn Monroe**
**Shaw Family Archives ©2003 All rights reserved. Photos by Sam Shaw.**



**Home**

**Marilyn Monroe**
**Shaw Family Archives ©2003 All rights reserved. Photos by Sam Shaw.**



**Home**

# Shaw Family Archives, Ltd

## The official website of Sam Shaw and his photographs

## Sam Shaw Photographic Collection

Biography

Americana

Filmography

Marilyn Monroe

Personality Images

Publications

Exhibitions

Contact Information



Sam Shaw and Marilyn Monroe - 1954

Copyright Shaw Family Archives. All rights reserved.



EXHIBIT

tabbies

1B

Main Biography Americana Filmography Marilyn Monroe Personality Images Publications Exhibitions



Sam Shaw, Copyright Edith Shaw Marcus

## Inquiries regarding Exhibitions, Film Festivals, and Merchandising welcome.

### Contact Information:

Meta Shaw Stevens
Tel - 212-864-2216
Fax - 212-864-1762
Email - metashaw-sam@nyc.rr.com

Edith Shaw Marcus
Tel - 845-359-8231
Fax - 845-359-3704
Email - edieshaw@optonline.net

European Contact:
Melissa Stevens
Email - mstevens01@wesleyan.edu

# IMAGE LICENSING AGREEMENT

This PRODUCTION AGREEMENT is between the following parties: Mr. Schani Krug/Valhalla Productions (heretofore known as LICENSEE), a film production company based at: PO BOX 4211 Portsmouth, NH, 04211, and Mr. Larry Shaw of Shaw Family Archives, hereto known as LICENSOR, residing at: 225 Hudson Terrace, Piermont, NY 10968.

## THE PROJECT

This Production Agreement involves the production and filming of a 2 hour biographical documentary film/video/DVD of Mr. Jim Dougherty's life story, known as "Marilyn's Man." This PROJECT will be produced by Valhalla Productions, and directed and Produced by Schani Krug. The image merchandising of said PROJECT will be known as "The Shaw Family Archives Marilyn Monroe Limited Edition Collection," and will be merchandised by Bradford Licensing.

## DISBURSEMENT OF DIVIDENDS

All parties agree to the following: VALHALLA PRODUCTIONS/LICENSEE will pay and dispense any revenues immediately to Larrry Shaw (LICENSOR) within 30 days of any profits or revenues generated by PROJECT upon receipt of any advance, monies from distributors, merchandisers, television/cable networks and publishers, and Bradford Licensing.

## FORM OF PAYMENT

*or the SK*

All dividends from PROJECT will be paid in U.S. funds, unless parties agree to an amended or additional agreement or addendum to this effect. The LICENSEE will pay LICENSOR a royalty of 60 percent in U.S. funds of any Marilyn Monroe image licensed by SHAW FAMILY ARCHIVES for said PROJECT ~~after adjusted~~ gross from royalties Licensee derives from Bradford Licensing of photo images of Marilyn Monroe taken by Sam Shaw or Larry Shaw. The remaining 40 percent will go to Licensee.

*Additionally, licensee will receive 1 point in the film's gross, including all ancillary rights SK*

Page 1 of 3





**EXHIBIT**

tabbies

1C

## IMAGE RIGHTS

The above parties agree to allow the IMAGE RIGHTS, likeness, art rendering, and any and all images mutually selected of Marilyn Monroe, taken by Sam Shaw or Larry Shaw to be used in the PROJECT for the duration of this agreement for promotional purposes, as well as in any format (i.e., video, DVD, CD, advertisement, audio cassette, etc.), as well as market and media, and merchandising of said images by Valhalla Productions throught their merchandising agent, Bradford Licensing, during the interim of the COPYRIGHT of said PROJECT.

## DURATION OF AGREEMENT

The duration of this PRODUCTION AGREEMENT extends from the signing of this agreement by all parties, through the final day of the life of the U.S. COPYRIGHT of said PROJECT, as per the laws of the United States Copyright Office.

## BINDING EFFECT

This AGREEMENT shall be binding on and insure to the benefit of the respective parties, their heirs, successors, administrators, executors and assigns. In the event of the death of any of the above-mentioned parties, his or her executors will honor the terms and conditions of this agreement in full.

## FORMAT OF IMAGES

LICENSOR will suppy to LICENSEE high resolution scans of said images of Marilyn Monroe suitable for reproduction from the Shaw Family Archives.

## ENTIRE AGREEMENT

This PRODUCTION AGREEMENT constitutes the entire agreement between all parties, and may be modified only in writing signed and agreed to by all parties. This PRODUCTION AGREEMENT may be signed in counterparts, each of which shall be deemed an original, but which together shall constitute one PRODUCTION AGREEMENT. If any provision of this PRODUCTION AGREEMENT is determined by a court of competent jurisdiction to be enforceable, the remaining provisions shall continue in full force and effect. If any disputes arise between the parties they must notify each other in writing by certified mail within 30 days of this dispute, outlining these disputes and any possible resolutions thereof.



Page 2 of 3

SIGNED AND AGREED TO BY ALL PARTIES     DATE: February 14, 2004


BY: VALHALLA PRODUCTIONS/MR. SCHANI KRUG

BY: Schani Krug (LICENSEE)

BY:
MR. LARRY SHAW/SHAW FAMILY ARCHIVES
BY: Mr. Larry Shaw   (LICENSOR)

Page 3 of 3