UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CMG WORLDWIDE, INC., and<br>MARILYN MONROE, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-cv-0423-DFH-WTL |
| | ) | |
| BRADFORD LICENSING ASSOCIATES, | ) | |
| THE SHAW FAMILY ARCHIVES, LTD., | ) | |
| and JAMES E. DOUGHERTY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SHAW FAMILY'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE, TRANSFER**

Defendant Shaw Family Archives, Ltd. ("Shaw Family Archives"), by counsel, submits this Memorandum of Law in support of its Motion to Dismiss for lack of *in personam* jurisdiction pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure or alternatively to transfer this action pursuant to 28 U.S.C. § 1404(a).

## I. OVERVIEW

Since the time of its creation Shaw Family Archives, has specifically structured its business activities so as to avoid being subject to jurisdiction in Indiana. Shaw Family Archives has never advertised or solicted business in Indiana, and it has no office, employees or agents in Indiana. Generally, Shaw Family Archives' contacts with Indiana, if any, are insubstantial, infrequent and unsystematic as Shaw Family Archives' will not conduct business in Indiana directly and insists, generally, that its clients and their licensees also refuse to conduct business in Indiana.

With regard to the alleged intellectual property at issue in this litigation, Shaw Family Archives specifically required that no sales and/or marketing be conducted in Indiana. Shaw Family Archives has thus purposefully not availed itself of the privilege of doing business in Indiana with regard to the Marilyn's Man property, or otherwise. Again, it has purposefully avoided doing any business in Indiana generally, and specifically relating to this lawsuit.

Shaw Family Archives, has not had sufficient contacts with Indiana such that the exercise of jurisdiction over it by this Court comports with due process, and this Court thus lacks personal jurisdiction over Shaw FamilyArchives. Accordingly, the plaintiffs' Second Amended Complaint (the "Complaint") should be dismissed as against Shaw Family Archives for lack of *in personam* jurisdiction.

Finally, Shaw Family Archives filed an action in the United States District Court for the Southern District of New York (the "New York Court") captioned *Shaw Family Archives, Edith Marcus and Meta Stevens*, Index Number 05 CV 3939 on April 19, 2005 (the "New York action"). As the New York action was the first, and in fact only, action to obtain jurisdiction over Shaw Family Archives and CMG, the present action against Shaw Family Archives should be dismissed and transferred to the New York Court pursuant to the "first-to-file" rule. Alternatively, this action should be transferred to the New York Court pursuant to 28 U.S.C. §1404(a). Such a transfer would create conveniences for the parties and non-party witnesses while creating judicial economies.

## II. FACTS

### A.    Facts Relevant To Personal Jurisdiction

Although it is the plaintiffs' burden to present evidence necessary to demonstrate that personal jurisdiction over a defendant exists, Shaw Family Archives nonetheless states the relevant facts. *See Blubaugh v. American Contract Bridge League*, 2002 WL 31040339

(S.D.Ind. 2002)(the party opposing a motion to dismiss for lack of personal jurisdiction carries the burden of presenting evidence of specific facts that, when taken as true, are sufficient to support a finding of personal jurisdiction).

Plaintiffs, CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC ("MMLLC")(collectively, the "plaintiffs") filed their initial Complaint for Damages and Injunctive Relief on or about March 23, 2005.  CMG is an Indiana corporation with its principal place of business in Hamilton County, Indiana.  (Complaint, ¶ 1).  MMLLC is a Delaware business entity, maintaining its principal place of business in Indiana through CMG.  (Complaint, ¶ 2).

The Complaint alleges, correctly, that Shaw Family Archives is a business entity organized and existing pursuant to the laws of New York.  (Complaint, ¶ 9).  Additionally, Shaw Family Archives' principal place of business is located in New York.  The Complaint relates to allegations by the plaintiffs that Shaw Family Archives and the other defendants have violated the plaintiffs right of publicity relating to the famous movie actress Marilyn Monroe, resulting in a spate of alleged injuries under Indiana law.  *See* Complaint, *passim*.

Shaw Family Archives was created on June 19, 2002.  (Affidavit of Larry Shaw ("Shaw Aff."), ¶ 2).[1]  A copy of Larry Shaw's Affidavit is attached hereto as Exhibit 1.  Shaw Family Archives is a New York domestic company formed under New York law, with its primary place of business located in New York.  (Shaw Aff., ¶ 3).  Shaw Family Archives was created as part of the settlement of a lawsuit (the "Lawsuit") between Larry Shaw's father Sam Shaw and Larry Shaw, relating to the ownership of photographs taken by Sam Shaw and Larry Shaw (the "photographs").  (Shaw Aff., ¶ 4).  The settlement agreement was entered into by Larry Shaw and his sisters Meta Shaw Stevens and Edith Shaw Marcus, as executors of Sam Shaw's estate.

---

[1] Larry Shaw is the Chief Executive Officer of Shaw Family Archives.  (Shaw Aff., ¶ 2).

(Shaw Aff., ¶ 4). The lawsuit settlement created Shaw Family Archives; vested ownership of the photographs in Shaw Family Archives; and provided that Larry Shaw owned a fifty percent (50%) interest in Shaw Family Archives and both of his sisters owned twenty-five percent (25%) interests respectively. (Shaw Aff., ¶ 4).

Shaw Family Archives has never advertised or solicited business in Indiana through visits, telephone calls, and written communications or otherwise. (Shaw Aff., ¶ 5). While Larry Shaw personally visited Indiana on three occasions in the early 1990's for AAU wrestling meets, he has never been to Indiana on any Shaw Family Archives business. (Shaw Aff., ¶ 6). Shaw Family Archives has no office, employees or agents located in the State of Indiana. (Shaw Aff., ¶ 7). There are no known records or incidents of any Shaw Family Archives employee ever being in Indiana on Shaw Family Archives-related business. (Shaw Aff., ¶ 7). Shaw Family Archives has never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than this action. (Shaw Aff., ¶ 8). Shaw Family Archives has no governmental licenses in Indiana. (Shaw Aff., ¶ 9).

Shaw Family Archives has never entered into any contractual relationship with any resident or citizen of Indiana or any business entity with its primary place of business in Indiana. (Shaw Aff., ¶ 10). In fact, Shaw Family Archives has, since its creation, purposefully refused to conduct business in Indiana as part of its business strategy. (Shaw Aff., ¶ 10). Shaw Family Archives does maintain a passive worldwide web Internet site located at http://www.spc-promotions.com (the "Internet site"). (Shaw Aff., ¶ 11). Shaw Family Archives has a second affiliated internet site located at http://www.samshaw.com (the "Sam Shaw site"). (Shaw Aff., ¶ 11). As is demonstrated by a review of either website (see also the paper depictions of the relevant pages of the websites attached to Larry Shaw's Affidavit), Shaw Family Archives does

not accept orders or conduct business directly through either the Internet site or the Sam Shaw site.  (Shaw Aff., ¶ 11).

Currently, the Shaw Family Archives owns an archive of photographs of Marilyn Monroe taken by Sam and/or Larry Shaw (the "Marilyn Monroe Limited Edition Collection" images). (Shaw Aff., ¶ 12).  These photographs and the rights to market the same were transferred to the Shaw Family Archives as part of the settlement agreement between the parties to the Lawsuit between Sam Shaw's estate and Larry Shaw.  (Shaw Aff., ¶ 12).

On or about February 14, 2004, Shaw Family Archives entered into an Image Licensing Agreement with Schani Krug/Valhalla Productions ("Valhalla"), a New Hampshire film production company with its principal place of business in New Hampshire (the "Image Agreement").   (Shaw Aff., ¶ 13).  The Image Agreement was negotiated and entered into subject to Shaw Family Archives' express policy of not conducting business in Indiana.  It does not involve any action and/or business activity by Shaw Family Archives in Indiana.  (Shaw Aff., ¶ 13).  The Image Agreement related to the use of Shaw Family Archives' Marilyn Monroe Limited Edition Collection images in Valhalla's film/video/DVD project pertaining to Marilyn Monroe's first husband Jim Dougherty and his life story.  The project is entitled "Marilyn's Man" (the "Project").  (Shaw Aff., ¶ 14).  Pursuant to the Image Agreement, Valhalla, and its marketing agent Bradford Licensing, were licensed to use Shaw Family Archives' Images in the Project as well as in the marketing, media and merchandising of the Project, so long as such marketing, media and merchandising were not done in Indiana.  (Shaw Aff., ¶ 14).

Prior to the creation of Shaw Family Archives, Meta Shaw Stevens and Edith Shaw Marcus communicated with Mark Roesler, the president of CMG Worldwide, Inc. ("CMG"). (Shaw Aff., ¶ 15).  CMG was reportedly interested in seeing and perhaps using certain Marilyn Monroe images in Sam Shaw's collection of images.  (Shaw Aff., ¶ 15).  Additionally there was

a meeting between Meta Shaw Stevens, Edith Shaw Marcus and Mr. Roesler in New York, New York in late 1999 or early 2000.  (Shaw Aff., ¶ 15).  These communications did not relate to any of the transactions at issue in this lawsuit.  (Shaw Aff., ¶ 15).  Further, no contractual relationship developed from these communications.  (Shaw Aff., ¶ 15).  Finally, these communications were not conducted on behalf of Shaw Family Archives, which did not even exist at that time.  (Shaw Aff., ¶ 15).  In fact, at the time these conversations took place, the Lawsuit was ongoing between the different Shaw family members.  (Shaw Aff., ¶ 15).  Meta Shaw Stevens had follow-up conversations with Mr. Roesler following the creation of Shaw Family in early 2002.  (Shaw Aff., ¶ 16).  These conversations did not lead to any business and/or contractual relationship between Shaw Family Archives and CMG, and none of these conversations related to any of the transactions at issue in this lawsuit.  (Shaw Aff., ¶ 16).

Ultimately, Shaw Family Archives has made no efforts to serve, directly or indirectly, the Indiana market for its services.  (Shaw Aff., ¶ 17).  In fact, Shaw Family Archives has specifically structured its business activities to avoid the privilege of conducting business in Indiana.  (Shaw Aff., ¶ 17).

**B.     Facts Relevant To Motion To Transfer Venue**

The plaintiffs in this action first attempted to serve their initial Complaint on Shaw Family Archives via certified mail to David Marcus at his former employer located at 199 Main Street, White Plains, New York.  That former employer then forwarded the initial Complaint and Summons to Mr. Marcus' attention.  (Affidavit of David Marcus ("Marcus Aff."), ¶ 6).[2]  A copy of Mr. Marcus' Affidavit is attached hereto as Exhibit 2.  Mr. Marcus did not receive the initial Complaint and/or Summons until on or about April 4, 2005.  (Marcus Aff., ¶ 6). Mr. Marcus was

---

[2] David Marcus is Edith Shaw Marcus' son.  (Marcus Aff., ¶ 3).  He has done some legal work for Shaw Family Archives.  (Marcus Aff., ¶ 2).

not authorized to and did not accept service at that time on behalf of Shaw Family Archives. (Marcus Aff., ¶ 6). He is not an officer or a director of Shaw Family Archives. (Marcus Aff., ¶ 6). Further, he is not the Shaw Family Archives' registered agent in New York or any other State. (Marcus Aff., ¶ 6).

Mr. Marcus is, however, listed on the New York Department of State's ("NYDS") Internet directory solely as the individual who receives a copy of documents served on the NYDS in the event that the NYDS accepts service on behalf of a business organization. (Marcus Aff., ¶ 5). The NYDS Internet listings, however, identify other individuals as officers and directors of Shaw Family Archives for instances where someone wishes to serve Shaw Family Archives directly as CMG attempted to do here. (Marcus Aff., ¶ 6). Moreover, Mr. Marcus does not know how his name came to be listed on the NYDS Internet listing. (Marcus Aff., ¶ 6).

On or about April 19, 2005 the Shaw Family Archives, Edith Marcus and Meta Stevens filed a Complaint against CMG and MMLLC in the Southern District of New York (the "SFA Complaint"). (Marcus Aff., ¶ 7). Shaw Family Archives, Edith Marcus and Meta Stevens brought the SFA Complaint seeking damages for copyright infringement as well as injunctive relief seeking to preclude CMG and MMLLC from taking further actions in violation of copyright laws. The SFA Complaint also seeks declaration from the Court that CMG has no right of publicity relating to Marilyn Monroe. (Marcus Aff., ¶ 8; SFA Complaint, *passim*). The SFA Complaint was served on CMG and MMLLC on April 20, 2005 directly via a process server. (Marcus Aff., ¶ 9; Affidavits of Service). On May 4, 2005, CMG and MMLLC filed an Amended Alias Summons with this Court and served it via certified mail on Larry Shaw, as chief executive officer of Shaw Family Archives. (Marcus Aff., ¶ 10). Larry Shaw received the Summons on or about May 16, 2005 when he found it left on his doorstep—after returning from an out-of-state trip. (Marcus Aff., ¶ 10).

7

### III.  LEGAL ANALYSIS

**A.     This Court Does Not Have Personal Jurisdiction Over Shaw Family Archives**

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *See Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).  Because Shaw Family Archives has challenged personal jurisdiction, the plaintiffs' carry the burden of demonstrating that jurisdiction exists. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Fanimation Design & Manufacturing, Inc. v. Aloha House Wares, Inc.*, 2003 WL 1903353 *2 (S.D.Ind. 2003).  Though factual disputes will be resolved in favor of the non-moving party, vague generalizations or conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *Search Force, Inc. v. Dataforce International, Inc.*, 112 F.Supp.2d 771, 774 (S.D. Ind. 2000).

**1.     Personal Jurisdiction Generally**

"Personal jurisdiction is 'a court's power to bring a person into its adjudicative process' and render a valid judgment over a person."  Any discussion of personal jurisdiction in Indiana must begin with Trial Rule 4.4(A), which contains Indiana's "long arm" provisions[3].

---

[3] Trial Rule 4.4(A) states in full:  "Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: (1) doing any business in this state; (2) causing personal injury or property damage by an act or omission done within this state; (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state; (4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state; (5) owning, using, or possessing any real property or an interest in real property within this state; (6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made; (7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or (8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.  In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."

Notwithstanding the fact that Shaw Family Archives has not, within a relevant time period, taken actions in Indiana that fall within one of Trial Rule 4.4(A)'s enumerated categories, Trial Rule 4.4(A) arguably allows an Indiana court to assert jurisdiction to the limits established by due process: "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Ind.Trial.R. 4.4(A).[4]  Accordingly, the question presented is whether due process permits the exercise of jurisdiction over Shaw Family Archives. It does not.

### 2.    The Exercise Of Jurisdiction Over Shaw Family Archives Does Not Comport With Due Process

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry.  A court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### a.    The Minimum Contacts Inquiry Generally

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co,.* 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "Minimum contacts are required to assure that a defendant has purposefully availed himself of the jurisdiction of the forum state." *Baseball Card World, Inc. v. Pannette*, 583 N.E.2d 753 (Ind. Ct. App. 1991).  "At a minimum, the court must find 'some act by which the defendant purposefully avails itself of the privilege of its law.'" *Rowosky v. University of Colorado*, 653 N.E.2d 146, 148 (Ind. Ct. App. 1995) (quoting *Hansen v. Denckla*,

---

[4] *See Fanimation Design*, 2003 WL 1903353 * 4; William F. Harvey, *Dept. Rules & Rulings*, Res. Gestae, Apr. 2003, at 37 (noting that 2003 Amendment to Trial Rule 4.4(A) moots provisions in Indiana Trial Rule 4.4(A)(1) through (8)).

357 U.S. 234, 253 (1958)).  As such, the exercise of jurisdiction over a defendant will comply

with due process only if the defendant "reasonably should have anticipated 'being haled into

court' in Indiana" and "purposefully…availed itself of the 'privilege of conducting activities' in

Indiana."  *Wilson v. Humphries (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir. 1990)(quoting

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"There are two types of contacts that may be sufficient to establish jurisdiction: (1)

defendant's contacts with the forum state that are unrelated to the basis of the lawsuit, and (2)

defendant's contacts that are related to the subject matter of the lawsuit.  *Anthem Ins. Cos., Inc.

v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1234 (Ind. 2002).  These contacts are known,

respectively, as providing a basis for a court's assertion of "general" and "specific" personal

jurisdiction over a defendant.  *Id*. (*referring to Helicopteros Nationales de Columbia, S.A. v.

Hall*, 466 U.S. 408, 414 nn. 8-9 (1984)).  In this matter, neither general nor specific jurisdiction

exists.

> **b.     This Court May Not Exercise General Jurisdiction Over Shaw Family
> Archives**

A court's general jurisdiction is based on the defendant's general business contacts with

the forum state and it permits a court to exercise its jurisdictional power in a case even where the

subject matter of that case is unrelated to those contacts.  *Helicopteros*, 466 U.S. at 414-16 & nn.

8-9. Because general jurisdiction is not related to the events giving rise to the suit, courts impose

a more rigorous test than that associated with specific personal jurisdiction, requiring the party

claiming jurisdiction to demonstrate the defendant's "continuous and systematic general business

contacts."  *Id*. at 416.  "If the defendant's contacts with a forum state [are] unrelated to the

lawsuit, they 'must be fairly extensive to confer jurisdiction.'"  *Anthem*, 730 N.E.2d at 1235

(quoting *Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143, 145 (Ind. Ct. App. 1993)).  "In

sum, an Indiana court has general jurisdiction over a defendant if the defendant's contacts with Indiana are substantial, continuous, extensive, and systematic." *Anthem*, 730 N.E.2d at 1235.

Shaw Family Archives' contacts with Indiana, considered as a whole, are insubstantial, limited and unsystematic. Shaw Family Archives is a New York limited liability company formed under New York law with its primary place of business in New York. (Shaw Aff., ¶ 2). Shaw Family Archives only came into existence in June of 2002 as part of a settlement agreement between different Shaw Family members. (Shaw Aff., ¶¶ 2, 4).

Shaw Family Archives has, since its creation, purposefully refused to conduct business in Indiana as part of its business strategy. (Shaw Aff., ¶ 10). Shaw Family Archives has never advertised or solicited business in Indiana through visits, telephone calls, and written communications or otherwise. (Shaw Aff., ¶ 5). Larry Shaw personally visited Indiana on three occasions in the early 1990's for AAU wrestling meets, but he has never been to Indiana on any Shaw Family Archives business. (Shaw Aff., ¶ 6). Shaw Family Archives has no office, employees or agents located in the State of Indiana. (Shaw Aff., ¶ 7). There are no known records or incidents of any Shaw Family Archives employee ever being in Indiana on Shaw Family Archives-related business. (Shaw Aff., ¶ 7). Shaw Family Archives has never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than this action, and Shaw Family Archives has no governmental licenses in Indiana. (Shaw Aff., ¶¶ 8,9).

Prior to the creation of Shaw Family Archives, Meta Shaw Stevens and Edith Shaw Marcus communicated with Mark Roesler, CMG's president. (Shaw Aff., ¶ 15). Though some of these contacts may have been with Mr. Roesler in Indiana, these contacts cannot be imputed to Shaw Family Archives. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003). In *Purdue Research Foundation*, Purdue University ("Purdue"), which

had entered into a cooperative research agreement with a pharmaceutical company, sued the purchaser of that company's intellectual property rights, which included the Purdue agreement. *Id*. at 776-77. The purchaser moved to dismiss Purdue's complaint for lack of personal jurisdiction over Purdue's objection that personal jurisdiction existed through imputation. *Id*. The Seventh Circuit rejected Purdue's argument and upheld the district court's dismissal of Purdue's action. *Id*. at 784

The *Purdue Research Foundation* Court held that while "several courts have recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process … an assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction." *Id*. at 784. The Court relied on "the Supreme Court's emphasis on the need for an individual assessment of a particular defendant's contacts with the forum state" and on the fact that "the unilateral activity of parties other than the non-resident defendant cannot satisfy the requirement of the defendant's contacts with the forum state" in reaching its decision. *Id*. at 784 (citations omitted). The Court concluded that as the purchaser was not a "mere continuation" of the pharmaceutical company, the pharmaceutical company's jurisdictional contacts could not be imputed to the purchaser.

In this instance, Shaw Family Archives is not a "mere continuation" of Edith Shaw Marcus and/or Meta Shaw Stevens. Shaw Family Archives was created out of the settlement of a lawsuit between Larry Shaw and Sam Shaw relating to the ownership of photographs taken by Larry and/or Sam Shaw. (Shaw Aff., ¶ 4). It did not involve any merger of Edith Shaw Marcus and/or Meta Shaw Stevens, nor did Shaw Family Archives purchase all, or substantially all, of its assets from Edith Shaw Marcus and/or Meta Shaw Stevens. *See Purdue Research Foundation*, 338 F.3d at 785. Accordingly, Edith Shaw Marcus and/or Meta Shaw Stevens' contacts with Indiana cannot be imputed to Shaw Family Archives.

Regardless, the communications between Edith Shaw Marcus and Meta Shaw Stevens were not continuous or systematic. Further, they did not relate to the transactions at issue in this lawsuit. (Shaw Aff., ¶ 15). No contractual relationship developed from these communications, and they were not conducted on behalf of Shaw Family Archives, which did not even exist as a legal entity at that time. (Shaw Aff., ¶ 15). In fact, at the time these conversations took place, the Lawsuit was ongoing between the different Shaw family members. (Shaw Aff., ¶ 15). Though Meta Shaw Stevens had follow-up conversations with Mr. Roesler following the creation of Shaw Family in early 2002, these conversations did not directly pertain to Shaw Family Archives business and they did not lead to any business and/or contractual relationship between Shaw Family Archives and CMG. (Shaw Aff., ¶ 16). None of these conversations related to the transactions at issue in this lawsuit. (Shaw Aff., ¶ 16). In short, even if these contacts could be imputed to Shaw Family Archives, which they cannot, they have never been substantial, continuous, extensive, and systematic so as to create general jurisdiction.

Finally, plaintiffs may contend that general jurisdiction is proper because of Shaw Family Archives' Internet site and/or the Sam Shaw site. While the operation of an "interactive" website such as one where consumers can order a defendant's goods or services, "may subject a defendant to the exercise of personal jurisdiction," this logic "certainly does not extend to the operation of a 'passive' website... which merely makes available information about the company and its products." *Jennings v. AC Hydraulic*, 383 F.3d 546, 549 (7th Cir. 2004); *see also Conseco, Inc. v. Hickerson*, 698 N.E.2d 815 (Ind. Ct. App. 1998). As the *Jennings* Court noted, "[w]ith the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website." *Id.* at 550. Accordingly, "[p]remising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction

because of the virtually unlimited accessibility of websites across the country." *Id*. The *Jennings* Court concluded "a defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." *Id*.

Shaw Family Archives' Internet site and the Sam Shaw site are passive. (Shaw, Aff. ¶ 11). Shaw Family Archives does not accept orders or conduct business directly through its Internet site. (Shaw, Aff. ¶ 11). Instead, the Internet site merely makes available information about Shaw Family Archives and its images. (Internet Site, *passim*; Sam Shaw site, *passim*). Accordingly, neither Shaw Family Archives' Internet site nor the Sam Shaw site support the exercise of personal jurisdiction in this matter.

In sum, Shaw Family Archives' contacts with Indiana have not been substantial, continuous, extensive, and systematic. If anything, they have been substantially—and purposefully—non-existent. Shaw Family Archives has not actively advertised, solicited business, or conducted business in Indiana and it does not maintain an office, agent, employee or property in the state. *See*, *North Texas Steel Co. Inc. v. R.R. Donnelley & Sons, Co.*, 679 N.E.2d 513, 519 (Ind. Ct. App. 1997)(*cert. denied*. 118 S.Ct. 1676 (1998)). Shaw Family Archives' limited contacts with Indiana, if any, are insufficient to create general jurisdiction.

### c.    Specific Jurisdiction Does Not Exist

Specific jurisdiction "exists only when a defendant has purposefully established contacts with the forum state and the basis of the lawsuit arises out of those contacts." *Richards & O'Neil,LLP v. Conk*, 774 N.E.2d, 540, 546 (Ind.Ct.App. 2002) (*referring to Anthem*, 730 N.E.2d at 1235). "In other words, the defendant's isolated contacts with a state that are not enough to establish general personal jurisdiction may be sufficient to allow jurisdiction over any incidents related to those contacts." *Anthem*, 730 N.E.2d at 1235. "In order to establish specific personal

jurisdiction over a defendant, the defendant must have purposefully established contact with the forum state and the basis of the lawsuit must arise out of these contacts." *Id*.

The analysis of contacts for specific personal jurisdiction is conducted on a case-by-case basis. *Id*. In conducting this analysis, courts consider the following: (1) whether the claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state. *Id*. at 1236. Finally, "[a] single contact with a forum state may be enough to establish specific personal jurisdiction; however, the defendant's conduct must create a substantial connection with the forum state and the acts must be purposeful, not a random, fortuitous, or attenuated contact or the unilateral conduct of a third party." *Richards & O'Neil*, 774 N.E.2d at 546 (*referring to Sohacki v. Amateur Hockey Assoc. of Illinois*, 739 N.E.2d 185, 189 (Ind. Ct. App. 2000)).

Plaintiffs do not allege, nor can they, that Shaw Family Archives had any direct "contacts" with Indiana, which relate to this matter or that Shaw Family Archives "purposefully established contacts" with Indiana which are the basis for this lawsuit. In fact, Shaw Family Archives' sole relevant contractual relationship relating to the subject matter of this lawsuit is the Image Agreement it entered with Valhalla in New Hampshire. (Shaw, Aff., ¶ 13).[5] The Image Agreement was negotiated and entered into subject to Shaw Family Archives' policy of not conducting business in Indiana. (Shaw Aff., ¶ 13). It does not involve any action and/or business activity by Shaw Family Archives in Indiana. (Shaw Aff., ¶ 13).

The Image Agreement related to the use of Shaw Family Archives Marilyn Monroe Limited Edition Collection images in the Project. (Shaw Aff., ¶14). Pursuant to the Image

---

[5] Subsequent to the filing of the lawsuit, Shaw Family Archives entered into a licensing contract with Bradford Licensing. Notwithstanding the fact that this contract is not jurisdictionally relevant, it was made subject to Shaw Family Archives policy of not conducting business in Indiana.

Agreement, Valhalla, and its marketing agent Bradford Licensing, were entitled to use Shaw Family Images only in the Project and in the marketing, media and merchandising of the Project, so long as such marketing, media and merchandising were not done in Indiana. (Shaw Aff., ¶14). Accordingly, to the extent that any entity marketed or sold Marilyn's Man products in Indiana, it did so without Shaw Family Archives' knowledge and in violation of the terms and conditions of the Image Agreement and thus contrary to Shaw Family Archives' intentions. (Shaw Aff., ¶ 14).

Plaintiffs allege, however, that jurisdiction is proper "through the various damages caused to Plaintiffs in Indiana as a result of Defendants' conduct" and because "Defendants wrongful conduct both within and without Indiana have [sic] been felt primarily in Indiana as that is CMG's home state." (Complaint, ¶ 28). In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court created the "effects test" which recognized that under certain circumstances a court "may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3rd Cir. 1998). Accordingly, the "state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). Injury alone, however, is insufficient to create jurisdiction. In all cases in which jurisdiction over a suit involvilng intellectual property was predicated on the "effects test" "the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also 'entered' the state in some fashion." *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994). Accordingly, the Seventh Circuit has "explicitly refrained from holding [in *Janmark*] that injury to intellectual property … was enough - in itself - to confer jurisdiction over an out-of-state defendant." *Softee Manufacturing, LLC v. Mazner*,

2003 WL 23521295 at *4 (N.D.Ill. 2003); *Caterpillar Inc. v. Miskin Scraper Works, Inc.*, 256 F.Supp.2d 849, 851 (C.D.Ill. 2003); *see also IMO Industries*, 155 F.3d at 265.

In this instance, as set forth above, Shaw Family Archives has not "entered" Indiana in relation to the subject matter of this litigation. It is well established that Shaw Family Archives was free to structure its business activites so as to purposefully avoid interaction with Indiana, thereby avoiding any possible jurisdictional ties. *See Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 1985) (noting that even "contracting [directly] with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004). ("[P]otential defendants [may] structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit."). Shaw Family Archives did precisely that through its policy of not conducting business activity in Indiana. By doing so, Shaw Family Archives avoided entering Indiana for jurisdictional purposes. Accordingly, even if the plaintiffs could come forth with evidence of some injury suffered by them in Indiana due to an intentional tort committed by Shaw Family Archives (such allegations would be and are expressly denied) this would be insufficient to create jurisdiction under even the effects test, because Shaw Family Archives still has not "entered" Indiana.

Ultimately, an application of the *Anthem* factors demonstrates that specific jurisdiction does not exist here. First, and most importantly, the plaintiffs claims do not arise out of any action by Shaw Family Archives relating to the State of Indiana, because Shaw Family Archives intentionally avoided any and all such actions. Second, as set forth *supra*, Shaw Family Archives' other contacts with Indiana, if any are remarkably limited. Third, given Shaw Family Archives' limited interaction with Indiana and the fact that Shaw Family Archives only contracted with Valhalla, a New Hampshire corporation, under the terms and conditions that

Marilyn Man's products only be used to market the Project and that no activities would be taken in Indiana, Shaw Family Archives could not reasonably have foreseen being haled into Court in Indiana.  Fourth, Shaw Family Archives' contacts relating to the events alleged were conducted solely outside of Indiana.  Fifth, the Image Agreement did not arise through any action by Shaw Family Archives to encourage and develop contacts in Indiana.  Accordingly, an Indiana Court cannot exercise specific personal jurisdiction over Shaw Family Archives in this matter.

The transactions at issue in this case did not arise from any purposeful development of contacts in Indiana by Shaw Family Archives.  In fact, no such contacts exist.  Shaw Family Archives' limited contacts with Indiana are random, fortuitous and attenuated and entirely unrelated to the plaintiff's claims in the Complaint relating to Marilyn Monroe.  These contacts are insufficient to establish specific *in personam* jurisdiction over Shaw Family Archives.

### d.    The Exercise of Jurisdiction Over Shaw Family Archives Is Not Reasonable

The second prong of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," *i.e.*, whether it is reasonable under the circumstances of the particular case.  *International Shoe*, 326 U.S. at 316.  While the exercise of jurisdiction is favored where a threshold showing of minimum contacts has been made, it may be defeated where the defendant presents "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).  In determining whether the exercise of jurisdiction is reasonable, a court evaluates the following factors: (a) the burden that the exercise of jurisdiction will impose upon the defendant; (b) the interests of the forum state in adjudicating the case; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (e) the shared interest of the states in furthering substantive social policies.  *See Asahi Metal Industry*

*Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113-14 (1987). Given these factors, the exercise of jurisdiction by this Court over Shaw Family Archives in this matter would not be reasonable.

The relevant jurisdictional factors all cut against this Court's exercise of jurisdiction. First, the exercise of jurisdiction by this Court will force Shaw Family Archives, a small New York business entity, to litigate a matter that has little if any meaningful connection to this jurisdiction, hundreds of miles away from its place of business, at great cost and inconvenience. Second, Indiana has little cognizable interest in this litigation. None of the events at the heart of this litigation occurred in Indiana.

In addition, the exercise of this Court's jurisdiction will not further the efficient administration of justice. Generally, the fact witnesses and documentary evidence relevant to this matter are located outside of Indiana. Finally, the prosecution of this matter in Indiana does nothing to further the common interests of the several states in promoting substantive social policies in that this litigation does not involve agreements entered into or performed in Indiana. Indiana has virtually no substantive ties to this litigation other than the mere fact that CMG resides here.

The application of the *Asahi* factors demonstrates that the exercise of this Court's jurisdiction over Shaw Family Archives is not reasonable. As Shaw Family Archives has not maintained the requisite minimum contacts with Indiana, the exercise of this Court's jurisdiction over Shaw Family Archives would not be appropriate or reasonable.

**B.    This Action Should Be Transferred To The United States District Court For The Southern District Of New York Pursuant To 28 U.S.C. § 1404(a).**

As set forth *supra*, Shaw Family Archives has an action pending before the United States District Court for the Southern District of New York against the plaintiffs in this action. In view

of the fact that the New York Court was the first court to obtain jurisdiction over the parties, and

the fact that this Court does not have personal jurisdiction over Shaw Family Archives (or

Bradford Licensing Associates), this Court should dismiss this matter or alternatively transfer it

for consolidation with the New York Action as this would serve the convenience of the parties,

the convenience of the witnesses, and the interests of justice.

        "Federal district courts have the inherent power to administer their dockets so as to

conserve scarce judicial resources." *Trippe Manufacturing Co. v. American Power Conversion*

*Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).  Accordingly, "[a] district court has 'an ample degree of

discretion' in deferring to another federal proceeding involving the same parties and issues to

avoid duplicative litigation." *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,

342 U.S. 180, 183 (1952)).

        Here, the New York Court was the first to acquire jurisdiction over the parties, and as

such it has priority to consider the issues raised by this litigation.  *See Orthmann v. Apple River*

*Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985); *but see Trippe Manufacturing Co.*, 46 F.3d

at 629 (noting that the Seventh Circuit does not rigidly adhere to a "first-to-file" rule and that the

mere fact that a party first filed an action does not give it an absolute right to choose the forum in

which the question of venue should be decided).  A court acquires jurisdiction over a party by

service of process.  *Ex Parte Peru*, 318 U.S. 578, 587 (1943).

        In this matter, the plaintiffs first attempted to serve their Complaint on Shaw Family

Archives via certified mail on David Marcus at his former employer located at 199 Main Street,

White Plains, New York.  That employer then forwarded the Complaint and Summons to Mr.

Marcus' attention.  (Marcus Aff., ¶ 6).  Mr. Marcus, however, was not authorized to and did not

accept service at that time on behalf of Shaw Family Archives. (Marcus Aff., ¶ 6). He is not an

officer or a director of Shaw Family Archives, and he is not the Shaw Family Archives'
registered agent in New York or any other State. (Marcus Aff., ¶ 6).

Mr. Marcus is, however, listed on the NYDS Internet directory solely as the individual
who receives a copy of documents served on the NYDS in the event that the NYDS accepts
service on behalf of a business organization. (Marcus Aff., ¶ 5). The NYDS Internet listings,
however, identify other individuals as officers and directors of Shaw Family Archives for
instances where someone wishes to serve Shaw Family Archives <u>directly</u> –as CMG attempted to
do here. (Marcus Aff., ¶ 6). Mr. Marcus does not know how my name came to be listed on the
NYDS Internet listing. (Marcus Aff., ¶ 6). Regardless, Mr. Marcus should not have been served
directly in this matter, and the service of the Complaint on Mr. Marcus by the plaintiffs did not
constitute service of process of the Complaint on Shaw Family Archives.

On or about April 19, 2005 the Shaw Family Archives, Edith Marcus and Meta Stevens
filed the Shaw Family Archives Complaint. (Marcus Aff., ¶ 7). The Shaw Family Archives
Complaint seeking damages for copyright infringement as well as injunctive relief precluding
CMG and MMLLC from taking further actions in violation of copyright laws and a declaration
from the Court that CMG has no right of publicity relating to Marilyn Monroe. (Marcus Aff., ¶
8; SFA Complaint, *passim*). The SFA Complaint was served on CMG and MMLLC on April 20,
2005 via a process server. (Marcus Aff., ¶ 9; Affidavits of Service). On May 4, 2005, CMG and
MMLLC filed an Amended Alias Summons with this Court and served it via certified mail on
Larry Shaw as chief executive officer of Shaw Family Archives. (Marcus Aff., ¶ 10). Larry
Shaw received the Summons on or about May 16, 2005 when he found it in his door. (Marcus
Aff., ¶ 10). It was not until this time that service was perfected on Shaw Family Archives.
Accordingly, the New York Court was the first to obtain jurisdiction over the parties to these
actions. This matter should, therefore, be dismissed to allow the New York action to proceed.

Shaw Family Archives acknowledges the point that the 7th Circuit does not strictly adhere to the first-to-file rule. As implicitly noted by the *Trippe Manufacturing* Court, the first-to-file rule is but one consideration for a district court to consider in managing its docket, as it does not create an "absolute right" to choose a forum. 46 F.3d at 629; *see also Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). However, in this case, other factors also favor the dismissal and/or transfer of this matter to the New York Court.

First, as set forth *supra*, this Court cannot acquire personal jurisdiction over Shaw Family Archives. Second, the balance of convenience under a 28 U.S.C. § 1404(a) transfer analysis dictates that the Southern District of New York is the proper forum to hear the entire controversy between Shaw Family Archives and the plaintiffs. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether to transfer pursuant to 28 U.S.C. § 1404(a), courts consider the following: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). These factors are considered "in light of the circumstances of the case." *Id.* Shaw Family Archives carries the burden of demonstrating, by reference to the particular circumstances, that transfer is clearly more convenient. *Id.*

In this instance, transfer is clearly more convenient. First, the convenience of the parties is served by transferring this action to the Southern District of New York. While CMG is an Indiana corporation, it has an international reach. CMG maintains offices in Los Angeles and Rio de Janeiro. (*See* http://www.cmgworldwide.com/ ("CMG's Webpage")).[6] CMG is "the

---

[6] A copy of the relevant pages of CMG's Webpage is attached as Exhibit A to the Affidavit of Counsel. The Affidavit of Counsel is attached as Exhibit 3 to this Memorandum.

premier company for representing the families and estates of deceased celebrities. Today, CMG

Worldwide represents over 400 diverse personalities and corporate clients in the sports,

entertainment, and music fields." (CMG's Webpage). CMG states further that it does not need

to be based in New York because "our market is international, and advances in technology have

enabled us to efficiently market and protect our clients around the world." (CMG's Webpage).

According to the plaintiffs' Complaint, MMLLC is a Delaware limited liability company with its

principal place of business in Indiana. CMG is the agent for MMLLC, however, and MMLLC

has CMG's resources available at its disposal. Thus, CMG and MMLLC are capable, without

inconvenience, of litigating the issues presented in this matter before the New York Court.

In stark contrast, the defendants in this matter are small East Coast entities and a sole

individual with no demonstrated presence or business activities in Indiana. Notwithstanding the

fact that Shaw Family Archives and Bradford Licensing have such limited contacts with Indiana

that the exercise of jurisdiction over them would violate standards of fair play and substantial

justice, the defense and prosecution of this action in Indiana would substantially inconvenience

Shaw Family Archives (and the other defendants to this action). Accordingly, the defendants'

inconvenience of prosecuting this action in Indiana is much greater than the plaintiffs'

inconvenience of prosecuting its claims and defenses before the New York Court.

Second, the convenience of the witnesses strongly favors transferring this matter to New

York. This factor is often the most significant. *Volkswagen Aktiengesellschaft v. Dee

Engineering, Inc.*, 2003 WL 1089515, at *3 (S.D. Ind. 2003). The allegations of the Complaint

show that the core of this case will require the testimony of the parties, primarily the defendants,

all of whom are located on the East Coast, as well as the entities with whom the defendants

allegedly contracted, who are located, or at least do business, on the East Coast. *See Distance

Learning Systems Indiana, Inc. v. A & D Nursing Institute, Inc.*, 2005 WL 775928, * 5 (S.D. Ind.

2005).  The critical questions on the merits of the claims and defenses revolve around the ownership of photographs and images located in New York and of contracts entered into in New Jersey, New York and/or New Hampshire.  Further, the relevant non-party witnesses—the parties with whom the defendants contracted, allegedly causing injury to the plaintiffs—are more amenable to discovery proceedings and trial in New York.  *Id*. (noting that "the need to have non-party witnesses available for trial so that it is not conducted primarily by reading deposition transcripts weighs heavily in favor of employing a transfer.").

Finally, the interest of justice favors the transfer of this matter.  The interest of justice analysis "relate[s] to the efficient administration of the court system."  *Coffey*, 796 F.2d at 221. Factors courts may consider in making an interest of justice determination include whether the litigants are more likely to receive a speedy trial; whether consolidation is feasible in the transferee district; and whether it is advantageous to have a federal judge try the matter who is familiar with applicable state law.  *Id*.  In this instance there is no reason to believe that the New York Court could not provide a speedy trial or rule on the applicable law, which will revolve around federal questions relating to copyright ownership and the interaction between copyright and rights of publicity.

Additionally, in making this determination, it is worth noting that a "court need not decide issues of personal jurisdiction, however, if venue issues call for dismissal or transfer." *Distance Learning Systems Indiana*, 2005 WL 775928 at *2.  Further, the Court may transfer the case on venue grounds even if it does not have personal jurisdiction over all of the defendants. *Id*.  Accordingly, an interest of justice analysis suggests that venue is more appropriate in a venue where personal jurisdiction would not be questioned.  *Id*. at *5.  In this matter the New York Court could exercise personal jurisdiction over any essential parties. As set forth in this pleading *supra*, and Bradford Licensing's jurisdictional pleadings, however, personal jurisdiction

24

is at question in this matter.  Thus, the transfer of this matter to the District Court for the Southern District of New York would create judicial efficiency and serve the interest of justice.

Ultimately, the New York Court was the first court to obtain jurisdiction over the parties. Further, transfer of this action to the New York Court would be in the best interest of the parties to this litigation, would facilitate the participation of non-party witnesses in this litigation and would create judicial economies. Accordingly, given the fact that this Court does not have personal jurisdiction over Shaw Family Archives (or Bradford Licensing), this Court should dismiss this matter or alternatively transfer it for consolidation with the New York Action.

### IV. CONCLUSION

For the foregoing reasons, defendant Shaw Family Archives, Ltd. respectfully requests that CMG Worldwide Inc. and Marilyn Monroe LLC's Second Amended Complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(B)(2) as this Court may not exercise *in personam* jurisdiction over Shaw Family Archives, or that in the alternative, this Court transfer this action to the Federal District Court for the Southern District of New York, and for all other relief as is just and proper.

Respectfully submitted,


/S/Hamish S. Cohen
James M. Hinshaw
Hamish S. Cohen
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900
(317) 635-8900

*Attorneys for Defendants, Bradford Licensing Associates and Shaw Family Archives, Ltd.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document has been served on the following via the Court's electronic filing system this 5th day of July 2005:

J. Lee McNeely
McNEELY STEPHENSON THOPY & HARROLD
30 E. Washington Street
Suite 400
Shelbyville, IN 46176

James Braden Chapman, II
Jonathan G. Polak
DANN PECAR NEWMAN & KLEIMAN
One American Square
Suite 2300
PPO Box 82008
Indianapolis, IN 46282

/S/Hamish S. Cohen

959866.3

26