IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation and MARILYN MONROE, LLC, a Delaware Limited Liability Company, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Cause No.:1:05-cv-0423-DFH-WTL |
| BRADFORD LICENSING ASSOCIATES, THE SHAW FAMILY ARCHIVES, Ltd., a New York Corporation, JAMES E DOUGHERTY, and VALHALLA PRODUCTIONS, LLC, a Maine Limited Liability Company, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants | ) |

### DECLARATION OF CRISTINA PIQUINELA IN SUPPORT OF RESPONSE TO MOTION TO DISMISS

I, Cristina Piquinela, declare as follows:

1. I am over eighteen years of age and am fully competent to make this Declaration. The facts contained herein are stated upon my personal knowledge.

2. I am the Vice President of Marketing and Licensing for CMG. I have been employed with CMG since September of 1996 and have been the Account Executive for Marilyn Monroe LLC since 1999. I have held my current position since January 2004.

3. As Vice President of Marketing and Licensing, I am actively involved in the marketing and licensing of nearly 200 entertainment, sports, historical and music celebrities, as well as trademarks belonging to various corporate entities (our clients). I serve as a link between

C P declaration (7/05) doc



EXHIBIT A

licensees and our clients with regards to negotiations, permissions, artwork submissions and product approvals.

4. I also serve as the primary Account Executive for Marilyn Monroe LLC. In this capacity, I have the primary responsibility of negotiating a large number of all the incoming license agreements for Marilyn Monroe LLC and for communicating with licensees. Moreover, I coordinate deal submissions and artwork approvals for every Marilyn Monroe LLC licensing or promotional program, whether I or another CMG employee originated that program. I review Marilyn Monroe LLC monthly reports, including royalty reports.

5. As a result of my employment with CMG, I am familiar with the images, signatures, trademarks, copyrights, and rights of publicity owned and utilized by Marilyn Monroe LLC and licensed by various licensees throughout the world. CMG originally secured the right to manage and exploit the Monroe Intellectual Property rights ten (10) years ago.

6. Throughout my employment with CMG (which is incorporated in Indiana), I have consistently and exclusively worked out of CMG Corporate Headquarters, which is located at 10500 Crosspoint Boulevard, Indianapolis, Indiana.

7. While CMG has two satellite offices - one in Los Angeles, California and the other in Rio de Janeiro, Brazil - neither of these offices is the usual or customary location for business related to Marilyn Monroe LLC. Indeed, the vast majority of business related to Marilyn Monroe LLC is conducted in Indianapolis.

8. Generally, CMG's Indianapolis headquarters are a hub for all of CMG's business administration, and every single deal passes through and is maintained in Indianapolis. For example, the contracts administration department which tracks and processes every single

2

contract is located in Indianapolis. The departments responsible for cutting the checks and preparing the monthly reports sent to clients are located in Indianapolis.

9. All documents and materials relating to Marilyn Monroe LLC, and more specifically, to the rights at issue in this case, are located in Indianapolis, Indiana. For example, I maintain on my local hard drive and in my personal hard copy files a complete set of records for Marilyn Monroe LLC, which I must consult on a frequent and regular basis to carry out my routine duties. Because I have a non-portable desktop computer, my filing system is not accessible outside my Indianapolis office. CMG also stores Marilyn Monroe LLC-related artwork and proposed and produced product prototypes and samples in its Indianapolis office.

10. Virtually all employees of CMG who regularly work on the Marilyn Monroe LLC account are located in Indianapolis, Indiana. In addition to myself, the following employees regularly work on the Marilyn Monroe account and reside and work in Indiana: (1) Jamie Maslanka (2) Samira Ali (3) Kunal Dua (4) Jeff Bear (5) Maria Gejdosova and (6) Sarah Small. Ms. Maslanka, Ms. Ali, and Mr. Dua are all involved with negotiating licensing deals on behalf of Marilyn Monroe LLC. Mr. Bear is the Vice President of Contracts Administration; in that capacity, he processes all the Marilyn Monroe LLC agreements and tracks royalty reports, among other things. Ms. Gejdosova is responsible for overseeing that Marilyn Monroe LLC receives its payments due under the agreements, and Ms. Small prepares all the monthly reports that are submitted to Marilyn Monroe LLC.

11. Given that my ability to get my day-to-day work completed depends on my actual presence in my office, it would be incredibly inconvenient were CMG required to litigate this action in California. For example, I receive -- virtually on a daily basis -- artwork from existing licensees seeking approval to develop, produce and market a new product. Pursuant to standard

terms in each and every licensing agreement, I am required to seek approval from Marilyn Monroe LLC and respond to the licensee's request within a short specified period of time, often just a few days. While some licensees transmit this artwork electronically, others cannot readily do so and only send hard copies of artwork. Therefore, each day I am out of my Indianapolis office hinders my ability to perform my job effectively and efficiently.

12. Moreover, I—as well as the above-mentioned CMG employees—am also responsible for work on many other accounts. Therefore, our absence from the office presents serious obstacles to our ability to effectively serve our other clients.

13. In addition, several of CMG's licensees have contacted us due to confusion caused by Bradford Licensing Associates as to CMG's rights with regard to the Monroe Intellectual Property rights. Specifically, Trevco (a Michigan company) and The Lyon Company (a Utah company), have expressed confusion regarding Bradford Licensing Associates and its statements and representations suggesting that Trevco and The Lyon Company could secure licensing agreements from Bradford Licensing Associates for the use of the Monroe Intellectual Property Rights.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the ____ of July, 2005, at Indianapolis, Indiana

_____
CRISTINA PIQUINELA

4

CP declaration (7/05).doc

Monday, July 25, 2005.max