# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation and MARILYN MONROE, LLC, a Delaware Limited Liability Company, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Cause No.:1:05-cv-0423-DFH-WTL ) ) |
| BRADFORD LICENSING ASSOCIATES, THE SHAW FAMILY ARCHIVES, Ltd., a New York Corporation, JAMES E. DOUGHERTY, and VALHALLA PRODUCTIONS, LLC, a Maine Limited Liability Company, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT SHAW FAMLY ARCHIVES' 12(B)(2) MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR ALTERNATIVELY TO TRANSFER VENUE**

Plaintiffs CMG Worldwide, Inc. ("CMG"), and Marilyn Monroe LLC ("Marilyn Monroe"), by counsel, respectfully submit the following Response to Defendant The Shaw Family Archives' ("Shaw") 12(b)(2) Motion to Dismiss or, Alternatively, Transfer Venue.

## I. INTRODUCTION

Under the controlling law of this Circuit, personal jurisdiction over an out-of-state defendant is appropriate when its tortious conduct outside of the state causes injury to a plaintiff within the forum state. This is precisely what happened here – Shaw's conduct has harmed both CMG and Marilyn Monroe LLC in Indiana. Accordingly, Shaw is subject to personal jurisdiction in this Court.

In support of its motion to dismiss, Shaw repeatedly asserts that it has structured its business and business dealings in such a manner as to avoid being subject to jurisdiction in Indiana. Thus, Shaw claims that the Court should reward its efforts and dismiss this case for lack of personal jurisdiction. Shaw's argument, however, is a two-edged sword. By expressly attempting to avoid Indiana in its business dealings and strategy, Shaw has exhibited a knowledge and understanding that any infringement or tortious conduct by it toward Plaintiffs and Plaintiffs' intellectual property rights will be felt mainly and directly in Indiana, CMG's home forum and the situs from which the Monroe Intellectual Property rights are advertised, marketed, promoted, and licensed on a worldwide basis for Marilyn Monroe LLC.

As for the alternative motion to transfer, Shaw has failed to show that the Southern District of New York is a clearly more convenient forum to litigate this case than the Southern District of Indiana. Accordingly, Shaw's motion should be denied in its entirety.

## II. JURISDICTIONAL FACTS

Plaintiff CMG is a corporation organized under the laws of this State and maintains its principal place of business in Hamilton County. Second Amended Complaint ("SAC") at ¶ 1. Similarly, Plaintiff Marilyn Monroe LLC is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in Indiana through CMG, its exclusive licensing and business representative. *Id*. at ¶ 2. Marilyn Monroe LLC is the proprietor of various Intellectual Property rights, including certain trademarks, copyrights, and the rights of association and sponsorship and Right of Publicity and Privacy in and to the Marilyn Monroe name, image, and persona (hereinafter "Monroe Intellectual Property rights"). *Id*. at ¶ 7.

CMG originally secured the right to manage and exploit the Monroe Intellectual Property rights ten (10) years ago. *See* Exhibit A at ¶ 5.  Since then, CMG has been in the business of representing Marilyn Monroe LLC for the purpose of licensing to third parties the permission to commercially utilize the Monroe Intellectual Property rights. SAC at ¶ 3.  As part of its duties on behalf of Marilyn Monroe LLC, CMG advertises, markets, and promotes the availability of Marilyn Monroe for licensing on a worldwide basis. *Id.* at ¶ 5.  The vast majority of all business related to Marilyn Monroe LLC is conducted in Indianapolis. Exhibit A at ¶ 7.  And, every single deal entered into by CMG concerning the licensing of the Monroe Intellectual property rights is run through Indianapolis. *Id.* at ¶ 8.

Shaw is organized under the laws of the State of New York and maintains its principal place of business there. SAC at ¶ 9; *see also* Exhibit B at ¶ 3.  Shaw has within its possession certain original photographs of Marilyn Monroe taken by Sam Shaw (hereinafter "Monroe/Shaw photographs"). SAC at ¶ 12; Exhibit B at ¶ 12.

Shaw, both directly and through its agents, has been infringing upon the Monroe Intellectual Property Rights by actively soliciting companies and offering to license the Monroe/Shaw photographs for commercial use in connection with various products. SAC ¶¶ 13, 15-19, 22-26.  For example, Shaw has entered into a licensing agreement with a business entity located in California (*i.e.*, CMZ Handbags and Jewelry) to place Marilyn Monroe's image upon handbags. Exhibits C at ¶ 6 & C-1 to C-13.  In addition to infringing upon the Monroe Intellectual Property Rights by using those rights for a commercial purpose without Plaintiffs' authorization or consent, Shaw has informed CMZ Handbags and Jewelry (and others) that Plaintiffs have no right or interest in the Monroe Intellectual Property Rights. Exhibits C at ¶ 6 & C-10.

917070_1

In addition, in February 2004, Shaw entered into a licensing agreement with Defendant Valhalla Productions LLC ("Valhalla"). This licensing agreement authorized Valhalla to use the image of Marilyn Monroe, in part, for promotional purposes and for merchandising.[1] *See* Exhibit D. That same month, Valhalla entered into a licensing agreement with Defendant Bradford Licensing Associates ("Bradford") whereby Bradford agreed to assist Valhalla in licensing products and merchandise bearing the Marilyn Monroe image.[2] *See* Exhibit E. Thereafter, Valhalla entered into licensing agreements with third-parties for the placement of Marilyn Monroe's image upon certain products. *See* Exhibits F & G. These products are now being manufactured, advertised, and sold in catalogues and on the Internet. *See* Exhibits H & I.

Based on these contacts, the nexus with this State is unmistakable and jurisdiction is proper here.

### III. ARGUMENT

A.     <u>**This Court Possesses Personal Jurisdiction Over Shaw**</u>

    1.   <u>**Plaintiffs Need Only Make A Prima Facie Showing Of Personal Jurisdiction**</u>

Where the issue of personal jurisdiction is determined in the absence of an evidentiary hearing, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthlelabo, S.A.*, 338 F.3d 773, 782

---

[1] Although Larry Shaw represented in his affidavit that the licensing agreement approved of the merchandising and marketing of Marilyn Monroe's image as long as the commercial activities did not occur in Indiana, the licensing agreement contains no such exclusion, and the agreement contains a provision stating that the written agreement constitutes the entire agreement between the parties and may only be changed or modified in writing. Exhibit D.

[2] Bradford maintains an Internet website, www.bradfordlicensing.com, which advertises and solicits companies and individuals who are interested in licensing the Marilyn Monroe image and who are interested in the merchandise being offered by Valhalla. Exhibits H & I. Bradford's website contains a link to the Italia Collection's website, www.theitaliacollection.com, whereby individuals, including individuals within Indiana, may purchase charm bracelets bearing Marilyn Monroe's picture and image which have been licensed by Valhalla and Bradford. Exhibit I & I-1 to I-19. Notably, since the inception of this suit, Bradford has modified its website to include a disclaimer regarding licensing and doing business in Indiana. Compare Exhibits I-3 to I-4 which bear the disclaimer with Exhibit J (which was attached to the Complaint as Exhibit B) which does not bear the disclaimer. In addition, Bradford now requires users of its website to provide a login and password in order to access certain pages on its website. *See* www.bradford.licsnsing.com.

(7th Cir. 2003). Since personal jurisdiction is raised *via* a motion to dismiss, the court must accept the uncontroverted allegations in the complaint as true and resolve any factual conflicts in the affidavits and -other evidence in the plaintiff's favor. *Id.* at 782; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

The determination of personal jurisdiction normally requires a two-step inquiry: (1) whether the defendant falls within Indiana's long-arm statute; and (2) whether the exercise of jurisdiction over the defendant comports with the requirements of federal due process. *Purdue Research Found.*, 338 F.3d at 779.

However, Indiana's long-arm statute has recently "been expanded to the full extent of the law," as it now provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." *Richards and O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n. 6 (Ind. Ct. App. 2002)(Najam, J., concurring); Ind. Trial R. 4.4(A). Accordingly, "the first prong of the inquiry collapses into the second prong, and the only issue is whether the exercise of jurisdiction over [the defendant] comports with federal due process." *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004).

## 2. **Due Process**

In order to comport with due process, the Constitution requires that a defendant have certain "minimum contacts" with the forum state such that the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).

A defendant is subject to a state's specific jurisdiction if the suit arises out of, or is related to, the defendant's minimum contacts with the forum state.[3] *Hyatt Int'l*, 302 F.3d at 716; *RAR, Inc., v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). A court must determine whether the defendant "purposely established 'minimum contacts' in the forum State" such that they "should reasonably anticipate being haled into court" in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As set forth below, Shaw's contacts with the State are directly related to the harm which CMG and Marilyn Monroe LLC suffered in Indiana.

### 3. **This Court Has Jurisdiction Over Shaw Pursuant To The "Effects Test"**

#### a. **This Circuit Has Adopted A Broad View Of The "Effects Test"**

Under the "effects test," specific personal jurisdiction over a nonresident defendant is proper when the defendant's intentional tortious actions cause harm to the plaintiff in the forum state. *Calder v. Jones*, 465 U.S. 783, 788-790 (1984). In *Calder*, the United States Supreme Court held that because a Florida writer made allegedly defamatory statements against a California resident, the California courts had jurisdiction over the defendant because the defendant's "intentional conduct in Florida [was] calculated to cause injury to respondent in California." *Id.* at 791. The Seventh Circuit has subsequently interpreted the "effects test" broadly. *Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir. 1997).

In *Janmark*, the plaintiff, an Illinois corporation, and the defendants, California residents, were competitors who both sold minishopping carts worldwide. *Id*. at 1202. The defendants claimed that they owned a copyright in their cart design and threatened to sue a customer of the plaintiff for contributory copyright infringement. *Id*. Plaintiff's customer then stopped buying shopping carts from the plaintiff. *Id*. Plaintiff then sued the defendants in Illinois seeking a

---

[3]  Plaintiffs do not allege that this Court has general jurisdiction over Shaw.

declaratory judgment and asserting a claim of tortious interference with prospective economic advantage. *Id.* at 1201.

Even though the defendants had no other contacts with Illinois, the Seventh Circuit held that Illinois could exercise jurisdiction over the defendants solely because "the injury and thus the tort occurred in Illinois." *Id.* at 1202. The Seventh Circuit reasoned that since without an injury there is no tort and that a wrong does not become a tort until an injury has occurred, the location of the injury is essential to an understanding of where the tort occurred. *Id.* Because the injury took place in Illinois, the tort occurred in Illinois and was thus actionable in Illinois. *Id.*

Similarly, in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994), the Seventh Circuit decided a trademark case wherein the Indianapolis Colts sued a new football franchise in Baltimore that was using the Colts' name. *Id.* at 411. Despite the Baltimore Football Club having very little, if any, contacts with Indiana, the court determined that Indiana had jurisdiction holding:

> If the trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana. . . . Since there can be no tort without an injury, the state in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should, one might suppose, be amenable to suit there.

*Id.* at 411-412. (internal citations omitted). Other courts within this Circuit are in accord. *See Riddell v. Monica*, 2003 WL 21799935, * 3 (N.D. Ill. July 25, 2003)("As defendants were aware, plaintiff's principal place of business is in Illinois, and thus the injury would be felt most severely in Illinois. Under the circumstances, it was foreseeable that defendants would be required to answer for such actions in Illinois."); *International Molding Mach. Co. v. St. Louis Conveyor Co.*, 2002 WL 1838130, * 4 (N.D. Ill. Aug. 12, 2002)("[S]pecific jurisdiction can be proper when the injury occurs in Illinois, even if all of the other relevant conduct took place elsewhere."); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 920 (C.D. Ill.

2000)(relying on *Janmark* to hold that New York corporation who commits the "torts" of trademark infringement and unfair competition against an Illinois corporation, so that the injury is felt in Illinois, submits itself to the jurisdiction of the Illinois courts).[4]

### b. Shaw Has Engaged In Tortious Conduct Causing Harm To Indiana Residents

Shaw has engaged in numerous torts causing harm to CMG here in Indiana. First, Shaw has violated CMG's and Marilyn Monroe LLC's right of publicity by selling, through its various agents and representatives (without permission) products which infringe upon the Monroe Intellectual Property Rights. SAC ¶¶ 15-26; Exhibits D-J. In addition, Shaw has interfered with the prospective business advantage of CMG (in addition to violating the right of publicity) by licensing the rights to certain Marilyn Monroe images to a third party without the authorization or permission of CMG. SAC at ¶¶ 61-67; Exhibits D-J. Finally, Shaw has disparaged and libeled Plaintiffs by informing and advising licensees and prospective licensees that Plaintiffs have no interest or rights in the Monroe Intellectual Property Rights or, alternatively, that Shaw possesses all of the rights necessary to make commercial use of the Monroe Intellectual Property Rights. SAC ¶¶ 56-60; Exhibits C at ¶ 6; C-10.

This conduct has injured both CMG and Marilyn Monroe LLC primarily in the State of Indiana. By engaging in this conduct, Shaw has caused damage to valuable property rights which are wholly administered in this State as well as the derivative rights stemming from the ability to license these rights. Shaw has tacitly admitted that the harm resulting from its infringement and tortious conduct has been felt by Plaintiffs in Indiana by attempting to structure its business as to avoid Indiana. In so doing, Shaw has recognized that it is harming Plaintiffs in

---

[4]  "It is well-established that a claim of infringement of intellectual property rights . . . sounds in tort." *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 1998 WL 207860 (C.D. Ill. Apr. 1, 1998).

Indiana, that Indiana is the situs of its wrongful conduct, and that it is amenable to service in this State.

Moreover, by interfering with prospective business relations, Shaw has caused injury to CMG because were it not for this interference, particular entities may have worked with and obtained licenses from CMG. Shaw has also impaired the ability of Plaintiffs to license legitimate and authorized commercial uses of the Monroe Intellectual Property rights. Because these actions have caused injury in this forum, jurisdiction is proper under the "effects test."

### d. **Plaintiffs Have Other Contacts With This State Sufficient To Justify Jurisdiction**

Shaw attempts to distinguish *Indianapolis Colts* and *Janmark* by stating that the "effects test" requires that a plaintiff must do something more than just demonstrate that an injury has occurred in Indiana. A similar claim was rejected in *Bunn-O-Matic Corp*:

> Admittedly, *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997) does not explicitly say whether or not a Defendant must somehow "enter" a forum to create a basis for personal jurisdiction. As a practical matter, however, the decision definitively answers the question in the negative. The *Janmark* court found a basis for personal jurisdiction in Illinois when a California defendant had done nothing more than make a telephone call from California to New Jersey. The defendant had not "entered" or caused any entry into Illinois. For the *Janmark* court, it was enough that "the injury (and therefore the tort)" occurred in Illinois. After *Janmark*, one cannot plausibly maintain that a defendant's entry into the forum state is a constitutional prerequisite to personal jurisdiction.

*Bunn-O-Matic Corp. v. Bunn Coffee Serv.*, No. 97-3259, 1998 U.S. Dist. LEXIS at * 5-6 (C.D. Ill. May 20, 1998). *Indianapolis Colts* did not hold that there must be some sort of entry into the state to have a claim but, instead, pointed out that such contacts made the case for jurisdiction even stronger.

Regardless, the same types of "entries" which the Seventh Circuit noted were sufficient in *Indianapolis Colts* are present here. In *Indianapolis Colts*, the Seventh Circuit noted that an entry into Indiana occurred *via* the cable television broadcasts of football games which could be

received and viewed by Hoosiers. *Indianapolis Colts*, 34 F.3d at 411-12.  Similarly, Shaw has

entered the forum State by maintaining a website on the Internet which may be accessed and

viewed from Indiana. *See Bunn-O-Matic Corp. v. Bunn Coffee Serv.*, 1998 WL 207860 (C.D. Ill.

Apr. 1, 1998)(stating that *if* entry into the forum state is actually required: "Defendant's actions

in setting up a website accessible to residents of Plaintiff's home state would certainly meet this

very low 'entry' threshold.").  The Seventh Circuit also noted in finding an entry that "[i]t is true

that the defendants have not yet licensed the sale of merchandise with the name 'Baltimore CFL

Colts' on it in Indiana, but citizens of Indiana buy merchandise in other states as well." *Id*. at

412.  Likewise, citizens of Indiana can easily purchase products—licensed by Shaw and illegally

infringing upon Plaintiffs' rights—in other states bring those products back to Indiana with them.

Thus, to the extent that the Court believes some type of entry is required, Shaw's activities

satisfy this requirement.

Furthermore, Indiana Code § 32-36-1-9(4) provides: "A person who: (4) knowingly

causes advertising or promotional material created or used in violation of section 8 of this

chapter to be published, distributed, exhibited, or disseminated within Indiana; submits to the

jurisdiction of Indiana courts." *Id*.  Here, Shaw has certainly submitted to jurisdiction in Indiana

by its actions in knowingly causing products which infringe upon Plaintiffs' right of publicity to

be advertised on Bradford's website and on other websites and catalogues.[5]  Thus, jurisdiction is

proper in the Southern District of Indiana.

---

[5] To the extent the Court desires proof of sales into Indiana, Plaintiffs should be granted jurisdictional discovery to determine how many infringing sales have been made into Indiana.

**2.  Fair Play and Substantial Justice Permit the Exercise of Jurisdiction Here**

After determining that minimum contacts exist, the Court must look at whether it would offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over Shaw. *Burger King*, 471 U.S. at 477.  In making this determination, the Court:

> [M]ay evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive policies.

*Purdue Research Found.*, 338 F.3d at 781 (quoting *Burger King*, 471 U.S. at 477).

Shaw's burden in litigating this case in Indiana is not so great as to amount to a deprivation of due process.  "[P]rogress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294; *see Board of Tr., Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

Furthermore, Indiana has a significant interest in the adjudication of this case since CMG is an Indiana company that has been injured by Shaw's tortious activity.  CMG's interest in obtaining convenient and effective relief is substantial because Shaw has continued to injure CMG's business by its marketing and selling of Marilyn Monroe related products and falsely informing others that Plaintiffs possess no rights.

Here, fair play and substantial justice strongly favor the exercise of jurisdiction in this forum.

**B.**     **There Is No Basis For Changing Venue From This Court**

Finally, there is no basis for transferring the venue in this case from this Court to the

Central District of California pursuant to 28 U.S.C. § 1404(a).

**1.**  **A Proper Application of the First-To-File Rule Establishes that his Court Should Retain Jurisdiction over this Case**

As part of its motion to transfer, Shaw argues that the suit which it filed in the United

States District Court for the Southern District of New York was filed prior to the above-

captioned case, in terms of the first-to-file rule, and therefore, this Court should transfer this case

to the Southern District of New York.  In making this argument, Shaw does not dispute that the

above-captioned case was filed chronologically prior to the New York case; rather Shaw makes

the novel argument that, in terms of the first-to-file rule, the first court to acquire jurisdiction

over the parties has priority to consider the case.  Because, according to Shaw, Plaintiffs did not

effectuate proper service of process upon it in this case until after it had filed suit in New York

and perfected proper service of process upon Plaintiffs in that case, Shaw claims that the New

York case is the first to be filed for purposes of the first-to-file rule.[6]

However, Shaw' interpretation of the first-to-file rule is incorrect.  The first-to-file rule is

a judicial doctrine "which generally favors the forum of the first-filed suit." *S.J.G. Enter., Ltd. v.*

*Eikenberry & Assocs., Inc.*, 2004 WL 1794475, * 1 (N.D. Ill. Aug. 5, 2004).  "Under this rule, a

district court has the discretion to transfer a suit that 'is duplicative of a parallel action already

pending in another federal court.'" *Id.* (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223

(7th Cir. 1993).

Plaintiffs are aware of no case in this Circuit which interprets the first-to-file rule as

Shaw does.  On the contrary, courts appear to determine the priority of the cases filed based upon

---

[6]  The United States District Court for the Southern District of New York has deferred to this Court and has *sua sponte* stayed that action pending a determination of the motion to dismiss pending before this Court. *See* Exhibit K.

the chronological dates on which the two complaints are filed, not when service of process is perfected upon the defendants. *E.g.*, *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982)("Pacesetter suggests that the first to file rule may have no application here because although the Florida action was filed before the California action, Pacesetter was not served with the Florida complaint until after the California action was filed.  It therefore notes that the 'Central District of California was (the) first court to gain jurisdiction over the parties.'  This contention is without merit.  In view of the fact that Pacesetter had full knowledge of the Florida action before filing in California, basing this jurisdictional decision on the technicalities of service of process would be inappropriate.  A federal action is commenced by the filing of the complaint, not by service of process. Fed. R. Civ. P. 3.  It is thus the filing of actions in coordinate jurisdiction that invokes considerations of comity."); *S & B Eng'rs and Constructors, Ltd. v. Alstom Power, Inc.*, 2004 WL 2360034, * 2 (N.D. Tex. Oct. 19, 2004)("[T]he first-to- file rule looks only to the sequence of filing events, not service of process, as the relevant metric for determining which court obtained jurisdiction first."); *Williston Basin Interstate Pipeline Co. v. Sheehan Pipe Line Constr. Co.*, 316 F. Supp. 2d 864, 867 (D.N.D. 2004)("Most courts consider the filing of an action to be the event that determines priority under the 'first-to-file rule.").

In fact, the case which Shaw cites in support of its argument actually supports a finding that the above-captioned case was the first to be filed under the first-to-file rule.  In *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119 (8th Cir. 1985), the Eight Circuit stated: "courts follow a 'first to file' rule that where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Id*. at 121.  However, in making this statement, the Eight Circuit was not referring to jurisdiction attaching by means of perfecting service of process upon a defendant.  This reading of *Orthmann* is supported by the Eight's

13

Circuit's citation to *Hospah Coal Co. v. Cahco Energy Co.*, 673 F.2d 1161 (10th Cir. 1985), after the above-quoted passage. In *Hospah*, the Tenth Circuit held:

> This circuit has adopted the rule announced in *Barber Greene Company v. Blaw-Knox Company*, 239 F.2d 774, 778 (6th Cir. 1957) that, "in both in rem and in personam actions, jurisdiction relates back to the filing of the complaint." *Accord, Product Engineering and Manufacturing, Inc. v. Barnes*, 424 F.2d 42 (10th Cir. 1970). The rule that jurisdiction relates back to the filing of the complaint gives effect to Fed. Rules of Civ. Proc. Rule 3, 28 U.S.C. A., which provides that, "(a) civil action is commenced by filing a complaint with the court."

*Id.* at 1163. Accordingly, because there is no dispute that the above-captioned case was filed before Shaw filed its complaint against Plaintiffs in New York, this case is the first case to be filed for purposes of the first-to-file rule, and therefore, the first-to-file rule does not support Shaw's motion.

## 2. A Proper Balance of the Relevant Factors Weigh in Favor of this Court Retaining Jurisdiction over this Case

"A motion for change of venue is governed by 28 U.S.C. § 1404(a), which provides: 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *Broadcom Corp. v. Microtune, Inc.*, 2004 WL 503942, * 3 (W.D. Wis. Mar. 9, 2004)(quoting 28 U.S.C. § 1404(a)). The party seeking a transfer "has the burden of establishing, by reference to particular circumstances, that the [proposed] transfer forum is ***clearly more convenient***." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 291-20 (7th Cir. 1986)(emphasis added). In order for a transfer to occur under § 1404(a), venue must be proper in both the transferor and transferee district. *State Farm Mut. Auto Ins. Co. v. Estate of Robert Busell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996).

As one district court has recently explained:

> In evaluating the convenience and fairness of transfer under § 1404(a), a court should consider both the private interests of the parties and the

> public interests of the court. The private interests that may warrant the transfer of venue include: plaintiff's initial choice of forum; the relative ease of access to the sources of proof; the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of witnesses; the situs of material events; and convenience of the parties, specifically their respective residencies and abilities to bear the expense of trial in a particular forum. *Symons,* 954 F. Supp. at 186. The public interest factors that are relevant under a § 1404(a) analysis include: (a) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving controversies in their locale; (b) the court's familiarity with applicable law; and (c) the congestion of respective court dockets and the prospect for earlier trial. *Id.*

*IFC Credit Corp. v. Eastcom, Inc.*, 2005 WL 43159, * 2 (N.D. Ill. Jan. 7, 2005); F*irst Horizon Pharmaceutical*, 2004 WL 1921059, at * 1. "The court should not grant a change in venue if the move will simply shift the inconvenience from one party to another." *Trustmark Ins. Co. v. All Am. Life Ins. Co.*, 2004 WL 2967529, * 3 (N.D. Ill. Dec. 2, 2004)(citing *Countryman v. Stien, Roe & Farnham,* 681 F. Supp. 479, 482 (N.D. Ill. 1987). Here, the facts weigh in favor of maintaining this suit in Indiana.

### a. The private interest factors weigh in favor of denying the motion to transfer

#### 1). Plaintiffs' choice of forum should be given deference

When the plaintiff's choice of forum is also his home forum, the plaintiff's choice is entitled to considerable weight and deference. *Symons Corp. v. Southern Forming & Supply*, 954 F. Supp. 184, 186 (N.D. Ill. 1997); *Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc.*, 2005 WL 396304, * 5 (N.D. Ill. Feb. 16, 2005)("A plaintiff's choice of forum is generally given substantial weight under § 1404(a), particularly when it is plaintiff's home forum."). In fact, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In Re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003)(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see United Sonics, Inc. v.*

*Shock,* 661 F. Supp. 681, 683 (W.D. Tex. 1986)(noting that a plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor.").

Here, Plaintiffs' choice of forum is also CMG's home forum.  As CMG is Marilyn Monroe LLC's exclusive licensor, Plaintiffs' choice of forum in the Southern District of Indiana should be given considerable weight and deference. *See Clear Channel Outdoor, Inc. v. Rubloff Oakridge Algonquin LLC,* 2003 WL 22382999, * 3 (N.D. Ill. Oct. 16, 2003)(quoting *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1167 (N.D. Ill. 1995)("'A plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum.  Indeed, a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor.'")).

### 2).  Because Plaintiffs have felt the effects of Shaw's tortious conduct here, Indiana is the site of the material events

As explained *supra,* because CMG's headquarters is in Indiana, it has felt the effects of Shaw's tortious conduct here. *Janmark,* 132 F.3d at 1203.  As such, the situs of the material events have occurred in Indiana, a factor which supports a denial of Shaw's motion to transfer.

### 3).  The availability of evidence weighs in favor of denying the motion to transfer

Because CMG is headquartered in Indianapolis, it is the hub for all of its business activities.  As such, all contracts, monthly reports, and other financial records are maintained in Indiana. Exhibit A at ¶¶ 7-11.  A complete set of records for the Marilyn Monroe LLC account is housed on the local hard drive of CMG's Vice President of Marketing and Licensing desktop computer. *Id*.  Finally, CMG stores all of its Marilyn Monroe LLC related artwork, proposed and produced prototypes and other samples in Indianapolis. *Id*.

On the other hand, Shaw contends that a transfer is warranted because photographs, images, and contracts are located in New York, New Jersey, and New Hampshire. However, the evidence to which Shaw cites is merely documentary evidence, *i.e.*, alleged evidence regarding copyright ownership, which would not constitute a significant transportation problem. *Ultimatemeasures, Inc. v. Bohnengel*, 2004 WL 906096, * 6 (N.D. Ill. Apr. 27, 2004). Accordingly, this factor weighs in favor of denying transfer.

### 4). The convenience of the parties weighs in favor of denying the motion to transfer

The convenience of the parties also weighs in Plaintiffs' favor. "Transfer is generally inappropriate if it shifts the inconvenience for one party into an inconvenience for the other party." *First Horizon Pharmaceutical*, 2004 WL 1921059, * 2 (citing *Coffey*, 796 F.2d at 219-20). In other words, a defendant may not employ § 1404(a) in order to shift the burden or inconvenience associated with litigating in a particular venue from itself to the plaintiff. *Somers v. Flash Tech. Corp of Am.*, 2000 WL 1280314, * 2 (S.D. Ind. 2000); *Ronco, Inc. v. Plastics, Inc.*, 539 F. Supp. 391, 402 (N.D. Ill. 1982).

Indianapolis is a major city with ease of access *via* a plethora of interstates and an international airport. *See Continental Airlines v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992)("[I]t is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches of the Continental United States."). Moreover, with the advent of communication technology and the Court's electronic filing system, Shaw is in no worse position having to litigate in Indiana than Plaintiffs would be if forced to litigate in New York. *See Arena Football League, Inc. v. Roemer*, 947 F. Supp. 337, 341 (N.D. Ill. 1996)(denying transfer in part because "[d]efendants have not demonstrated that they cannot bring the critical documents to this

district"). Thus, the convenience of the parties weighs in favor of denying Shaw's motion to transfer.

### 5). The convenience of the witnesses weighs in favor of denying the motion to transfer

The convenience of the witnesses weighs in favor of denying the motion to transfer. Many courts consider this to be the most important factor. *See Trustmark Ins.*, 2004 WL 2967529 at * 3 ("The 'most important' of the above factors is the convenience of the witnesses."). As such, "[t]he party seeking transfer 'must clearly specify the key witnesses to be called and include a generalized statement about what their testimony will include.'" *Id.* (quoting *C & F Packing Co. v. KPR, Inc.,* 1993 WL 278504, * 3. (N.D. Ill. July 22, 1993); *see Hayes v. Smith*, 1992 WL 225560, * 4 (N.D. Ill. Sept. 8, 1992)("[I]t is the burden of the party seeking transfer to identify with some specificity both the witnesses who reside in the proposed transferee forum and the significance of their testimony.").

Here, Shaw has wholly failed to identify any witnesses who reside in New York who it will proffer at trial. "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a). *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. 1998)(citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir. 1989). Shaw's failure to identify any key witnesses alone requires that this Court deny the motion to transfer. *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992)("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied.").

18

In contrast, Plaintiffs have come forward with a list detailing the names of various witnesses who possess relevant and important information who do not reside in New York and who would be inconvenienced if the case were to be tried in New York. *See* Exhibit C at ¶ 7. Accordingly, the motion to transfer should be denied.

### b.  The public interest factors weigh in favor of denying the motion to transfer

Finally, the public interest factors weigh in favor of denying Shaw's motion to transfer because the interest of justice would be best served by doing so.   "The 'interest of justice' component 'embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses.'" *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999)(quoting *TIG Ins. Co. v. Brightly Galvanized Prods., Inc.,* 911 F. Supp. 344, 346 (N.D. Ill. 1996).  The public interests which the Court must weigh are: "1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; 2) the court's familiarity with applicable law; and 3) the congestion of the respective court dockets and the prospects for an earlier trial." *Chukwu v. Air France*, 218 F. Supp. 2d 979, 989 (N.D. Ill. 2002)(citing *Hughes v. Cargill, Inc.,* 1994 WL 142994, * 2 (N.D. Ill. April 14, 1994)).

### 1).  The relation of the community to the occurrence at issue weighs in favor of denying the motion to transfer

As noted above, CMG is an Indiana corporation and is the exclusive licensor of the Monroe Intellectual Property Rights for Marilyn Monroe LLC.  CMG has sued in its home forum.  In so doing, CMG has invoked Indiana law.

Indiana has an interest in the protection of its citizens and in maintaining its public policies. *E.g.*, *Flintkote Co. v. General Accident Assur. Co. of Canada*, 2004 WL 1977220, * 5 (N.D. Cal. Sept. 7, 2004)("The interests of the forum state in enforcing promises that protect its

917070_1

citizens are substantial.").  Moreover, it is axiomatic that Indiana has an interest in enforcing its own laws.  Because of these public policy considerations, and because the effects of Shaw's tortious conduct has been felt in Indiana, Indiana's relationship to this dispute weighs heavily in favor of denying transfer.

### 2). The Court's familiarity with Indiana law weighs in favor of denying the motion to transfer

Furthermore, this Court's familiarity with Indiana law weighs in favor of denying the motion to transfer.  Again, Plaintiffs' Complaint is based upon violations of Indiana law. Notably, Plaintiffs have alleged a cause of action based upon Shaw's violation of the Indiana Right of Publicity Act, I.C. § 32-36-1-1 *et seq*., and the Indiana Crime Victims Act, I.C. § 34-24-3-1 *et seq*. *S.J.G. Enter.,* 2004 WL 1794475, at * 4 (denying a motion to transfer "as our court is more seasoned and familiar with the law governing this suit--the Illinois Sales Representative Act--than would be a court in Indiana."); *see also Van Dusen v. Barrack*, 376 U.S. 612, 642 (1964)(noting that "the transferee district court must under s 1404(a) apply the laws of the State of the transferor district court . . . .").

### 3).  There is little difference between the congestion of the respective dockets

Finally, two categories of statistical evidence are especially relevant to this inquiry: the median number of months from filing to trial in civil cases and the median number of months from filing to disposition in civil cases. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995).

According to the federal court management statistics, in 2004, there is virtually no difference between the congestion of the Southern District of New York's docket and this Court's docket.  While the median time between filing to trial was 25 months in the Southern District of Indiana, it is 26.8 months in the Southern District of New York.  Likewise, the median

time between filing to disposition in a civil case in the Southern District of Indiana was 11.2 months as compared to 8.1 months in the Southern District of New York.  This insignificant difference in two Court's dockets does not outweigh every other factor set forth above.  All other factors demonstrate that Indiana is the proper forum in which to conduct this litigation. Therefore, Shaw's alternative motion to transfer should be denied.

**C.    Venue Is Proper In The Southern District of Indiana**

Finally, Shaw makes the argument that venue is improper in the Southern District of Indiana.  However, venue is proper in this district because, as set forth above, Shaw can be found here.  In other words, because this Court has personal jurisdiction over Shaw, venue is likewise proper in this forum.

Plaintiffs have alleged a cause of action arising out of the Copyright Act.  As such, 28 U.S.C. § 1400 governs the issue of venue selection in this case.   Title 28 U.S.C. § 1400(a) explicitly provides:

> (a)  Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

*Id*.  Moreover, 28 U.S.C. § 1391(c) provides, in relevant part, that "[f]or purposes of venue under this chapter,[7] a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* (emphasis and footnote added); *Janmark*, 132 F.3d at 1203; *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579 (Fed. Cir. 1990); *Century Wrecker Corp. v. Vulcan Equip. Co., Ltd.,* 733 F. Supp. 1170, 1172-74 (E.D. Tenn. 1989).

---

[7]   The chapter referred to is Chapter 87 of Title 28, United States Code which includes § 1400. *Janmark*, 132 F.3d at 1203; *VE Holding*, 917 F.2d at 1579; *Century Wrecker*, 733 F. Supp. at 1172-74.

Accordingly, in determining whether the United States District Court for the Southern District of Indiana is an appropriate venue for this case, the Court must determine whether it possesses personal jurisdiction over Shaw. *Janmark*, 132 F.3d at 1202; s*ee First Horizon Pharmaceutical Corp. v. Breckenridge Pharmaceutical, Inc.*, 2004 WL 1921059, * 2 (N.D. Ill. July 21, 2004)("The residence of a corporate defendant in patent infringement actions is controlled by § 1391(c), which states that a corporate defendant is 'deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.'")(quoting 28 U.S.C. § 1391(a)); *see also PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1017 (E.D. Wis. 2000)("Title 28 U.S.C. § 1400(a) governs venue in copyright claims and provides that venue is proper in a district in which the defendant 'resides' or 'may be found.' Under this provision, a defendant 'may be found' in a district if the defendant is subject to personal jurisdiction in that forum.").

As explained above, this Court possesses personal jurisdiction over Shaw.  As a result, venue is proper here as well.

917070_1

## IV. CONCLUSION

WHEREFORE, Plaintiffs CMG Worldwide, Inc., and Marilyn Monroe LLC respectfully request that the Court deny Defendant The Shaw Family Archives' 12(b)(2) Motion to Dismiss or, Alternatively, Transfer Venue and for all other just and proper relief.

Respectfully submitted,

DANN PECAR NEWMAN & KLEIMAN, P.C.

By: _s/ Jonathan G. Polak_
       Jonathan G. Polak, No. 21954-49
       Eric M. Hylton, No. 20178-32
       Amy L. Wright, No. 22214-49
       James B. Chapman II, No. 25214-32
       One American Square, Suite 2300
       Box 82008
       Indianapolis, IN  46282
       (317)632-3232 – Telephone
       (317)632-2962 – Facsimile

McNEELY STEPHENSON THOPY & HARROLD

       J. Lee McNeely, No. 9542-73
       30 E. Washington Street, Suite 400
       Shelbyville, IN  46176
       (317) 392-3619 – Telephone
       (317) 835-7777 – Facsimile

917070_1

## <u>CERTIFICATE OF SERVICE</u>

I also hereby certify that a true and correct copy of the foregoing has been served upon the following by electronic means *via* the Court's digital document delivery system this 25th day of July, 2005:

James M. Hinshaw
Hamish S. Cohen
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900

s/      Jonathan G. Polak
Jonathan G. Polak

917070_1