UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, Plaintiffs, vs. TOM KELLEY STUDIOS, INC., a California Corporation, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | 1:05-cv-00442-LJM-WTL |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

This cause is now before the Court on defendant's, Tom Kelley Studios, Inc. ("TKS"), Motion to Dismiss or Alternative Motion to Transfer, the claims brought against it by plaintiffs, CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC (collectively, "Plaintiffs"). TKS contends that the Court lacks personal jurisdiction over it. In the alternative, TKS argues that the Court should transfer this case to the Central District of California where three other similar suits pend. Plaintiffs assert that the Court has personal jurisdiction over TKS and argues that this is a proper forum.

The Court finds that it does have personal jurisdiction over TKS and must **DENY** its motion to dismiss, however, the Court **GRANTS** TKS' alternative motion to transfer, pursuant to 28 U.S.C. § 1404(a).

### I. BACKGROUND

CMG Worldwide, Inc., is an Indiana corporation with its principal place of business in Hamilton County, Indiana. First Am. Compl. ¶ 1 ("FAC"). CMG also has locations in California

and New York. Def.'s Exh. D. Marilyn Monroe, LLC, is a Delaware corporation with its principal place of business in Indiana, through CMG, its exclusive licensing and business representative. *Id.* ¶ 2. Marilyn Monroe, LLC, is the proprietor of various intellectual property rights, including certain trademarks and copyrights, in addition to the rights of association and sponsorship and right of publicity and privacy in and to the Marilyn Monroe name, image, and persona (hereinafter "Monroe property rights"). *Id.* ¶ 7.

CMG and Marilyn Monroe, LLC, first aligned ten years ago. Roesler Decl. ¶ 4. Since then, CMG has represented Marilyn Monroe, LLC, of the purpose of licensing third parties to utilize commercially Monroe property rights. FAC ¶ 3. As part of its responsibilities to Marilyn Monroe, LLC, CMG advertises, markets and promotes Monroe property rights for licensing on a worldwide basis. *Id.* ¶ 4. All such activity is performed by CMG not Marilyn Monroe, LLC. Faber Decl. ¶ 6. The vast majority of CMG's business on behalf of Marilyn Monroe, LLC, is conducted in Indianapolis, Indiana. *Id.* All negotiations of licenses by CMG on behalf of Marilyn Monroe, LLC, run through Indianapolis. *Id.*

TKS is a California corporation and has its principal place of business in California. FAC ¶ 8. TKS has within its possession certain original photographs of Marilyn Monroe ("Monroe") taken by Tom Kelley, Sr. ("Mr. Kelley"), to which TKS claims copyright. Saal Decl. ¶ 2. Apparently, TKS has contacted CMG several times in the past regarding Monroe property rights and presumably TKS' photographs in relation thereto. Kelley Decl. ¶ 23; Roesler Decl. ¶ 6. There has been one occasion upon which CMG and TKS have jointly licensed another company to produce wine labels using the likeness of Monroe, however, there has never been a contractual relationship between the entities. Roesler Decl. ¶ 7.

2

In addition to this particular contact with CMG in Indiana, TKS, through its licensing agent Pacific Licensing, has sold two fine art items of its Monroe "Red Velvet" collection photographs to a single customer. Kelley Decl. ¶ 27. The total revenue for these sales was $3,800.00. *Id.* TKS advertises and sells on the worldwide web its Monroe "Red Velvet" collection, and other memorabilia that exhibit its Monroe "Red Velvet" collection photographs. Pl.'s Exh. D (website pages). The website also bears Monroe's signature, a registered trademark of Marilyn Monroe, LLC. *Id.*; FAC ¶ 13. However, more than 30% to 40% of TKS' clients for Monroe photographs are located in California. Kelley Decl. ¶ 28.

## II. PERSONAL JURISDICTION STANDARD

### A. PERSONAL JURISDICTION

TKS has moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)"). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction exists. *Health Mgmt. Prof'ls, Inc. v. Diversified Bus. Enters., Inc.*, 882 F. Supp. 795, 797 (S.D. Ind. 1995). A court may receive and consider affidavits and other documentary evidence when making a ruling regarding jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1124 (7th Cir. 1983). However, the Court must accept as true all of a plaintiff's undenied factual assertions and resolve in its favor any disputes regarding relevant facts. *See RAR, Inc.*, 107 F.3d at 1275; *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1191 (7th Cir. 1980).

A determination of personal jurisdiction involves two steps. First, the Court must determine whether the state's "long-arm jurisdiction" statute allows jurisdiction and, second, whether the

exercise of jurisdiction comports with due process. *NUCOR Corp. v. Aceros Y Maquilas De Occidente, S.A.*, 28 F.3d 572, 580 (7th Cir. 1994). Indiana's jurisdiction statute is Indiana Trial Rule 4.4(A) ("Rule 4.4(A)"). Rule 4.4(A) designates eight bases for a defendant's contacts that would allow the Court to move to the constitutional inquiry. Ind. Tr. R. 4.4(A). Rule 4.4(A) was amended effective January 1, 2003, to include the following: "[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Thus, this Court has personal jurisdiction over TKS to the limit allowed by the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause requires that TKS have had "minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). TKS' contacts must be purposeful and create a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

> [W]here the defendant "deliberately" has engaged in significant activities within a State, . . . or has created "continuing obligations" between himself and the residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76. (citations omitted).

Specific jurisdiction exists when the litigation arises from the business conducted in the forum state.[1] Specific jurisdiction comports with due process where the defendant, from its activities in the forum state, should have anticipated being haled into court in that state and "purposefully

---

[1] Plaintiffs do not argue that the Court has general jurisdiction over TKS.

4

availed" itself of the "privilege of conducting activities" in Indiana. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). It must be the activity of TKS in the forum state that creates jurisdiction, not the conduct of Plaintiffs or a third party. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). TKS argues that it did not have contacts in Indiana of the character, quality or consistency required to establish jurisdiction.

### III. DISCUSSION

Plaintiffs contend that jurisdiction over TKS is proper in this case because the Seventh Circuit has adopted a broad view of the "effects test" for specific personal jurisdiction over a non-resident defendant set forth in the Supreme Court decision *Calder v. Jones*, 465 U.S. 783 (1984). *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd.*, 34 F.3d 410, 411-12 (7th Cir. 1994). In this case, Plaintiffs argue, TKS has engaged in numerous torts that harmed Plaintiffs when it sold, without permission, Monroe products through its interactive website. In addition, Plaintiffs aver that TKS has sold allegedly infringing products in Indiana. Moreover, Plaintiffs contend that TKS' use of Monroe's signature on its website constitutes conversion of that registered mark owned exclusively by Marilyn Monroe, LLC. Plaintiffs argue that Mr. Kelley's numerous conversation's with CMG regarding rights to photographs and other memorabilia with Monroe's image put TKS on notice that its conduct could cause harm to CMG and/or Marilyn Monroe, LLC, in Indiana.

TKS counters that its contacts with Indiana are not purposeful such that it comports with traditional notions of fair play and substantial justice to hail it into an Indiana court. Specifically, TKS argues that the Court should follow the Seventh Circuit's opinion in *Wallace v. Herron*, 778

5

F.2d 391 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122 (U.S. 1986), rather than its roundly criticized opinion in *Janmark*, to find that Plaintiffs' non-particularized injury allegations are not enough to satisfy the minimum contacts requirements of personal jurisdiction.

Under either *Janmark* or *Wallace*, the Court finds that TKS' contacts with Indiana are sufficient enough to comport with traditional notions of fair play and substantial justice. This lawsuit is based on the allegedly wrongful use of certain intellectual property rights owned by Marilyn Monroe, LLC, and exclusively managed and licensed by CMG. As such, the wrongful use of such intellectual property would cause damage to both Marilyn Monroe, LLC, and its exclusive agent, CMG, if not cause intentional damage to the contractual relationship between those companies. It is clear that if Plaintiffs' allegations against TKS are true, then TKS has caused harm to Plaintiffs.

TKS has minimum contacts with Indiana. Through its interactive website, it solicits business from Indiana customers and has in fact done business with at least one Indiana customer using the allegedly infringed Monroe property rights (the Court considers both the signature and the "Red Velvet" photographs Monroe property for purposes of this analysis). This activity certainly could cause confusion within Indiana as to the ownership of Monroe property rights. Furthermore, TKS has contacted CMG in relation to the very property rights at issue in this cause. Whether or not a contractual relationship exists, the fact remains that some business has been discussed because the parties jointly licensed at least one use of certain property. If nothing else, TKS' purposeful conduct in this regard put it on notice that it might be hailed into an Indiana court regarding such intellectual property rights. There was nothing "random," "fortuitous," or "attenuated" about such contacts. *Burger King*, 471 U.S. at 475.

6

Turning to the "fair play and substantial justice" prong of the jurisdictional inquiry, the Court finds that personal jurisdiction over TKS is proper. The factors generally considered in this analysis include the burden on the defendant, the forum State's interest in adjudicating the dispute, the Plaintiffs' interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies. *See Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 292). Although the burden on TKS to litigate in Indiana may be greater than the burden to the Plaintiffs, the burden is minimum given TKS' allegedly purposeful use of intellectual property owned by Plaintiffs and the fact that TKS has a single employee. Indiana has a great interest in protecting the intellectual property rights at issue in this case as evidenced by its statutory protection of the right of publicity. *See* Ind. Code § 32-36-1-1 *et seq*. Plaintiffs most likely chose this forum in part because of the protection afforded such rights by this law and by the Indiana Crime Victims Act. *See* Ind. Code § 34-24-3-1. Under the circumstances here, the Court finds that the exercise of personal jurisdiction over TKS in Indiana comports with traditional notions of fair play and substantial justice.

For the foregoing reasons, the Court **DENIES** TKS' motion to dismiss for lack of personal jurisdiction.

### B. TRANSFER OF VENUE

Turning now to TKS' alternative motion to transfer venue to the Central District of California, TKS contends that the Court should transfer this case pursuant to 28 U.S.C. § 1404(a). Specifically, TKS argues that the greater harm to Plaintiffs occurred in California, where TKS does

30% to 40% of its business, and where CMG has a satellite office. As the greater situ of the tort, TKS avers, the greater amount of discovery would occur there and in the interests of justice, the Court should transfer the cause. Plaintiffs disagree. Plaintiffs argue that they feel the harm greatest at its headquarter location in Indiana. Moreover, Plaintiffs contend that the interest of justice factors favor allowing the case to stay in Indiana.

The Court finds that the venue analysis strongly favors the Central District of California. Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer is appropriate under this section where the moving party establishes that (1) venue is proper in the transferor district, (2) venue is proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *Somers v. Flash Tech. Corp. of Am.*, No. IP00-455-C-B/S, 2000 WL 1280314, at *1 (S.D. Ind. Aug. 25, 2000).

While the third prong of 28 U.S.C. §1404(a) directs the Court to consider the convenience of the parties, the convenience of the witnesses, and the interests of justice, it does not dictate the relative weight to be given to each factor. As a result, "the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219. As the party seeking transfer, TKS has the burden of demonstrating that transfer is appropriate. *See Millennium Prod. Inc. v. Gravity Boarding Co.*, 127 F. Supp. 2d 974, 980 (N.D. Ill. 2000) (citing *Coffey*, 796 F.2d at 219-20).

Although TKS briefly argues that venue is improper in the Southern District of Indiana, there

8

is little evidence that Plaintiffs are not harmed at all in Indiana by TKS' alleged infringement of Monroe property rights. As such, the Court finds that venue is proper in either the Southern District of Indiana or the Central District of California, where TKS does a large part of its business.

The two convenience factors weigh in favor of the Central District of California. First, although it is easy for either party to communicate through the internet and to file pleadings electronically in either court, both parties have locations in California, which is clearly the more convenient forum for TKS. Furthermore, TKS has made a convincing showing that the majority of its witnesses reside in California. It is clearly more convenient for the witnesses to litigate this cause in California, therefore, these two factors weigh heavily in favor of transfer to California.

The interest of justice factor also weighs in favor of the California forum. The interests of justice factor of the § 1404(a) analysis relates to the "efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221. For example, transfer is favored where consolidation is feasible. *See id.*; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990); *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1059 (N.D. Ill. 2002). Also considered under this factor is the relative familiarity of the courts in the two forums with the laws at issue in the case. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Mut. of Omaha Ins. Co. v. Dolby*, 531 F. Supp. 511, 514 (E.D. Pa. 1982). The California court has already consolidated several cases related to Plaintiffs' rights and, presumably, the parties have already started proceeding with discovery in those cases. These parties are already involved in that consolidated action. Having a single court decide all of the issues related to TKS and Monroe property rights is clearly more efficient than having two separate litigations. Although this Court is somewhat more familiar with Indiana law, there is little case law on the relatively new publicity statutes, and this Court sees no

reason why a California district court could not interpret the laws of Indiana and/or apply the laws of Indiana to the facts of this case equally well. In the final analysis, the Court finds that the interest of justice factor weighs heavily in favor of the California forum because all of the rights of the two parties can be litigated there at once saving judicial resources and reducing party expenses.

For these reasons, the Court finds that TKS' alternative motion to transfer venue should be **GRANTED**.

## IV. CONCLUSION

For the reasons discussed herein, the Court **DENIES** defendant's, Tom Kelley Studios, Inc., Motion to Dismiss, but **GRANTS** defendant's, Tom Kelley Studios, Inc., Alternative Motion to Transfer Venue to the Central District of California. The Clerk of the Court shall transfer this cause to the Central District of California.

IT IS SO ORDERED this 9 day of August, 2005.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

10

Electronically distributed to:

Daniel P. Byron
BINGHAM MCHALE
dbyron@binghammchale.com

James Braden Chapman II
DANN PECAR NEWMAN & KLEIMAN
jchapman@dannpecar.com

Eric M. Hylton
DANN PECAR NEWMAN & KLEIMAN
ehylton@dannpecar.com

Leo E. Lundberg Jr.
THE SONI LAW FIRM
leo@sonilaw.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Jonathan G. Polak
DANN PECAR NEWMAN & KLEIMAN
jpolak@dannpecar.com

M. Danton Richardson
THE SONI LAW FIRM
danton@sonilaw.com

Rafael A. Sanchez
BINGHAM MCHALE
rsanchez@binghammchale.com

Surjit P. Soni
THE SONI LAW FIRM
surj@sonilaw.com

Amy L. Wright
DANN PECAR NEWMAN & KLEIMAN
awright@dannpecar.com