UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CMG WORLDWIDE, INC., and<br>MARILYN MONROE, LLC, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | CASE NO. 1:05-cv-0423-DFH-WTL |
| BRADFORD LICENSING ASSOCIATES,<br>THE SHAW FAMILY ARCHIVES, LTD.,<br>and JAMES E. DOUGHERTY, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

**DEFENDANT BRADFORD'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Bradford Licensing Associates ("Bradford"), by counsel, submits this Reply in support of its Motion to Dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**I. INTRODUCTION**

Plaintiffs, CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC ("MMLLC")(collectively, the "plaintiffs") in their Response to Bradford's Motion to Dismiss (the "Response") do not contend that this Court may exercise *general jurisdiction* over Bradford. Plaintiffs also do not contend that Bradford has sufficient contacts to justify the exercise of this Court's *specific jurisdiction*. Instead, the plaintiffs contend solely that this Court may exercise jurisdiction over Bradford pursuant to the "effects test" of *Calder v. Jones*, 465 U.S. 783, 788-790 (1984) as interpreted by *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997) or, alternatively, *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Inc. Ltd.*

*Partnership*, 34 F.3d 410 (7th Cir. 1994). Plaintiffs argue that jurisdiction is proper based solely on the fact that CMG is domiciled in Indiana (though MMLLC is not), that CMG has allegedly suffered an injury in Indiana, and that Bradford entered into the state of Indiana through its internet website and the unilateral acts of a third party. Even if plaintiffs' unsupported and conclusory allegations are taken as true, they are insufficient to create jurisdiction over Bradford in Indiana.

First, plaintiffs' interpretation of the effects test is too broad. The United States Supreme Court, the Seventh Circuit and Indiana courts have made it clear that even under the effects test a defendant must sufficiently enter a jurisdiction before that jurisdiction may exercise its judicial power over that defendant, *i.e.*, where a defendant has purposefully availed itself of the privileged of doing business in Indiana. Second, There has been no such entry in this case. Accordingly, this Court cannot exercise personal jurisdiction over Bradford. Simply put, under the framework created by these cases, Bradford has not purposefully availed itself of the privileged of doing business in Indiana and is not subject to this Court's jurisdiction.

## II. DISCUSSION

### A. There Must Be A Sufficient Entry Into Indiana To Justify This Court's Exercise Of Jurisdiction Under The Effects Test.

Bradford has established, and plaintiffs do not dispute, that Bradford has intentionally avoided the privilege of doing business in Indiana. Plaintiffs contend, however, that Bradford is subject to this Court's jurisdiction under the effects test of *Janmark*. Plaintiffs' argument fails, though, because both the Indiana and Federal courts have clearly indicated that even under *Janmark*, a defendant must have entered into the forum state. Bradford has not entered Indiana.

The effects test was established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Based upon this case, the federal appellate courts "have observed that

2

under [the effects test] a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside a forum state, which have a particular type of effect upon the plaintiff within the forum." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3rd Cir. 1998). The First, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits have each held that the "effects test" can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity. *Id*. at 265 (emphasis in original). Further, each of these circuits require that their be some <u>entry</u> by the defendant into the forum state. *Id*. (emphasis added).

This is consistent with the Seventh Circuit's own jurisprudence. In *Wallace v. Herron*, 778 F.2d 391, 392 (7th Cir. 1985), an Indiana resident sued three California attorneys and a California law firm for malicious prosecution arising out of a prior lawsuit filed in California. The *Wallace* Court upheld the district court's dismissal of the case, and held "[w]e do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id*. at 394. Further, "[a]s the Supreme Court explained in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (decided after *Calder*), 'the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state.' " *Id*. (quoting *Burger King Corp.*, 105 U.S. at 474).

The *Wallace* Court thus rejected the exact same jurisdictional argument put forth by the plaintiffs here on the grounds that "[i]f we were to accept the plaintiff's argument, it would significantly undercut our traditional due-process protection for out-of-state defendants" by

3

compelling out-of-state defendants "to come to Indiana and defend the suit to protect himself, no matter how groundless or frivolous the suit might be." *Id*. at 395. The *Wallace* Court concluded that "[t]he Supreme Court in *Calder* did not make the type of dramatic change in the due-process analysis of *in personam* jurisdiction advocated by the plaintiff. Rather, the so-called 'effects' test is merely another way of assessing the defendant's relevant contacts with the forum state." *Id*. Accordingly, "the key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis *of the defendant's relevant contacts* with the forum state." *Id*. (emphasis added).

Further, the Seventh Circuit noted in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994), "[i]n *Calder* as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property … was upheld, **the defendant had done more than brought about an injury to an interest located in a particular state**." (Emphasis added). Rather, "[t]he defendant had also 'entered' the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material." *Id*. Accordingly, despite the expansive language of *Janmark*, the Seventh Circuit, like its sister courts, requires that a defendant expressly aimed its tortious conduct at the forum and that there be an entry by a defendant into the forum state to justify that state's exercise of jurisdiction over that defendant.

This entry requirement, required by the *Indianapolis Colt's* holding "is merely a reformulation of the *Calder* requirement that personal jurisdiction depends upon the showing of some intentional, purposeful, tortious conduct by the defendant outside the forum state expressly directed at the forum state." *Caterpillar, Inc. v. Miskin Screaper Works, Inc.*, 256 F.Supp.2d 849, 851 (C.D. Ill. 2003). The *Caterpillar* Court concluded that "[a]ccepting the primacy of the

4

Supreme Court's teachings in *Calder* that personal jurisdiction depends upon there being some intentional and purposeful tortious conduct outside the forum state calculated to cause injury in the forum state," there must be an entry into the forum state. *Id.*

The *Caterpillar* Court is not alone in its interpretation of *Janmark*. For example:

- As set forth above, the Third Circuit in *IMO*, 155 F.3d at 263, *criticized* the broad reading of *Janmark* requested by the plaintiffs, noting that it is inconsistent with *Calder* as well as holdings of every other sister Circuit, which had addressed the issue;

- In *Berthold Types Ltd. v. European Mikrograp Corp.*, 102 F.Supp.2d 928 (N.D.Ill. 2000), the owner of trademarked fonts sued a foreign manufacturer and its American distributor for trademark infringement. *Id*. at 929-30. The *Berthold* Court, on the manufacturer's motion to dismiss, held that the maintenance of a website was insufficient to establish general or specific jurisdiction. *Id*. at 934. The Court rejected the plaintiffs argument that jurisdiction was proper under *Janmark*, on the grounds that "intellectual property infringement takes place in the state of the infringing sales, rather than the state of the trademark owner's domicile" under Illinois law. *Id*. at 932. Accordingly, "Illinois does not acquire jurisdiction merely by the fact that plaintiff felt harm here. In order to establish jurisdiction over defendants, plaintiff must show more." *Id.*

- Other district courts within the Seventh Circuit are in accord. *See e.g.*, *Globetec Int'l, Ltd. v. August Wenzler Maschinenbau, GmbH*, 364 F.Supp.2d 769, 771-72 (N.D. Ill. 2005)(no personal jurisdiction under the effects test in Illinois because the tortious acts, if any, and the losses or injury were complete when they occurred in Texas); *Speedster Motorcars of Cent. Fla., Inc. v. Ospeck*, 2004 WL 2745051, at *3, 4-6 (S.D.Ind. 2004) ("cease-and-desist" letter sent to Indiana in a case involving allegations of trade dress

5

infringement, trademark dilution, copyright infringement, or unfair competition insufficient to satisfy the requirements of due process, and the maintenance of personal jurisdiction would not comport with "traditional notions of fair play and substantial justice"); *Softee Manufacturing, LLC v. Mazner*, 2003 WL 23521295 at *4 (N.D.Ill. 2003) (court did not have personal jurisdiction over the defendant simply by virtue of the trademark owner's residence in Illinois, and allegations of injury in Illinois. A plaintiff alleging trademark infringement must show additional contacts with the forum state to support the assertion of personal jurisdiction over the defendants).

Accordingly, the Seventh Circuit has "explicitly refrained from holding [in *Janmark*] that injury to intellectual property … was enough - in itself - to confer jurisdiction over an out-of-state defendant." *Softee Manufacturing*, 2003 WL 23521295 at *4.

Bradford acknowledges that some courts seem to have interpreted *Janmark* more broadly. For example, in *Lighthouse Carwash Sys. LLC v. Illuminator Bldg. Co., LLC*, 2004 WL 2378844, at *3-4 (S.D.Ind. 2004), the Court held that it had personal jurisdiction over a defendant where the plaintiff alleged that the defendant had committed intentional torts against the plaintiff. In making this decision, however, the *Lighthouse* Court also held that it was reasonable to assume that the defendant was based in Indiana and that the injury would be felt mainly in Indiana. Even if this Court were to adopt the reasoning of the *Lighthouse Carwash* decision (which would not be in accordance with the cases set forth above, the Seventh Circuit's holding in *Wallace*, or Indiana law as set forth *infra*) it is not reasonable to assume in this matter that the injury would occur in Indiana, as the injuries alleged by plaintiffs actually belong to MMLLC, a Delaware corporation. MMLLC's principal, Anna Strasberg, was born in Venezuela

6

lives and works in New York City and Los Angeles.[1]  Additionally, MMLLC has no registered agent in Indiana.  Finally, in this instance the alleged injuries relate to intellectual property.  As set forth *supra*, even after the *Janmark* decision, "intellectual property infringement takes place in the state of the infringing sales" rather than the state of the plaintiff's domicile—a fact highlighted by CMG's self-admitted global reach.  *Berthold Types, Ltd.*, 102 F.Supp.2d at 931-32.  It is undisputed that Bradford sells nothing in Indiana.

Finally, and perhaps most importantly, the Indiana state courts have rejected the plaintiffs' interpretation of *Janmark* that no entry is required in order to find jurisdiction under the effects test.  As set forth in Bradford's Brief in Support of its Motion to Dismiss (Bradford's "Brief"), a district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction.  *See Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).  The Indiana courts, however, have explicitly held that there must be a sufficient entry into Indiana by a defendant before a court sitting in Indiana may exercise jurisdiction over that defendant.  *See Conseco, Inc. v. Hickerson*, 698 N.E.2d 816 (Ind. Ct. App. 1998).[2]

Additionally, the Illinois Court of Appeals has rejected the expansive reading of *Janmark* offered here by the plaintiffs.[3]  *See West Virginia Laborers Pension Trust Fund v. Casperson*, 829 N.E.2d 843, 847 (Ill. Ct. App. 2005).  In *Casperson*, shareholders of a foreign corporation that merged with a holding company brought a class action against nonresident members of the corporation's board of directors, arising out of decline in the value of the company's stock.  The trial court granted the directors' motions to dismiss for lack of personal jurisdiction, and the

---

[1] *See* http://www.leestrasberg.com/about/bioanna.html.
[2] The *Hickerson* case is discussed further *infra*.

[3] *Janmark's* jurisdictional analysis arose out of a federal court sitting in Illinois.

7

plaintiffs appealed, relying upon a broad reading of *Janmark* and arguing that jurisdiction was proper in Illinois. *Id*. at 847. The Illinois Court of Appeals rejected this argument, holding that "an 'injurious consequence' in Illinois was not the same as a tortious act in Illinois." *Id*. (quoting and relying upon *Young v. Colgate-Palmolive Co.*, 790 F.2d 567 (7th Cir. 1986)). The Court went on to hold that "where the injury is economic rather than physical or emotional, the plaintiff needs to show *more* than just that the 'harm [was] felt" in Illinois." *Casperson* 829 N.E.2d at 847 (emphasis added) (quoting *Real Colors, Inc. v. Patel*, 974 F.Supp. 645, 649 (N.D. Ill. 1997); *Turnock v. Cope*, 816 F.2d 332, 335 (7th Cir. 1987). Accordingly, "[w]hen there is an economic injury, the plaintiff must show 'an intent to affect an Illinois interest.' " *Casperson*, 829 N.E.2d at 849 (quoting *Real Colors,* 974 F.Supp. at 649) (quoting *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir. 1990).

Ultimately, as the case law discussed above clearly demonstrates, a court sitting in Indiana may exercise jurisdiction over a non-resident defendant under the effects test *only* where that defendant has made some entry into Indiana. Plaintiffs' arguments for a more liberal and broad reading of *Janmark* should be rejected. As set forth below, Bradford has not made such an entry into Indiana. Accordingly, this Court may not exercise personal jurisdiction over Bradford and Bradford's motion to dismiss should be granted.

**B.     Bradford Has Not Sufficiently Entered Into Indiana So As To Subject It To The Jurisdiction Of An Indiana Court.**

The plaintiffs argue in the alternative that Bradford has sufficient contacts with Indiana. It is undisputed, however, that Bradford has specifically structured its business activities so as to avoid being subject to jurisdiction in Indiana. Bradford has never advertised or solicted business in Indiana, and it has no office, employees or agents in Indiana. Generally, Bradford's contacts with Indiana, if any, are insubstantial, infrequent and unsystematic as Bradford will not conduct

8

business in Indiana directly and insists, generally, that its clients and their licensees also refuse to conduct business in Indiana. In regards to the intellectual property at issue in this litigation, Bradford explicitly required that its clients and their licensees preclude any and all sales in Indiana. Accordingly, Bradford has not purposefully availed itself of the privilege of doing business in Indiana in regards to the property at issue in this lawsuit. In fact it has purposefully avoided doing any business in Indiana relating to this lawsuit.

The only contacts plaintiffs' have identified as sufficient for establishing jurisdiction are the maintenance by Bradford of a passive Internet site, and the alleged entry into Indiana of a non-party's catalogue. However, neither of these contacts constitute an entry into Indiana by Bradford for purposes of an effects test analysis.

First, both Indiana and federal courts have made it clear that the maintenance of a passive Internet site does not constitute entry into a state for jurisdictional purposes. The case most clearly on point is *Hickerson*, 698 N.E.2d 816. In *Hickerson*, the defendant was a Texas resident who ran an Internet site that sought information concerning allegations of fraudulent conduct or other evidence of unfair treatment by Conseco. 698 N.E.2d at 817. Conseco filed suit against the defendant in Indiana on substantially similar claims as those alleged by the plaintiffs in this matter (*e.g.,* trademark dilution and infringement, commercial disparagement, defamation, and tortious interference with contractual relationships). *Id.* at 817. The trial court granted the defendant's motion to dismiss for lack of personal jurisdiction and Conseco appealed arguing that jurisdiction was proper because "the tortious effects of [the defendant's] defamatory comments were sufficient under the effects test of *Calder* to sustain the exercise of personal jurisdiction over [the defendant] in Indiana." *Id.* at 818.

9

The Indiana Court of Appeals upheld the trial court's dismissal and held that "[t]he 'effects test' does not apply with the same force to a corporation as it does to an individual because a corporation's harm is generally not located in a particular geographic location as an individual's harm would be." *Id*. at 819.[4]  The *Hickerson* Court concluded that the proper test applicable to whether there are sufficient contacts to warrant the exercise of personal jurisdiction when dealing with an Internet site is that set forth by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123 (W.D. Pa. 1997).  *Id*. at 820.  As set forth in Bradford's Brief, however, customers cannot purchase products directly from Bradford's Internet site—a fact that remains uncontested.  Accordingly, Bradford's Internet site is passive, as that term is used in jurisdictional law, and it does not constitute an entry into Indiana for jurisdictional purposes.  *See Hickerson*, 698 N.E.2d at 820.  The Seventh Circuit is in accord.  *See Jennings v. AC Hydraulic*, 383 F.3d 546, 549 (7th Cir. 2004); (Bradford's Brief, at 12).  Accordingly, under *Hickerson*, a Court sitting in Indiana cannot exercise jurisdiction over Bradford because of Bradford's maintenance of its passive website.[5]

Further, plaintiffs cite Ind. Code § 32-36-1-9(4) and argue that Bradford has somehow submitted to Indiana's jurisdiction through publishing, distributing, exhibiting or disseminating advertising and/or promotional material.  (*See* Plaintiffs' Response, 10-11).  The plaintiffs argue, implicitly, that certain catalogs made by non-parties that sell products manufactured by non-parties allegedly bearing images licensed from Valhalla Productions, LLC ("Valhalla") with

---

[4] CMG argues that Indiana is the "hub" of its business activities.  Similarly, however, Indiana was the hub of Conseco's business activities. This does not alter the fact that CMG, like Conseco, is a national, if not international, business entity.  Further, it is undisputed that MMLLC is, in fact, a Delaware Corporation. (*See* Plaintiffs' Response, 2).

[5] CMG also makes much of the fact that Bradford now has a disclaimer on its website, and then cites law demonstrating that this disclaimer is irrelevant to this Court's jurisdictional analysis. (*See* Plaintiffs' Response, at 3, 4).  Bradford agrees that this Court should attach no significance to the disclaimer.  This does not alter the fact, however, that the Internet site is passive and does not subject Bradford to jurisdiction in Indiana.

Bradford's assistance are available in Indiana. As a preliminary matter, this is yet another unsubstantiated allegation, as plaintiffs put forth no evidence that such catalogs are, in fact, available in Indiana.

Though plaintiffs make much of the fact that Bradford's contract with Valhalla does not explicitly preclude business in Indiana, it is undisputed that the parties' had an understanding and agreement that **Bradford does not do business in Indiana**. (Reiter, Aff., ¶ 11). This is further evidenced by the fact that the non-parties with whom Valahalla contracted explicitly agreed in their contractual agreements with Valhalla that they would not do business in Indiana. (*See* Plaintiffs' Response, Ex. F at ¶1.1 "**LICENSEE understands that advertising and distribution of said Licensed Products through retail, mail order catalogs, the internet and any other form of commerce must preclude sales in the state of Indiana, USA.**") (emphasis added). Accordingly, even if such catalogs were made available in Indiana, they were brought here by the unilateral act of a non-party, in violation of its contractual obligations. It is well established, however, that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Burger King*, 471 U.S. at 474-75; *see also Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 780-81 (7th Cir. 1985) (citing *Burger King*). Accordingly, even if advertising materials did make it to Indiana (which fact is entirely unsubstantiated) they did so in violation of Bradford's contractual provisions and through the unilateral act of a non-party. Such an act cannot be attributed to Bradford for jurisdictional purposes. Accordingly, Bradford did not enter Indiana and is not subject to the jurisdiction of a court sitting in Indiana.

Finally, plaintiffs contend that Bradford has tacitly admitted that the harm from its actions would be felt in Indiana by attempting to structure its business to avoid Indiana. This is

11

yet another unsubstantiated allegation—plaintiffs conducted no discovery and have absolutely no idea why Bradford has decided to avoid doing business in Indiana.[6] Regardless, the law is clear that Bradford was free to structure its business activites so as to purposefully avoid interaction with Indiana, thereby avoiding any possible jurisdictional ties. *See Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 1985) (noting that even "contracting [directly] with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004). ("[P]otential defendants [may] structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit."). Bradford did so, and it is not subject to Indiana's personal jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, defendant Bradford Licensing Associates respectfully requests that CMG Worldwide Inc. and Marilyn Monroe LLC's Complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) as this Court may not exercise *in personam* jurisdiction over Bradford, and for all other relief as is just and proper.

Respectfully submitted,

*/S/Hamish S. Cohen*
James M. Hinshaw
Hamish S. Cohen

---

[6] Curiously, plaintiffs state in footnote 4 to Plaintiffs' Reply "to the extent the Court desires proof of sales into Indiana, Plaintiffs should be granted jurisdictional discovery to determine how many infringing sales have been made into Indiana." Through this, plaintiffs admit that their allegations are factually unfounded and unsubstantiated. Regardless, if plaintiffs had desired discovery, they should have requested leave from the Court to conduct such discovery prior to subjecting the parties to the expense of fully briefing the issues presented and before expending the Court's judicial resources contemplating such pleadings.

BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900
(317) 635-8900

*Attorneys for Defendants, Bradford Licensing Associates and Shaw Family Archives, Ltd.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document has been served on the following via the Court's electronic filing system this 15th day of August 2005:

J. Lee McNeely
McNEELY STEPHENSON THOPY & HARROLD
30 E. Washington Street
Suite 400
Shelbyville, IN 46176

James Braden Chapman, II
Jonathan G. Polak
Amy L. Wright
Eric M. Hylton
DANN PECAR NEWMAN & KLEIMAN
One American Square
Suite 2300
PPO Box 82008
Indianapolis, IN 46282

*/S/Hamish S. Cohen*

978917.3