UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation and MARILYN MONROE, LLC, a Delaware Limited Liability Company, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CASE NO. 1: 05-cv-0423-DFH-TAB<br>) |
| BRADFORD LICENSING ASSOCIATES, THE SHAW FAMILY ARCHIVES, Ltd., a New York Corporation, JAMES E. DOUGHERTY, and VALHALLA PRODUCTIONS, LLC, a Maine Limited Liability Company, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

ENTRY ON MOTIONS TO DISMISS OR TO TRANSFER VENUE

The merits of this case concern conflicting claims by the parties to Marilyn Monroe's name, image, likeness, and persona. Plaintiffs CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC ("MMLLC") have brought this action against defendants Bradford Licensing Associates ("Bradford"), The Shaw Family Archives, Ltd. ("SFA"), James A. Dougherty, and Valhalla Productions, LLC ("Valhalla"). Plaintiffs seek a declaratory judgment regarding copyrights asserted by defendants Dougherty and SFA. Plaintiffs have also advanced claims for damages and injunctive relief for conversion, violation of plaintiffs' rights of publicity, violations of the Indiana Crime Victims Act, unfair competition, trade libel, interference with

business advantage and potential business advantage, and interference with a contract. Defendants Bradford and SFA have each filed motions to dismiss for lack of personal jurisdiction in accordance with Federal Rule of Civil Procedure 12(b)(2). Additionally, Bradford has joined SFA's motion to transfer venue from this court to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons explained below, the court grants the defendants' motions to transfer venue without addressing the issue of personal jurisdiction.

I.    *Factual Background*

Plaintiff CMG is a corporation organized under the laws of the State of Indiana and maintains its principal place of business in Hamilton County, Indiana. MMLLC is a business entity existing pursuant to the laws of the State of Delaware and maintains its principal place of business in Indiana through CMG, which is MMLLC's exclusive licensing and business representative. Second Am. Cplt., Docket No. 35 ¶¶ 1, 2. MMLLC claims to be the proprietor of various intellectual property rights, including trademarks, copyrights, rights of association and sponsorship, and the right of publicity and privacy in Marilyn Monroe's name, image, likeness, and persona ("Monroe Intellectual Property Rights"). *Id.* ¶ 7.

CMG has represented MMLLC in granting third parties licenses for commercial use of the Monroe Intellectual Property Rights for the last ten years. Piquinela Aff. ¶ 5; Pl. Second Am. Cplt. Docket No. 35 ¶ 3. On MMLLC's behalf, CMG advertises, markets, and promotes the availability of the Monroe Intellectual

Property Rights worldwide. Piquinela Aff. ¶ 5. The majority of the business related to MMLLC is conducted in Indiana, and CMG conducts its business on behalf of MMLLC from Indiana. *Id.* ¶¶ 7, 8.

SFA is a limited liability company organized under the laws of the State of New York and maintains its principal place of business there as well. Shaw Aff. ¶ 3. SFA owns photographs of Marilyn Monroe taken by Larry and Sam Shaw, which Larry Shaw calls the "Marilyn Monroe Limited Edition Collection" images ("Monroe images"). *Id.* ¶ 12. SFA was created in 2002 as part of a settlement of a lawsuit between Larry and Sam Shaw relating to the ownership of the photographs. According to the settlement agreement, which is between Larry Shaw and his sisters Meta Shaw Stevens and Edith Shaw Marcus, both executors of Sam Shaw's estate, ownership of the photographs is vested in SFA, in which Larry Shaw owns a 50% interest and each sister owns a 25% interest. *Id.* ¶ 4.

SFA has never advertised or solicited business in Indiana and has no office, employees, or agents in the state. There are no records of any SFA employees traveling to Indiana on SFA business. SFA has never appeared in court in Indiana and has no governmental licenses in Indiana. SFA has never entered into any contract with a resident or citizen of the State of Indiana or with any business entity that has a primary place of business in Indiana. *Id.* ¶¶ 5, 7-10.

Bradford is a New Jersey business with its primary place of business in Montclair, New Jersey. Bradford is a licensing agency that assists intellectual property owners in forming agreements with licensees. Bradford's responsibilities are assigned by an agreement with the intellectual property owner, not with the licensees. Bradford has no office, employees, or agents in Indiana. Bradford claims that it has never advertised or solicited business in Indiana and that there are no known records of any Bradford agent or representative ever having visited Indiana on business related to Bradford. Bradford claims that it has never entered into any contract with any resident or citizen of Indiana or any business entity with its primary place of business in Indiana. Reiter Aff. ¶¶ 3-5, 8.

SFA has formed contracts granting other entities permission to use the Monroe images, a practice plaintiffs claim infringes upon their interest in the Monroe Intellectual Property Rights. SFA has formed a licensing agreement granting CMZ Handbags and Jewelry ("CMZ"), a business located in Los Angeles, California, the right to sell handbags displaying Marilyn Monroe's picture or image. SFA has informed CMZ that plaintiffs do not have rights of publicity regarding Marilyn Monroe. Faber Aff. ¶ 6; Docket No. 44, Exs. C-10, 11, 12, & 13. Additionally, SFA entered into an image licensing agreement with Valhalla, a New Hampshire company with its principal place of business in New Hampshire, in February 2004. Shaw Aff. ¶ 13; Docket No. 44, Ex. D. The agreement between SFA and Valhalla pertains to the use of the Monroe images in a Valhalla project detailing the life story of Jim Dougherty, who was Monroe's first husband. Shaw

Aff. ¶ 14.  Valhalla has entered into an agreement with Bradford in which Bradford has agreed to assist Valhalla in administering a licensing program and marketing Valhalla's intellectual property relating to the Monroe images.  Reiter Aff. ¶ 11.  The agreement between Valhalla and Bradford, which is dated February 1, 2004, stated that Bradford was a "New York limited partnership" with its principal place of business in New Jersey.  Docket No. 44, Ex. E.  Valhalla later entered into licensing agreements with at least one other entity, granting it permission to use Marilyn Monroe's image on certain products, some of which are being made and sold in catalogues and on the internet.  Docket No. 44, Exs. F, H, I & I1-19.

Plaintiffs filed their complaint in this action against defendants Bradford, SFA, and Dougherty in the Southern District of Indiana on March 23, 2005. Plaintiffs attempted to serve SFA via certified mail to David Marcus, the son of Edith Shaw Marcus, and Mr. Marcus received the complaint and/or summons on April 4, 2005.  Marcus testified that he was not authorized and did not accept service on behalf of SFA at that time.  Marcus Aff. ¶ 6.  On April 19, 2005, SFA filed a complaint against CMG and MMLLC in the Southern District of New York regarding the same Marilyn Monroe images and publicity rights that are at issue in this case.  SFA's complaint was served on CMG and MMLLC on April 20, 2005. *Id.* ¶¶ 8, 9, Exs. 2A, 2B.

In May 2005, plaintiffs filed an Amended Alias Summons with this court and served it via certified mail on Larry Shaw as chief executive officer of SFA. Marcus Aff. ¶ 10; Docket No. 23. Plaintiffs seek a declaratory judgment regarding their rights, which they claim are secured by "common law, state-based statutory authority, federal statutes, and by certain trademarks registered in the United States and in various foreign countries." Second Am. Cplt. Docket No. 35 ¶ 31. They also seek a declaration of the rights of defendants Dougherty and SFA, and they advance several state law claims against defendants as well.

On May 20, 2005 and May 27, 2005 respectively, Bradford and SFA filed motions to dismiss this action for lack of personal jurisdiction. Docket Nos. 24, 26. Plaintiffs have twice amended their complaint and on June 21, 2005 joined Valhalla as an additional defendant. Second Am. Cplt. Docket No. 35. Neither Valhalla nor Dougherty has responded to plaintiffs' complaint. After plaintiffs filed their amended complaint, Bradford and SFA again filed motions to dismiss, and SFA filed a motion to transfer venue in this matter to the Southern District of New York. Docket Nos. 39, 41. Bradford filed a notice to the court and the parties in October 2005 joining SFA's motion to transfer venue. Docket No. 55. The Southern District of New York has stayed its case pending the outcome of the defendants' motions in this court. Docket No. 44, Ex. K.

II.     *Transfer of Venue*

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought."  28 U.S.C. § 1404(a).  Whether the interests of convenience and justice warrant transfer of venue is committed to the sound discretion of the district court.  *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *Gallert v. Courtaulds Packaging Co.*, 4 F. Supp. 2d 825, 832 (S.D. Ind. 1998).  As the parties seeking transfer, Bradford and SFA have the burden of establishing that the Southern District of New York is clearly a more convenient forum for adjudication of this dispute.  *Coffey*, 796 F.2d at 219-20; *Heller Financial, Inc.*, 883 F.2d at 1293.  They have met this burden.  A transfer of venue to the Southern District of New York under § 1404(a) is clearly warranted.[1]

The parties have devoted much of their argument to which side should benefit from the "first to file rule."  SFA argues that although plaintiffs filed their complaint in this court in March 2005, service on SFA was not properly made

---

[1] This court need not consider personal jurisdiction before the question of venue.  See *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979); *Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F. Supp. 2d 941, 945 n.3 (N.D. Ill. 2002); see also *Cameron v. Thornburg*, 983 F.2d 253, 257 n.3 (D.C. Cir. 1993) (prudent to address venue without deciding more difficult personal jurisdiction issues).  The court need not have personal jurisdiction over the defendants in order to transfer the suit under § 1404.  *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986); *Allied Van Lines, Inc*, 200 F. Supp. 2d at 945 n.3.

until May 2005, and therefore SFA must be considered the first to file its complaint. Docket No. 42 at 20-22. Plaintiffs point out that other courts have disfavored this approach. Plaintiffs argue that because they filed their complaint in this court before SFA filed its complaint in New York, plaintiffs should get the benefit of the rule so that venue should remain in this court. Docket No. 44 at 12-13, citing *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 n.3 (9th Cir. 1982). The court need not determine which side has the stronger claim to having filed first, however. The Seventh Circuit "does not rigidly adhere to a 'first-to-file' rule" and the "mere fact" that a plaintiff first filed its action "does not give it an absolute right to choose the forum in which the question should be decided." *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995); *Tempco Electric Heater Corp. v. Omega Engineering Inc.*, 819 F.2d 746, 750 (7th Cir. 1987).

When evaluating the convenience of the parties and witnesses, the court should consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874, 876 (N.D. Ill. 2005); *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999).

Where the plaintiff's choice of forum is not the situs of the material events, or has a relatively weak connection to the events, plaintiff's chosen forum is

entitled to less deference. *APV North America, Inc. v. Transindustrial Development Corp.*, 2006 WL 51169, *5 (N.D. Ill. 2006); *Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998); *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995); *International Truck and Engine Corp. v. Dow-Hammond Trucks, Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002) (where conduct at issue did not take place in plaintiff's preferred forum, plaintiff's preference has "minimal value"). Here, where one of the plaintiffs is a Delaware entity and the connection between this forum and the events at issue is weak or even minimal, plaintiffs' choice of forum does not weigh against a transfer.

The complaint and other supporting evidence submitted indicate that none of the material events, the actions that plaintiffs claim have violated their rights, took place in Indiana. All of the events at issue in this action occurred in Bradford and SFA's interactions with one another and with other entities to whom they allegedly granted licenses and made statements regarding CMG's rights. Based on the evidence now before the court, it is reasonable to assume that most of these events either took place in New York or were conducted through SFA's New York office. For example, the evidence submitted by plaintiffs demonstrates that defendant SFA wrote its letter informing CMZ that CMG had no Monroe publicity rights from New York. See Docket No. 44, Ex. C-10. Plaintiffs' argument that most of the injuries allegedly caused by Bradford and SFA were felt in Indiana, solely because CMG is located in Indiana and MMLLC conducts business

-9-

through CMG, is unavailing. Plaintiffs' argument that the situs of the material events occurred in Indiana merely because plaintiffs suffered injury here proves too much. It would mean that plaintiffs could force defendants from anywhere to defend themselves in Indiana against plaintiffs' claims to have worldwide exclusive rights to Marilyn Monroe's right of publicity. This factor weighs heavily in favor of the defendants.

The factor pertaining to the access to evidence does not weigh against transfer. Both parties claim that the images, documents, and electronically stored information likely to be evidence in this case are located in their respectively favored forums.

The convenience of the witnesses is also a neutral factor in the court's transfer analysis. Apart from the employees and officers of the parties, who are likely to be present for trial, the only witness list produced by the parties demonstrates that many of the possible witnesses are located throughout the country, with two witnesses located in New York City and three in Mishawaka, Indiana. See Pl. Ex. C ¶ 7.

The convenience to the parties in litigating in their respective forums weighs in favor of defendants. Transfer is not appropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Chemical Waste Management, Inc v. Sims.*, 870 F. Supp. 870, 876 (N.D. Ill. 1994); *Brandon*

*Apparel Group*, 42 F. Supp. 2d at 834. That is not the case here. Although CMG is located in Indiana, and therefore MMLLC does much of its business from Indiana, CMG, by its own account, engages in business throughout the world. Accordingly, on balance, litigation in New York would be more convenient to the parties.

Transfer is also consistent with the interests of justice in this case. The interests of justice pertain to the efficient administration of the federal court system and may be determinative in a case, warranting transfer even where the convenience of the parties and witnesses dictates an opposite result. *Coffey*, 796 F.2d at 220-21. In determining whom this factor favors, the court will commonly look to (1) the congestion and likely speed to trial in the transferee forum; (2) courts' relative familiarity with the relevant law; (3) the courts' efficiency interest in avoiding duplicative litigation; and (4) the relation of each community to the controversy at issue. *Allied Van Lines, Inc.*, 200 F. Supp. 2d at 946; see also *Coffey*, 796 F.2d at 221.

The central issue to be determined is the parties' competing claims to the name, image, persona, and likeness of Marilyn Monroe. Plaintiffs seek declaratory judgment regarding their rights in this property, which they claim is secured by "common law, state-based statutory authority, federal statutes, and by certain trademarks registered in the United States and in various foreign countries." Second Am. Cplt. Docket No. 35 ¶ 31. While there exist issues of Indiana law in

this case, in a similar case Judge Young found similar issues fit for examination by another court. *CMG Worldwide, Inc. v. Milton H. Greene Archives, LLC*, 2005 WL 2175523, *5 (S.D. Ind. 2005). His reasoning is persuasive here. Additionally, defendant SFA's complaint filed in the Southern District of New York indicates that New York law will also likely be relevant to the dispute between the parties. See Docket No. 42, Ex. 2 at 34; see also Docket No. 44, Ex. C-10. The court is confident that the Southern District of New York will ably address the matters at issue in this case.

The remaining factors weigh in favor of transfer. Because similar issues are already pending before the Southern District of New York, transfer would serve the courts' interest in avoiding duplicative litigation. Also, as noted above with respect to the situs of the material events in this case, the relation between Indiana and the conflict at issue is weak at best, and certainly much weaker than the relation between the conflict and the Southern District of New York.

Transfer is also warranted because the Southern District of New York is substantially less congested and provides greater speed to trial than the Southern District of Indiana. Judicial caseload profiles for both forums show that the Southern District of Indiana had 690 weighted filings per judgeship in 2005 compared to 551 in the Southern District of New York, a difference of approximately 25% by the court's calculations. In 2004, this court had 729 weighted filings per judgeship, compared with 527 in the Southern District of New

York, a difference of approximately 38%.[2] While the difference in speed from filing to trial or filing to disposition is less pronounced, judicial caseload profiles of the two forums show that trial or disposition of this matter may be faster in the Southern District of New York as well, based on 2005 and 2004 statistics.

Based on the foregoing, the court transfers this matter pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York for all further proceedings.  Defendant SFA's motion to dismiss or alternatively to transfer venue, Docket No. 41 (joined also by defendant Bradford in Docket No. 55), is GRANTED as to SFA's arguments regarding the transfer of venue and DENIED as moot as to SFA's arguments regarding personal jurisdiction in Indiana. Defendants' remaining motions to dismiss regarding personal jurisdiction in Indiana, Docket Nos. 24, 26, 39, are also DENIED as moot.

So ordered.

Date: March 23, 2005

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

---

[2]The practical difference is even greater because these calculations per judgeship do not take into account the often vital role that senior judges can play. No senior district judges have been hearing cases in this district during these years, while many senior district judges shoulder a heavy portion of the caseload in the Southern District of New York.

Copies to:

Hamish S. Cohen
BARNES & THORNBURG LLP
hamish.cohen@btlaw.com

James M. Hinshaw
BINGHAM MCHALE LLP
jhinshaw@binghammchale.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Jonathan G. Polak
SOMMER BARNARD ATTORNEYS PC
jpolak@sommerbarnard.com

Amy L. Wright
DANN PECAR NEWMAN & KLIEMAN
awright@dannpecar.com