**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAW FAMILY ARCHIVES, LTD.,
BRADFORD LICENSING, INC., JAMES E.
DOUGHERTY, and VALHALLA
PRODUCTIONS, LLC.

              05 CV 3939 (CM)

     Plaintiffs/Consolidated Defendants,

 v.

              Honorable Colleen McMahon

CMG WORLDWIDE, INC. and MARILYN
MONROE, LLC,

     Defendants/Consolidated Plaintiffs.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MARILYN MONROE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNT II AGAINST SHAW FAMILY ARCHIVES, LTD.

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Defendant/Consolidated Plaintiff
Marilyn Monroe LLC

# TABLE OF CONTENTS

Page

Preliminary Statement ........................................................................................................1

Procedural History ............................................................................................................4

Statement of Undisputed Facts ........................................................................................5

Summary Judgment Standard ..........................................................................................5

Argument ..........................................................................................................................7

    I.    Indiana's Postmortem Right of Publicity Statute Governs Count II........................8

    II.    Marilyn Monroe, LLC Has an Enforceable Right of Publicity Under Indiana Law ...............................................................................................................9

    III.    SFA Violated Marilyn Monroe's Statutory Publicity Rights in Indiana ...............14

Conclusion ......................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## Cases

Alaska Dep't of Envtl. Conservation v. EPA,
    540 U.S. 461, 124 S. Ct. 983 (2004) ................................................................. 13

Allen v. Great Am. Reserve Ins. Co.,
    766 N.E.2d 1157 (Ind. 2002) ...................................................................... 8, 9

Am. Nurses' Ass'n v. Illinois,
    783 F.2d 716 (7th Cir. 1986) .......................................................................... 6

Anderson v. Liberty Lobby,
    477 U.S. 242, 106 S. Ct. 2505 (1986) ............................................................. 6

Arce v. Walker,
    139 F.3d 329 (2nd Cir. 1998) ........................................................................ 6

Celotex Corp. v. Catrett,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ............................................................. 6

Cler v. Ill. Educ. Ass'n,
    423 F.3d 730 (7th Cir. 2005) ....................................................................... 10

Cole v. U.S. Capital, Inc.,
    389 F.3d 719 (7th Cir. 2004) ....................................................................... 13

Gildon v. Bowen,
    384 F.3d 883 (7th Cir. 2004) .................................................................. 10, 11

Holden v. Balko,
    949 F. Supp. 704 (S.D. Ind. 1996) ................................................................. 6

Hubbard Manufacturing Co. v. Greeson,
    515 N.E.2d 1071 (Ind. 1987) ......................................................................... 9

Lord Simon Cairns v. Franklin Mint Co.,
    292 F.3d 1139 (9th Cir. 2002) ................................................................. 11, 12

Martin Luther King, Jr., Ctr. For Soc. Change, Inc. v. Am. Heritage Prods., Inc.,
    296 S.E. 2d 697 (Ga. 1982) ........................................................................... 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. 1348 (1986) ............................................................. 6

Needham v. Innerpac, Inc.,
    2006 U.S. Dist. LEXIS 70607 (N.D. Ind. Sept. 19, 2006) ................................. 9

Northeast Ill. Reg'l Commuter R.R. Corp. v. Kiewit Western, Co.,
    396 F. Supp. 2d 913 (N.D. Ill. 2005) .............................................................. 6

Phillips v. Scalf,
    778 N.E.2d 480 (Ind. Ct. App. 2002) ................................................ 10, 11, 13, 16

Richards v. United States,
    369 U.S. 1, 82 S. Ct. 585 (1962) ................................................................... 13

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989) ........................................................................... 1

Simon v. United States,
    805 N.E.2d 798 (Ind. 2004) ........................................................................... 9

*TRW Inc. v. Andrews*,
   534 U.S. 19, 122 S. Ct. 441 (2001)............................................................ 13

*van Dusen v. Barrack*,
   376 U.S. 612, 84 S. Ct. 805 (1964)........................................................... 8

## Statutes

28 U.S.C. 1404 ....................................................................................................... 5

32 Ind. Code, art. 36, ch. 1 § 1 ................................................................... 10, 12, 14

32 Ind. Code, art. 36, ch. 1 § 1, *et seq.* ........................................................ 3, 8, 9, 16

32 Ind. Code, art. 36, ch. 1 § 10 ...................................................................... 3, 17

32 Ind. Code, art. 36, ch. 1 § 12 ...................................................................... 3, 17

32 Ind. Code, art. 36, ch. 1 § 16 ................................................................. 13, 14, 16

32 Ind. Code, art. 36, ch. 1 § 17 .......................................................................... 16

32 Ind. Code, art. 36, ch. 1 § 18 .......................................................................... 16

32 Ind. Code, art. 36, ch. 1 § 2 ...................................................................... 14, 15

32 Ind. Code, art. 36, ch. 1 § 7 ................................................................. 10, 13, 14

32 Ind. Code, art. 36, ch. 1 § 8 ........................................................................ 3, 14

32 Ind. Code, art. 36, ch. 1 § 9 ............................................................................ 13

Fed. R. Civ. P. 56 ........................................................................................... 5, 6

**Preliminary Statement**

This case is ripe for summary judgment in favor of Marilyn Monroe, LLC on its right of publicity claim against Shaw Family Archives, Ltd. ("SFA"). It is undisputed that SFA has sold and advertised for sale in the State of Indiana (and elsewhere) merchandise bearing the name, likeness and image of Marilyn Monroe. It is also undisputed that SFA failed to obtain the required authorization of Marilyn Monroe, LLC, the longtime owner and holder of Ms. Monroe's postmortem publicity rights. SFA's conduct has been brazen and willful. Under controlling Indiana law – which expressly recognizes postmortem right of publicity claims regardless of a celebrity's domicile – these undisputed fact are dispositive of Count II.

In a desperate effort to avoid application of Indiana's right of publicity statute, SFA improperly has attempted to separate itself from the State of Indiana. After Marilyn Monroe, LLC sued SFA in Indiana under Indiana law for its unauthorized sale of Marilyn Monroe merchandise in Indiana, SFA commenced this parallel action in New York because SFA contends that New York law does not recognize Ms. Monroe's postmortem publicity rights.[1] Fortunately, after the Indiana action was transferred to this Court and consolidated with SFA's New York action, this Court did not reward SFA's forum-shopping, ruling in its May 19, 2006 Memorandum Decision that Indiana conflict-of-laws principles govern the consolidated actions in this Court. Those principles clearly require the application of Indiana's postmortem right of

---

[1] SFA so contends because New York substantive law does not recognize postmortem publicity rights. Nevertheless, Ms. Monroe possesses valid postmortem publicity rights because, under the operative facts, New York's choice-of-laws rules require the application of California law (which does recognize postmortem publicity rights) to any New York right of publicity claim. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).

publicity statute, and mandate summary judgment in favor of Marilyn Monroe, LLC on its right of publicity claim.

In addition to engaging in unsuccessful forum shopping, SFA also egregiously attempted to cover-up and erase the evidence of its unauthorized conduct in Indiana. In its failed Motion to Dismiss for lack of jurisdiction, SFA claimed that it has "purposefully refused" to allow the use of its unlicensed images of Ms. Monroe on products sold in Indiana. This is false.

As recently as last month, SFA unlawfully used and profited from Ms. Monroe's unlicensed name, picture, image and likeness on T-shirts sold in the State of Indiana. The offending Marilyn Monroe T-shirts, which sold for $9.99, were clearly marked with the label "Shaw Family Archives" both on the inside and on the affixed tag.

Recognizing that its unauthorized commercial activities in Indiana are unlawful, SFA recently revised its website in an effort to rewrite history and make it appear to courts that SFA was not selling its unauthorized Marilyn Monroe products in Indiana. But SFA failed to cover all of its tracks; it left behind indelible footprints of its Indiana-based misconduct. SFA and its partners also left evidence of their advertising activities over the Internet to customers in Indiana, and have falsely stated that written consent from Marilyn Monroe, LLC is not required to use Ms. Monroe's name or image, which has injured Marilyn Monroe LLC's ongoing Indiana business operations and interests.[2]

---

[2] In fact, SFA only recently began flagrantly to disregard the rights of Marilyn Monroe, LLC. For several decades, SFA has fully recognized Marilyn Monroe's postmortem rights of publicity and required users of its photographs to obtain consent to use Ms. Monroe's

[Footnote continued on next page]

On this undisputed record, SFA is liable under Indiana's right of publicity statute (32 Ind. Code, art. 36, ch. 1 § 1, *et seq.*) for using the name, image and likeness of Marilyn Monroe for commercial purposes without the required consent or authorization.  The Indiana statute specifically provides:

> A person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for one hundred (100) years after the date of the personality's death without having obtained previous written consent from a person specified in section 17 of this chapter.

*See* 32 Ind. Code, art. 36, ch. 1 § 8(a).  Marilyn Monroe, LLC is the undisputed 100% owner and holder of Ms. Monroe's postmortem publicity rights (both in Indiana and anywhere else they exist), and SFA's commercial use of Ms. Monroe's name and image in Indiana occurred within 100 years of her death and without the written consent of Marilyn Monroe, LLC.  Nothing more is needed to establish SFA's violation of Indiana law.  Nor is there any dispute as to damages. Indiana's right of publicity law establishes a legally defined minimum damage award of "one thousand dollars ($1,000);" requires the Court to award reasonable attorneys' fees and costs to the prevailing party; and allows the Court to enjoin future or continuing violations.  *See* 32 Ind. Code, art. 36, ch. 1 §§ 10(1)(A), 12(1) and 12(2).

In sum, the undisputed evidence clearly establishes SFA's violation of the Indiana right of publicity statute.  No amount of discovery can change these undisputed facts.  Count II is ripe for summary judgment.  Accordingly, this Court should award summary judgment against SFA on Count II and enter a statutory damage award in the amount of $1,000, as well as reasonable

---

[Footnote continued from previous page]

publicity rights from Marilyn Monroe, LLC.  We will fully address SFA's brazen and willful

[Footnote continued on next page]

3

attorneys' fees and costs.  The Court should also enjoin SFA from further violations of Ms. Monroe's rights of publicity and order the surrender of all offending unlicensed property.

## Procedural History

On March 23, 2005, Plaintiffs Marilyn Monroe, LLC and CMG Worldwide, Inc. ("CMG") filed a complaint (the "Indiana Complaint") against SFA and its agent, Bradford Licensing Associates ("Bradford"), in the United States District Court for the Southern District of Indiana (the "Indiana Action").  *See* Declaration of Michelle M. Craven, dated October __, 2006 ("Craven Declaration"), Exh. A.  In the Indiana Complaint, Marilyn Monroe, LLC alleges, among other things, that SFA and Bradford have violated Ms. Monroe's right of publicity, by using her name, image and likeness for commercial purposes without consent, and that Marilyn Monroe, LLC has suffered damages as a result of SFA's and Bradford's past and continued violation of Ms. Monroe's right of publicity ("Count II").  On March 22, 27 and 28, 2005, Marilyn Monroe, LLC and CMG also filed three related actions in the Southern District of Indiana against other photographers and their agents concerning these same intellectual property rights.

On April 19, 2005, SFA and Bradford, among others, brought a mirror image lawsuit in this Court against Marilyn Monroe, LLC and CMG, which presents the same issues as the Indiana Complaint (the "New York Action").  On June 3, 2005, Marilyn Monroe, LLC and CMG filed a motion in this Court seeking dismissal, a stay, or transfer of the New York Action in favor of the first-filed Indiana Action.  On July 5, 2005, SFA and Bradford filed a motion, in the

_____

[Footnote continued from previous page]

change in position at the appropriate time.

Indiana Court, seeking dismissal of the Indiana Action on the grounds that the Indiana Court lacked personal jurisdiction over them and/or a transfer of the Indiana Action to this Court. On July 6, 2005, this Court issued a memorandum order staying SFA's New York Action pending a determination of the motion to dismiss for lack of personal jurisdiction in the Indiana Action.

On March 23, 2006, the Southern District of Indiana ordered that the Indiana Action be transferred to this Court under 28 U.S.C. 1404(a). With both actions soon to be pending before it, this Court issued an Order on March 27, 2006, lifting the stay of the second-filed New York action. At a status conference on April 24, 2006, this Court requested letter briefs regarding the question of whether the Indiana court had personal jurisdiction over SFA and the other defendants. On May 19, 2006, this Court entered a Memorandum Decision ruling, among other things, (1) that SFA and the other defendants in the Indiana Action "were amenable to jurisdiction in Indiana," (2) that, of the two actions pending before this Court, the Indiana Action was the first-filed, and (3) that Indiana's choice-of-law principles must apply to this case. Craven Declaration, Exh. B. This motion for summary judgment against SFA on Count II followed.

## Statement of Undisputed Facts

The undisputed facts are set forth in the accompanying Statement of Undisputed Facts and are used in the argument section herein. They will, therefore, not be separately repeated here.

## Summary Judgment Standard

This motion seeks an award of summary judgment for Marilyn Monroe, LLC and against SFA as to Count II only. Under Federal Rule of Civil Procedure 56, such a motion for partial summary judgment on a single cause of action is proper – even where other, separate causes of

action still remain in the case – because it seeks to dispose entirely of the single cause of action against SFA. *Arce v. Walker*, 139 F.3d 329, 338 (2nd Cir. 1998); *Northeast Ill. Reg'l Commuter R.R. Corp. v. Kiewit W., Co.*, 396 F. Supp. 2d 913, 921 (N.D. Ill. 2005); *see also* Fed. R. Civ. P. 56(a) (allowing summary judgment on "all or any part" of a claim). "The standard for summary judgment is the same regardless of whether the motion addresses the entire case or only a portion of it." *Holden v. Balko*, 949 F. Supp. 704, 706 (S.D. Ind. 1996).

Under Federal Rule of Civil Procedure 56, summary judgment should be granted when there are no genuinely disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50, 106 S. Ct. 2505, 2509-12 (1986). A disputed fact is "material" only if, based on that fact, a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Once the movant submits facts demonstrating it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party who must then "do more than simply show that there is some metaphysical doubt as to the material facts" in order to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553 (opposing party must "go beyond the pleadings" and present specific facts to show that a genuine dispute exists). As such, once Marilyn Monroe, LLC meets its initial burden to show it is entitled to judgment on Count II, the burden shifts to SFA to submit admissible evidence demonstrating material fact disputes in order to avoid summary judgment. Here, SFA will be unable to do so and summary judgment should be granted on Count II.

## Argument

Marilyn Monroe is among the most famous and enduring celebrities of the twentieth century.  During her lifetime, Ms. Monroe spent significant time and resources cultivating and developing her public persona and, upon her death, she devised 75% of her rights of publicity and many other assets to her close friend and acting coach, Lee Strasberg.  Statement of Uncontroverted Facts ("SUF") ¶ 10.  Anna Strasberg inherited these Monroe assets from Lee Strasberg, her late husband.  SUF ¶ 11.  To protect Ms. Monroe's public image and promote these valuable publicity rights, Anna Strasberg created Marilyn Monroe, LLC, a Delaware limited liability company with its headquarters in Indiana, and transferred the above described Monroe assets to Marilyn Monroe LLC.  SUF 12.[3]  Marilyn Monroe, LLC has invested considerable time, energy and money ensuring Ms. Monroe's image is treated with respect, developing business relationships and selling licenses for the tasteful use of Marilyn Monroe's name, image, likeness and other protected aspects of her personality.

For decades, Marilyn Monroe, LLC and Anna Strasberg exclusively have retained CMG Worldwide, Inc. ("CMG"), another Indiana-based company, to strategically manage Ms. Monroe's postmortem rights of publicity.  SUF 14.  This lawsuit is an extension of Ms. Strasberg's and Marilyn Monroe, LLC's long-time efforts to protect and preserve Ms. Monroe's iconic legacy and to prevent "the [economic] exploitation of [her] likeness in a

---

[3] The Anna Freud Centre was the original holder of the remaining 25% of the rights in and to these Monroe assets, and the Centre transferred these rights to Marilyn Monroe, LLC as well.  SUF 13.

manner they consider unflattering and unfitting." *See Martin Luther King, Jr., Ctr. For Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 296 S.E. 2d 697, 706 (Ga. 1982).

Summary judgment for Marilyn Monroe, LLC and against SFA on Count II is warranted because (1) the Indiana statutory right of publicity statute applies and (2) the undisputed facts establish that SFA violated the statute.

## I.    <u>Indiana's Postmortem Right of Publicity Statute Governs Count II</u>

In its May 19, 2006 Memorandum Decision Regarding Choice of Law, the Court correctly ruled that "Indiana choice of law principles apply" to this action that was transferred from Indiana, as required by *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 821 (1964). *See* Order at 11. Because Count II is a *statutory* claim specifically and expressly brought under 32 Ind. Code, art. 36, ch. 1 § 1, *et seq.*, Indiana law, by definition, applies to this cause of action. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1166 (Ind. 2002). In *Allen*, the plaintiffs were insurance agents from North and South Carolina, and defendants were an insurance company and its training agent that misrepresented aspects of the insurance policies at issue.[4] Plaintiffs sued under both common law tort and Indiana statutory claims.

While the Indiana Supreme Court performed a *lex loci delicti* analysis for the tort claims, it expressly found that Indiana law must govern a cause of action stated under an Indiana statute:

> [T]he question is not which state's law applies to [the Indiana statutory] claims. <u>There is no doubt that Indiana law applies to a claim under an Indiana statute</u>.

---

[4] While plaintiffs' contract with the insurance company required the use of Indiana law, they had no contract with the training agent and the court determined which state's law applied using Indiana's choice-of-law rules. *Allen,* 766 N.E.2d at 1162-63.

*Allen*, 766 N.E.2d at, 1166 (emphasis supplied); *see also Needham v. Innerpac, Inc.,* 2006 U.S. Dist. LEXIS 70607, at *13 (N.D. Ind. Sept. 19, 2006) ("the court concludes that because Count I alleges a claim under an Illinois statute, Illinois law *clearly applie*s to determine whether the statute applies to the facts alleged to support the claim") (emphasis supplied).  This Court, therefore, does not perform a traditional *lex loci delecti* "choice of law" analysis for claims arising under an Indiana statute, such as 32 Ind. Code, art. 36, ch. 1 § 1, *et seq.*, upon which Count II is based.  *Allen,* 766 N.E.2d at 1164-66 (distinguishing Indiana's choice-of-law rules for statutory versus tort claims).[5]  Indiana law governs Count II; no further choice-of-law analysis is necessary.  *Allen,* 766 N.E.2d at 1166.

## II.    Marilyn Monroe, LLC Has an Enforceable Right of Publicity Under Indiana Law

Because Court II states a claim arising under a specific Indiana statutory law, the only issue is "whether the [Indiana] statutes apply to the facts alleged to support these claims."  *Allen,* 766 N.E.2d at 1166.  This is not a choice-of-law question; instead, it is a matter of statutory construction.  On its face, the Indiana right of publicity statute provides:

---

[5] By contrast, the traditional *lex loci delecti* choice-of-law rules stated in *Simon v. United States* and *Hubbard Manufacturing Co. v. Greeson* – which this Court identified in its May 19 Order – apply only to the *tort* claims in the First Amended Complaint.  *See Simon,* 805 N.E.2d 798, 804-05 (Ind. 2004) (discussing choice-of-law rules "in tort cases"); *Hubbard*, 515 N.E.2d 1071, 1074 (Ind. 1987) (discussing choice-of-law rules in contract and tort cases).  As such, Marilyn Monroe, LLC's and CMG's common law tort claims in Count III (Conversion), Count V (Unfair Competition), Count VI (Trade Libel/Disparagement), Count VII (Interference with Business Advantage) and Count VIII (Interference with Contract) will each require the Court to make a *Hubbard*-type choice-of-law analysis.  The declaratory relief in Counts I, IX and X will likewise be the subject of

[Footnote continued on next page]

> This chapter applies to an act or event that occurs within Indiana, regardless of a personality's domicile, residence, or citizenship.

32 Ind. Code, art. 36, ch. 1 § 1(a). The statute is clear: it protects a celebrity's right of publicity from any act or event "that occurs within Indiana" *no matter where the celebrity was domiciled*. Here, the undisputed facts prove that an "act or event . . . occurred within Indiana" – *i.e.,* the unauthorized use of Ms. Monroe's name, picture, image and likeness on T-shirts sold at a Target store in Indianapolis. *See* SUF ¶¶ 1–7. Under the plain language of 32 Ind. Code, art. 36, ch. 1 § 1(a), therefore, *nothing more is required for the Indiana statute to apply to these facts. Cler v. Ill. Educ. Ass'n,* 423 F.3d 730 (7th Cir. 2005) ("[W]hen the plain language of a statute is clear, courts need look no farther than those words in interpreting the statute."); *Gildon v. Bowen*, 384 F.3d 883, 886 (7th Cir. 2004) (same).

The Indiana statute also explicitly states that Ms. Monroe's postmortem rights of publicity are protected against infringement "regardless of the personality's domicile, residence or citizenship." 32 Ind. Code, art. 36, ch. 1 § 1(a). This, too, is unambiguous: if an act or event occurs within Indiana, then a celebrity's domicile is wholly immaterial to whether that celebrity has a protectable right of publicity under Indiana law. Consistent with this reading, case law is clear that Indiana's right of publicity statute is a substantive law that *both creates and protects* a celebrity's postmortem right of publicity in Indiana. *See Phillips v. Scalf*, 778 N.E.2d 480, 483 (Ind. Ct. App. 2002) ("Ind. Code § 32-36-1-7 *creates* a 'property right' in a personality's right of

---

[Footnote continued from previous page]

their own analyses under applicable rules. But these causes of action are not the subject of this summary judgment motion.

publicity") (emphasis supplied). And this substantive right "applies . . . regardless of the personality's domicile." Again, because the statute is clear and unambiguous on its face, it "need not and cannot be interpreted by a court." *See Phillips*, 778 N.E.2d at 482-83; *Cler,* 423 F.3d at 730; *Gildon*, 384 F.3d at 886.

In an analogous situation, the Ninth Circuit ruled in *Lord Simon Cairns v. Franklin Mint Co*., that including the language "regardless of domicile" in a right of publicity statute would unequivocally demonstrate a legislature's intent to create and protect a statutory postmortem right of publicity within that state *even if* the celebrity's home state of domicile does not similarly recognize such personal property rights. 292 F.3d 1139, 1145-1149 (9th Cir. 2002). In *Cairns*, Princess Diana – a domiciliary of Great Britain, which, like New York, does not recognize postmortem publicity rights – argued that her postmortem publicity rights could be protected under the California right of publicity statute. *Id*. at 1144. On its face, the California statute applied to "acts occurring directly in this State," but did not apply to these acts "regardless of [the celebrity's] domicile." *Id*. at 1147. The Ninth Circuit noted that on several occasions, members of the California legislature had tried – but failed – to add this "regardless of domicile" language into the statute. *Id*. at 1148-49. The Court found, therefore, that because the California statute did not include the phrase "regardless of domicile," the California legislature did not intend to create a right of publicity in California if one did not exist in the celebrity's home domicile. *Id*. The Court reasoned that without this language, California's *default* choice-of-law rule for personal property (which, like New York's *default* rule, is based on the domicile of the property owner) determines whether a celebrity's right to publicity exists that can then be *enforced* under the California statute for acts occurring in California. *Id.* at 1147.

11

The Ninth Circuit found that if the California legislature had successfully amended the statute to add the phrase "regardless of domicile" into the final language, then the statute would clearly "state by its plain language that such cases are *not* governed by the law of the domicile of the owner" (emphasis in original) and that it would be "a result demonstrably at odds with the intentions of the drafters" for a court to look to the celebrity's domicile to determine whether a right of publicity exists. *Id.* at 1148 (internal citations omitted). In short, the Court determined that including the phrase "regardless of domicile" would unequivocally demonstrate a legislature's intent to create and protect a statutory postmortem right of publicity within that state *even if* the celebrity's home state of domicile does not similarly recognize this personal property right. *See* 292 F.3d at 1147-48.

Importantly, that is exactly what Indiana law has done here: the Indiana statute *expressly includes* the phrase "regardless of a personality's domicile" when defining the applicability of the statute in 32 Ind. Code, art. 36, ch. 1 § 1(a). As the Ninth Circuit explained, this unequivocally demonstrates the Indiana legislature's intent to create an enforceable right of publicity in Indiana *no matter where a celebrity was domiciled* or how that domicile treats postmortem publicity rights. *Cairns* is, therefore, directly on point. Accordingly, under the plain language of the Indiana statute, Ms. Monroe has (and therefore her devisees have) an enforceable right of publicity under Indiana law whether or not similar rights exist in other states.

It would be nonsensical to read the statute any other way. For example, the "regardless of domicile" language cannot reasonably be read as somehow serving only as a "long-arm" statute creating jurisdiction to sue in Indiana if the celebrity's state of domicile independently recognizes a postmortem right of publicity. Allowing the statute to only protect a celebrity if he or she happened to be domiciled in a state that also recognized the postmortem right of publicity,

however, would suggest that it does matter where the celebrity was domiciled – meaning the Court would have to ignore or write the phrase "regardless of domicile" out of the Indiana statute. This would be improper. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 449 (2001) (courts should avoid statutory constructions that render another part of the same provision superfluous). Likewise, the Indiana statute already has a separate jurisdictional "long-arm" provision, 32 Ind. Code, art. 36, ch. 1 § 9, that would be radically altered in scope and made mere surplussage if § 1(a) were now found to be the "real" jurisdictional provision. This also would be improper. *See Richards v. United States,* 369 U.S. 1, 11, 82 S. Ct. 585, 591-92 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act."); *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489, 124 S. Ct. 983, 1002 n.13 (2004) ("It is, moreover, a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal citations omitted); *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004).

In sum, the language of the Indiana statute and case law leave no doubt that Indiana's right of publicity statute is a substantive law that *creates* and protects a celebrity's postmortem right of publicity in Indiana – whether or not similar rights are recognized in the celebrity's state of domicile. Indiana courts have ruled unequivocally: "Ind. Code § 32-36-1-7 *creates* a 'property right' in a personality's right of publicity." *See Phillips*, 778 N.E.2d at 483 (emphasis supplied); *see also* 32 Ind. Code, art. 36, ch. 1 § 16 ("[t]he rights recognized under this chapter are property rights.")  As such, it is immaterial whether other states (such as New York) would also recognize Ms. Monroe's postmortem publicity rights, although, as set forth above (*see infra*

n. 1), New York would recognize such rights. The Indiana right of publicity statute governs Count II.

### III.    SFA Violated Marilyn Monroe's Statutory Publicity Rights in Indiana

Count II is entitled "Violation of Right of Publicity" and alleges that SFA has "violated and [is] violating the Plaintiffs' rights to and interest in the Monroe Intellectual Property Rights protected by the Indiana Right of Publicity statute, I.C. 32-36-1-1 *et seq.* . . ." *See* First Amended Complaint (filed June 7, 2005) ¶ 38. Indiana's right of publicity statute provides:

> A person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for one hundred (100) years after the date of the personality's death without having obtained previous written consent from a person specified in section 17 of this chapter.

32 Ind. Code, art. 36, ch. 1 § 8(a). As the elements of the claim are defined in the statute itself, Marilyn Monroe, LLC is, therefore, entitled to summary judgment on Count II where there is no material dispute that:

(1)    SFA used Marilyn Monroe's name photograph, image, or likeness;

(2)    on or in connection with a product, merchandise, good, service, or advertising;

(3)    in connection with an act or event that occurs within Indiana;

(4)    within 100 years of Ms. Monroe's death; and

(5)    without written consent of Marilyn Monroe, LLC or CMG.

*See* 32 Ind. Code, art. 36, ch. 1 §§ 1(a), 2, 7, 8, and 16 (definition sections). Furthermore, the above offending acts must have some nexus to Indiana because the statute "applies to an act or event that occurs within Indiana." *Id.* at § 1(a). Marilyn Monroe, LLC easily meets these requirements.

*First,* it is undisputed that SFA used Marilyn Monroe's name, photograph, image and likeness on T-shirts that were marketed and sold in the State of Indiana and that the first three

14

elements identified above are thus satisfied. *See* SUF ¶¶ 1-7. A picture, image and likeness of Marilyn Monroe is printed on the front of the T-shirt. SUF ¶ 2. A second picture of Marilyn Monroe is printed on the tag that was affixed to the T-shirt. SUF ¶ 2. Furthermore, the name "Marilyn" is printed on the front of the T-shirt and the name "Marilyn Monroe" is printed on the inside neck label. SUF ¶ 3. Likewise, the name "Marilyn" is written in cursive script on the tag affixed to the T-shirt. SUF ¶ 3. The words "Shaw Family Archives" are printed on the inside neck label of the T-shirt and on the affixed tag. SUF ¶ 4. The T-shirt sold for $9.99. SUF ¶ 5. At the time of the purchase, there were many more identical T-shirts with Ms. Monroe's name, picture, image and likeness – and marked "Shaw Family Archives" – remaining on the Target store shelves and available for sale to other Indiana customers. SUF ¶ 6. These undisputed facts demonstrate that SFA used Ms. Monroe's name, photograph, image and likeness on and in connection with merchandise sold within the State of Indiana for a commercial purpose.[6]

---

[6] Additionally, SFA and its "partner," Bradford Licensing, also advertise their products and services directly to persons in Indiana through an Internet website. SUF ¶ 15. This advertising website includes both numerous pictures of Ms. Monroe and the names "Marilyn" and "Marilyn Monroe," and it is viewable by computer users within the State of Indiana. SUF ¶ 16. These advertisements alone – even without an offer to sell merchandise in Indiana in connection with the advertisement – constitute a violation of the statute. *See* 32 Ind. Code, art. 36, ch. 1 § 2(2) (including both "advertising" *and* "soliciting purchases" as conduct requiring written consent). Furthermore, before this lawsuit was filed, the website, in fact, solicited all customers, including Indiana customers, to purchase licenses for the use of Ms. Monroe's picture, image and likeness on commercial products. SUF ¶ 17. SFA and Bradford Licensing added the phrase "[n]o images shall be licensed for sale or distribution in Indiana" only after they were sued in this case. SUF ¶ 17. This language did not appear on the website for most of the period within the statute of limitations. Neither Marilyn Monroe, LLC, nor CMG gave written consent for these commercial uses on the Internet, all of which occurred within 100 years of Ms. Monroe's death. SUF ¶ 18. These undisputed facts, therefore, demonstrate that SFA used Ms. Monroe's name and image on and in connection

[Footnote continued on next page]

*Second,* the T-shirt was sold in Indiana on September 6, 2006, 44 years after Ms. Monroe died on August 5, 1962, and well within the 100-year postmortem period in which Indiana protects a celebrity's right of publicity.  SUF ¶¶ 7-8.

*Third*, neither Marilyn Monroe, LLC nor CMG gave written permission for SFA to use Ms. Monroe's name, picture, image or likeness in connection with the T-shirts or the affixed tags.  SUF ¶ 9.  Of course, these are the only entities with the power to provide that consent under Indiana law, because, pursuant to 32 Ind. Code, art. 36, ch. 1 §§ 16, 17(a)(2) and 18(a), only a person with at least a 50% interest in Ms. Monroe's postmortem publicity rights (whether received by contract, gift, inheritance or operation of law) has the right to provide written consent to SFA.

As set forth above, it is undisputed that in her last will and testament Marilyn Monroe devised 75% of the "rest, residue and remainder of [her] estate, *both real and personal, of whatsoever nature and wheresoever situate* . . . to which I shall be in any way entitled" to Lee Strasberg, her close friend and acting coach.  SUF ¶ 10 (emphasis supplied).[7]  When Lee Strasberg died, Ms. Monroe's publicity rights passed by will to his wife, Anna Strasberg.  SUF ¶ 11.  In 2001, Mrs. Strasberg formed Marilyn Monroe, LLC and transferred all of her 75%

---

[Footnote continued from previous page]

with advertisements and solicitations within Indiana for a commercial purpose in violation of 32 Ind. Code, art. 36, ch. 1 § 1 *et seq.*

[7]  By definition, this personal property included the right of publicity.  *Phillips*, 778 N.E. at 483 (finding that the Indiana statute "creates a 'property right' in the personality's right of publicity"); *see also* 32 Ind. Code, art. 36, ch. 1 § 16 (under Indiana law, publicity rights are "property rights, freely transferable and descendible, in whole or in part).

rights and interests in the estate of Marilyn Monroe, including, but not limited to, the right of

publicity, trademarks, and copyrights, to Marilyn Monroe, LLC.  SUF ¶ 12.  At the same time,

the holder of the remaining 25% interest likewise transferred its interest to Marilyn Monroe,

LLC.  SUF ¶ 13.

Accordingly, Marilyn Monroe, LLC is the holder of a 100% interest in Ms. Monroe's

postmortem publicity rights under Indiana law (and any other law).  Marilyn Monroe, LLC and

its exclusive licensing agent, CMG, therefore, are the *only* entities with the power to give written

consent for anyone to use Ms. Monroe's name, image and likeness for commercial purposes in

Indiana.  It is undisputed, however, that neither Marilyn Monroe, LLC, nor CMG ever gave their

written consent to SFA in connection with the offending T-shirt sales.  SUF ¶ 9.

On this undisputed record, all elements of SFA's violation of the Indiana statute are

established.  No amount of additional discovery would change these undisputed facts; summary

judgment is proper now.  Further, Marilyn Monroe, LLC's damages can be established by

operation of law and are, therefore, not subject to any material fact dispute.  Pursuant to 32 Ind.

Code, art. 36, ch. 1 § 10(1)(A), Marilyn Monroe, LLC is entitled to at least the statutorily defined

amount of "one thousand dollars ($1,000)" for the violation.  Additionally, these same

undisputed facts demonstrate that Marilyn Monroe, LLC is entitled to attorneys' fees and costs.

The Indiana right of publicity statute requires that the Court "*shall* award to the prevailing party

reasonable attorneys' fees, costs, and expenses related to an action under this chapter."  *See* 32

Ind. Code, art. 36, ch. 1 § 12(1) (emphasis supplied).  To date, Marilyn Monroe, LLC has

incurred significant attorneys' fees and costs relating to this claim, and will submit appropriate

evidence of these fees before judgment is entered.  Also, based on the undisputed facts, Marilyn

Monroe, LLC is entitled to injunctive relief as a matter of law pursuant to 32 Ind. Code, art. 36,

ch. 1 § 12(2) to prevent any further violations of Ms. Monroe's postmortem rights of publicity under Indiana law and for the surrender of all offending property.

### Conclusion

For the foregoing reasons, Marilyn Monroe, LLC respectfully requests that this Court grant its motion for summary judgment against SFA on Count II and enter a statutory damage award in the amount of $1,000. Marilyn Monroe, LLC further requests that this Court order SFA to pay reasonable attorneys' fees and costs and issue an injunction preventing SFA from further violations of Ms. Monroe's postmortem rights of publicity, as well as requiring the surrender of all offending property.

Dated: New York, New York
      October 25, 2006

Respectfully submitted,


By:        /s/ Orin Snyder
       Orin Snyder (OS-3122)
       Michelle Craven (MC-8556)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
47th Floor
New York, New York 10166-0193
Telephone: (212) 351-2400
Facsimile: (212) 351-4335

Attorneys for Defendant/Consolidated Plaintiff
Marilyn Monroe, LLC

100096835_5.DOC