UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,      05 CV 3939 (CM)

                     Plaintiffs,

                                                                **Honorable Colleen McMahon**

   -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

                     Defendants.
------------------------------------------------------------------x

**COMBINED STATEMENT OF FACTS IN SUPPORT OF THE CROSS-MOTION OF SHAW FAMILY ARCHIVES, LTD. AND BRADFORD LICENSING, INC. FOR SUMMARY JUDGMENT AND COUNTER-STATEMENT OF FACTS IN OPPOSITION TO MARILYN MONROE, LLC'S MOTION FOR SUMMARY JUDGMENT.**

Plaintiff's SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, META STEVENS and BRADFORD LICENSING, INC., pursuant to Rule 56.1(a)-(b) of the Local Rules of the United States District Court for the Southern District of New York, respectfully submits the following statement of undisputed facts:

**STATEMENT OF FACTS PURSUANT TO 56.1(a)**

1.     Marilyn Monroe's will was drafted and executed in New York County. See Exhibit "C" to the Declaration of Anna Strasberg annexed to MMLLC's Motion for Summary Judgment.

2.     Marilyn Monroe's will was probated in New York County Surrogates Court. See ("Marcus Decl.") at ¶¶ 7-10 and Exhibits F, G, H and I.

3.     Aaron Frosch, as the executor and trustee of the Estate of Marilyn Monroe, and Anna Strasberg, as the Administratrix of the Estate of Marilyn Monroe, repeatedly and consistently set forth on the record in the New York State Supreme Court and in legal filings

with the Surrogates Court that Marilyn Monroe died a resident of the State of New York. See Marcus Decl. at ¶¶ 7-10,12, 14 and 15 and Exhibits F, G, H, I , K, M and N.

4. According to the documents and filings made by Aaron Frosch, the Estate Marilyn Monroe was taxed in New York. See Marcus Decl. at ¶¶8-10 and Exhibits G, H and I.

5. The Board of Equalization of the State of California (the "BOE") relied upon the statements made on behalf of the Estate of Marilyn Monroe that she was a non-resident of the State of California and a resident of the State of New York. See Marcus Decl at ¶11 and Exhibit J.

6. Aaron Frosch, as the executor and trustee of the Estate of Marilyn Monroe, made a judicial admission to the Surrogates Court, New York County, that the Estate of Marilyn Monroe did not possess any right of privacy/publicity in Marilyn Monroe. See Marcus Decl at ¶13 and Exhibit I.

7. Discovery in the instant action has not yet been held. See Marcus Decl. at ¶ 5, Exhibit D.

8. The Estate of Marilyn Monroe/MMLLC has been selling, at auction, the personal property in the possession of the Estate, from 1999 to June of 2005. See Marcus Decl. at ¶¶ 16, 17 and 22 and Exhibits O, P and U. In at least one of the auction catalogs, photographs taken by Sam Shaw are used without credit or permission. Marcus Dec. at ¶ 22 and Exhibit U.

9. In an interview in 1955, the year Marilyn Monroe moved to New York City, she stated that she was moving to New York City and that it was her intention to one day live in Brooklyn after she retired. See Marcus ¶ 20 and Exhibit s.

10. The Appellate Division, First Department previously ruled that the Estate of Marilyn does not own a right of publicity and/or right of privacy in the name, likeness and image

of Marilyn Monroe. See *Frosch v. Grosset & Dunlap*, 75 A.D.2d 768 (N.Y.App.Div. 1980). See Marcus ¶ 25.

11. Numerous documents exist, such as letterhead with Marilyn Monroe's New York address, receipts, bank account books, checks, a SAG card and a dog license, to show that Marilyn Monroe was domiciled in New York at the time of her death. See Marcus ¶¶ 21 and 22, Exhibits T and U.

12. Sam Shaw was the author and owner of all copyrights to the photographs he took. See Edith Marcus Declaration ("Edith Decl.") at ¶ 6.

13. SFA has never advertised or solicited business in Indiana, does not have an office, employees, agent in Indiana and has never appeared in Indiana for any purpose other than appearing in this action. See Larry Shaw Declaration ("Shaw Decl.") at ¶¶ 5,6 and 7.

14. Bradford has never advertised or solicited business in Indiana, does not have an office, employees, agent in Indiana and has never appeared in Indiana for any purpose other than appearing in this action. See Len Reiter Declaration ("Reiter Decl.") at ¶¶ 5, 6, 7, 8 and 16.

15. SFA and Bradford have made it part of their business strategy to avoid doing business in Indiana. See Shaw Decl. at ¶20, the Declaration of Meta Stevens ("Stevens Decl.") ¶5 and 7 and Reiter Decl. at ¶9 and 16.

16. SFA operates two passive websites that do not actively sell or advertise any services in the State of Indiana. See Shaw Decl. at ¶ 10 and 22.

17. Sam Shaw, Larry Shaw (as agent for Sam Shaw) and SFA have continuously marketed and licensed Sam Shaw's photographs of Marilyn Monroe since 1987. During that time, MMLLC, the Estate of Marilyn Monroe, the Roger Richman Agency and CMG were aware or should have been aware of these transactions. The first indication that MMLLC was

asserting any claim to Marilyn Monroe's right of publicity was upon receipt of MMLLC's complaint herein. See Shaw Decl. at ¶¶ 12, 13, 22 and 24.

18. The marketing of Sam Shaw's photographic images of Marilyn Monroe by Larry Shaw, as agent for Sam Shaw, and SFA have generated significant proceeds. SFA's present income is almost exclusively derived from the licensing of Marilyn Monroe images. The failure to be able to market these images would force SFA to go out of business. See Shaw Decl. at ¶¶ 25 and Stevens Decl. at ¶8.

19. Bradford has invested significant time and financial resources into the business and promotion of SFA. See Reiter Decl. at ¶17.

21. It is impossible for CMG to have been MMLLC's exclusive agent for the purpose of marketing Marilyn Monroe's name, likeness and image for decades. Upon information and belief, MMLLC/The Estate of Marilyn Monroe used the Roger Richman Agency as its exclusive agent up to 1994. See Shaw Decl. at ¶ 13 and 14.

22. The alleged sale of a-shirt in a Target store in Indiana on September 6, 2006, by Tracy Betz (See the Declaration of Tracy Betz at ¶ 2, to the instant motion) was not alleged in the Second Amended Complaint of MMLLC and CMG. (See the Declaration of Michelle M. Craven at ¶ 2 and Exhibit A, to the instant motion.)

23. The Answer of SFA and Bradford deny the allegations of infringement alleged by MMLLC and CMG and denied selling, licensing or advertising any images of Marilyn Monroe in Indiana. Further, SFA and Bradford made numerous affirmative defenses, such as, but not limited to, laches, estoppel, waiver and the culpable conduct of CMG and MMLLC. See Marcus Decl. at ¶ 2 and Exhibit A.

24. SFA merely licenses to others the right to use photographic images it owns and controls, it does not create, license or sell actual merchandise. See Stevens Decl. ¶6.

25. SFA has never acted in a way to cause consusion in the marketplace between itself and MMLLC. See Shaw Decl. at ¶21.

## COUNTER-STATEMENT OF FACTS PURSUANT TO 56.1(b)

1. Neither SFA nor Bradford caused any items bearing the image of Marilyn Monroe to be sold in Indiana. The t-shirt, which is the basis for MMLLC's Motion for Summary Judgment, that was allegedly purchased in Indiana, did not enter Indiana due to any act or omission of SFA or Bradford. See Shaw Decl. at ¶ 22 and Reiter Decl. at ¶ 15 and 16. As no discovery has been completed, SFA and Bradford are unaware that any alleged t-shirt was sold or purchased as alleged in MMLLC's Statement of Facts.

2. SFA has not yet had discovery herein, but admits to this paragraph to the extent that Exhibit A to MMLLC's Statement of Facts depict Marilyn Monroe. See Marcus Decl. at ¶ 5 and Shaw Decl. at ¶22.

3. SFA has not yet had discovery herein, but admits to this paragraph to the extent that Exhibit A to MMLLC's Statement of Facts depicts the word "Marilyn" and "Marilyn Monroe." See Marcus Decl. at ¶ 5 and Shaw Decl. at ¶22.

4. SFA has not yet had discovery herein, but admits to this paragraph to the extent that Exhibit B to MMLLC's Statement of Facts depicts the words "Shaw Family Archives." See Marcus Decl. at ¶ 5 and Shaw Decl. at ¶22.

5. SFA has not yet had discovery herein, and asserts that Exhibit B to MMLLC's Statement of Facts does not indicate any amount allegedly paid. See Marcus Decl. at ¶ 5 and Shaw Decl. at ¶22.

6.     SFA has not yet had discovery herein and respectfully deny the allegations set forth in this paragraph. See Marcus Decl. at ¶ 5 and Shaw Decl. at ¶22.

7.     SFA has not yet had discovery herein and respectfully deny the allegations set forth in this paragraph. See Marcus Decl. at ¶ 5 and Shaw Decl. at ¶22.

8.     SFA admits this paragraph.

9     SFA denies, upon information and belief, that t-shirts bearing Marilyn Monroe's name, likeness and image were sold in Indiana. See Shaw Decl. at ¶ 22 and Reiter Decl. at ¶ 14

10.    Marilyn Monroe's will was probated in Surrogates Court, New York County. SFA relies on the construction of her will as determined by said Court.

11.    Upon information and belief, Lee Strasberg's will was probated in Surrogates Court, New York County. SFA relies on the construction of his will as determined by said Court.

12.    SFA denies the statements set forth in this paragraph as insufficient documentary evidence is provided. Further, SFA denies that any right of publicity in the name, likeness and image of Marilyn Monroe exists. Marilyn Monroe's right of privacy/publicity terminated upon her death.

13.    SFA denies the statements set forth in this paragraph as insufficient documentary evidence is provided. Further, SFA denies that any right of publicity in the name, likeness and image of Marilyn Monroe exists. Marilyn Monroe's right of privacy/publicity terminated upon her death. See Shaw Decl. at ¶23.

14.    SFA is not in possession the requisite knowledge and documents to admit or deny this paragraph.

15. SFA denies it advertises its services via any website. SFA does not sell or create any products. See Shaw Decl. at ¶10 and 22. Bradford has passive websites that advertises its services, but advertises that it does not do any business in Indiana. See Reiter Decl. at ¶10.

16. SFA admits that its website contains images of Marilyn Monroe, among other images. SFA's website is viewable by the entire internet community. SFA denies the remainder of this paragraph. See Shaw Decl. at ¶¶10 and 22.

17. SFA never sold or advertised any images of Marilyn Monroe in Indiana. See Shaw Decl. at ¶5-10, 20, 21 and 22 and Reiter at ¶ 4-11, 14 and 16. SFA does not market any product or service over its website. See Shaw Decl. at ¶ 10 and 22. SFA denies the remainder of this paragraph.

18. SFA denies this paragraph but admits to the extent that it never received written consent from CMG to use any image of Marilyn Monroe on its websites. Further, SFA contends that Mark Roesler of CMG was aware of SFA's (and its members) website activities prior to 2002 and was never advised, verbally, or in writing, that this website was objectionable. See Shaw Decl. at ¶ 24, Stevens Decl. ¶3 and the Declaration of Edith Marcus at ¶ 15 and 16.

Dated: New York, New York
November 29, 2006

By: David Marcus (DM 0960)
Marcus & Greben
1650 Broadway
Suite 707
New York, NY 10019
Tel: 646-536-7602
Fax: 212-765-2210

Attorneys for plaintiff/consolidated defendant SFA, plaintiff Edith Marcus and Meta Stevens and Consolidated Defendant Bradford Licensing, Inc