Exhibit B

TRUST AGREEMENT made the 4 day of October 1994,
between SAM SHAW, of Tappan, New York (hereinafter referred to
as the "Settlor" or as "SAM"), and SAM SHAW, META STEVENS and
EDITH MARCUS (hereinafter referred to as the "Trustees").

## W I T N E S S E T H:

**FIRST:**    The Settlor hereby assigns, transfers and
delivers to the Trustees the property described in Schedule
"(A)" annexed, which the Trustees agree to hold in trust and to
manage and to dispose of in accordance with the provisions of
this Trust Agreement.  This trust is created for the benefit of
SAM SHAW, his daughters, META STEVENS and EDITH MARCUS, their
husbands, and SAM SHAW'S grandchildren and more remote
descendants, and may be referred to as "The Sam Shaw Family
Trust".  The Settlor agrees to execute such further instruments
as shall be necessary to vest the Trustees with full title to
the property described in Schedule "(A)".

**SECOND:**    The Settlor shall have the right during his
lifetime, to alter, amend, revoke or terminate the trust
created hereby, or any of the terms of this Trust Agreement, in
whole or in part.

**THIRD:**    During SAM's lifetime, the Trustees shall
pay to him or apply for his benefit so much or all (or none) of
the net income and/or principal as SAM shall direct, or as the

Trustees shall determine in their discretion.  At the end of each trust year, any undistributed net income shall be added to, and treated as principal of the trust.

FOURTH:    Upon SAM's death, the Trustees shall reserve an amount sufficient to pay the "Death Taxes" set forth in Article SEVENTH "(A)" of this Trust Agreement, and shall retain the then remaining principal, together with all accrued and undistributed net income, to be held in a trust as follows:

(A)  The Trustees shall distribute the net income of the trust in quarter-annual or more frequent installments as the Trustees, in their sole discretion, shall determine, as follows:

(1)    Five (5%) percent thereof, to HAROLD SHAW, if he is living at the date of such distribution;

(2)    One-third (1/3) of the balance thereof, to SAM's daughter META, or if she is not then living to her husband, if he is then living, or if he also is not then living, in equal shares to her then living children, provided that, the Trustees may distribute to any such child who is at least eighteen (18) years of age or apply for his or her benefit as much of that income as the Trustees determine for any emergency and/or educational expense of such child;

(3)    One-third (1/3) of the balance thereof, to SAM's daughter EDITH, or if she is not then living to her husband, if he is then living, or if he also is not then

0092N

living, in equal shares to her then living children provided that, the Trustees may distribute to any such child who is at least eighteen (18) years of age or apply for his or her benefit as much of that income as the Trustees determine for any emergency and/or educational expense of such child; and

(4)    One-third (1/3) of the balance thereof, in equal shares to those of SAM's grandchildren, CYNTHIA CONTI, ROBERT CONTI, MELISSA STEVENS, DAVID MARCUS, REBEKA MARCUS, JAKOB SHAW, and AUSTIN SHAW, who are at least eighteen (18) years of age. If any other person other than those named above asserts that he or she is one of SAM's grandchildren that person shall not be entitled to any distribution. Any undistributed net income shall be accumulated and added to principal of this trust.

(B)    The Trustees may make discretionary distributions of principal to or for the benefit of any member of a class consisting of META, her husband, EDITH, her husband and any of SAM's grandchildren who are named in Paragraph (A)(4) of this Article or their descendants for his or her health, education, maintenance and/or support.

(C)    This trust shall terminate upon the date which is twenty-one (21) years after the date of the death of the survivor of META, her husband, EDITH, her husband and SAM's grandchildren, CYNTHIA CONTI, ROBERT CONTI, MELISSA STEVENS, DAVID MARCUS, REBEKA MARKUS, JAKOB SHAW, and AUSTIN SHAW.

0092N

(D)   Upon the termination of this trust, the Trustees shall distribute the remaining trust principal, together with any undistributed net income, in equal shares per capita to those of SAM's great-grandchildren who are living at the date of the termination of this trust who are descended from SAM's grandchildren named in paragraph (A)(4) of this Article.

(E)   No Trustee having a beneficial interest in this trust shall participate in making a discretionary distribution either for his or her benefit, to himself or herself, or to a person that he or she is legally obligated to support.   Such discretionary distributions shall be made only by the other Trustees.

(F)   The Settlor has deliberately excluded his son LARRY SHAW from participation in The Sam Shaw Family Trust.   His conduct has demonstrated a willful disregard for the Settlor, and the Settlor's daughters, META and EDITH.   He has benefited without the Settlor's consent from his unauthorized and illegal taking of the Settlor's property and money.   It will be a long time, if ever, before the Settlor and the rest of his family will recover from his exploitation.

FIFTH:   (A)   If, upon the occurrence of any contingency any share of any trust under this Trust Agreement shall not be completely disposed of, then such undisposed of property shall be paid to those persons and in the same proportions in which they would have inherited it from the Settlor had he then died intestate, the absolute owner of it

- 4 -

0092N

and a resident of the State of New York.  The Settlor's son LARRY SHAW shall be deemed to have died prior to the occurrence of such contingency for purposes of this disposition.

(B)  Whenever income or principal is to be used for the benefit of a person under the age of eighteen (18) years or a person who in the sole judgment of the Trustees is incapable of managing his or her own affairs, the Trustees may make payment of such property in any or all of the following ways:

(1)  By paying such property to the guardian, committee, conservator or other person having the care and control of such person under the age of eighteen (18) years for his or her benefit or to any authorized person as custodian for him or her under any applicable Gifts to Minors Act.

(2)  By paying such property to the guardian, committee, conservator or other person having the care and control of such incapable person.

(3)  By paying directly to any such beneficiary such sums as the Trustees may deem advisable as an allowance.

(4)  By expending such property in such other manner as the Trustees in their discretion determine will benefit any beneficiary.

0092N

(C)  If the principal becomes vested and payable to a person under the age of eighteen (18) years, whether upon the Settlor's death or upon the termination of any trust hereunder, the Trustees may make payment thereof in any of the ways set forth in the preceding subparagraphs or may defer payment of any part or all thereof, meanwhile applying to the use of such beneficiary so much or all of such principal and of the income therefrom, as the Trustees in their discretion deem advisable.  Any income not expended by the Trustees shall be added to principal.  The Trustees shall pay any remaining principal to such beneficiary upon his or her attaining the age of eighteen (18) years or to his or her estate upon death prior to such payment in full.

(D)  Any payment or distribution authorized in this Article shall be a full discharge to the Trustees with respect thereto.

SIXTH:    The Settlor hereby confers upon the Trustees all powers and discretion conferred generally upon fiduciaries by Section 11-1.1 of the Estates, Powers and Trusts Law of the State of New York, and other provisions of law and this Trust Agreement.  In addition, without limiting the foregoing, the Trustees shall have the following powers and discretion with respect to all property of whatever kind at any time held by them until its distribution, which they may exercise as they deem advisable:

0092N

(A)  To retain the Settlor's collection of photographs, negatives and transparencies ("the Collection") for such time as the Trustees shall determine in their discretion; to take any actions that the Trustees shall determine in their discretion to enhance the Collection; and to sell the Collection as a collection upon such terms and conditions as the Trustees shall determine in their discretion;

(B)  To sell, purchase, exchange, invest and reinvest in bonds, preferred or common stocks, mortgages, interests in any kind of investment trust, or other evidences of rights, interests or obligations, secured or unsecured, foreign or domestic, or any other property, real or personal and whether or not in the nature of a wasting asset, all without any duty to diversify investments, and fully free of any and all restrictions imposed by law upon the investment of funds held by a fiduciary; and to retain the same for any period of time without liability therefor, provided that during SAM's lifetime he shall make all investment decisions;

(C)  To employ and to pay the compensation of such agents, accountants, custodians, experts and counsel, legal and investment (including any firm with which a Trustee hereunder may be associated), and to delegate discretionary powers to, and rely upon information or advice furnished by, such agents, accountants, custodians, experts or counsel;

- 7 -

(D)   To improve, lease (for any term, whether or not beyond the term of the separate trust or the term fixed by any law), partition or otherwise deal with or dispose of any real or personal property or any interest therein; to make alterations in and extraordinary improvements to any building now or hereafter located on any such property; to construct new buildings; and to enter into contracts or grant options (for any period) with respect to any of the foregoing;

(E)   To consent to the modification, renewal or extension of any note, whether or not secured, or any bond or mortgage, or any term or provision thereof, or any guarantee thereof, or to the release of such guarantee; to release obligors on bonds secured by mortgages or to refrain from instituting suits or actions against such obligors for deficiencies; to use property held under this Trust Agreement for the protection of any investment in real property or in any mortgage on real property;

(F)   To abandon any property, real or personal, that they deem to be worthless or not of enough value to warrant keeping or protecting; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of it; to permit such property to be lost by tax sale or other proceeding, or to convey it for nominal or no consideration;

0092N

(G)  To exercise or dispose of any or all options, privileges or rights appurtenant or incident to the ownership of any property, whether to vote, assent, subscribe, convert or of any other nature; to become a party to, or deposit securities or other property under, or accept securities issued under, any voting trust agreement;

(H)  To assent to or participate in any reorganization, readjustment, recapitalization, liquidation, partial liquidation, consolidation, merger, dissolution, sale or purchase of assets, lease, mortgage, contract or other action or proceeding by any corporation and, in that connection, to subscribe to new securities, to exchange any property for any other property, and to pay any assessments or other expenses; to delegate discretionary powers to any reorganization, protective or similar committee;

(I)  To borrow money from any party, including any Trustee hereunder, whether for the purpose of raising funds to pay taxes, to buy property, to refinance any debt, or without specific purpose, and to give or not to give security for the loan;

(J)  To hold property in the name of a nominee or unregistered or in such form that the ownership thereof will pass by delivery; and

(K)  To open and maintain bank accounts and brokerage accounts.

SEVENTH: (A)  After the Settlor's death, the Trustees shall pay to the Executors of the Settlor's estate an amount as they shall request in writing for the payment of "Death Taxes". The term "Death Taxes" as used in this Article shall mean all estate, inheritance, transfer, succession, legacy or other death taxes (excluding, however, generation-skipping transfer taxes), together with interest and penalties thereon, if any, levied or assessed by reason of the Settlor's death by any governmental authority, domestic or foreign, with respect to any property, whether that property passes under or apart from this Trust Agreement.

(B)  The Trustees of this Trust Agreement shall rely upon the foregoing written request to pay Death Taxes by the Executors of the Settlor's estate, and such payment by the Trustees of this Trust Agreement to said Executors shall be binding and conclusive upon anyone interested in this trust.

EIGHTH:  (A)  The Trustees may from time to time settle their accounts with respect to the trust by agreement with the beneficiary of the trust, and if such beneficiary is an adjudicated incompetent, with such beneficiary's legally appointed Guardian of his or her property. Such agreement shall bind all persons, whether or not then in being, then or thereafter entitled to any property of such trust, whether principal or income, and shall constitute a complete release

- 10 -

and discharge of the Trustees for the acts and proceedings so accounted for.

(B)   Nothing contained in this Article shall preclude the Trustees from seeking a judicial settlement of their accounts.

NINTH:    (A)   The Settlor directs that there shall be three Trustees serving at any time.  If at any time there are fewer than three Trustees, the Settlor directs that the remaining Trustees or Trustee shall appoint an additional Co-Trustee or Co-Trustees in the manner provided in Paragraph "(B)" of this Article.  The Settlor directs that under no circumstances shall his son LARRY or any of LARRY's descendants be appointed to serve as a Trustee.

(B)   Any instrument effecting the revocation or appointment of a Trustee pursuant to this Article shall be made by instrument in writing and shall specify the time at which, or the event or contingency upon which, each revocation is to occur and each appointee is to take office.

No appointee may take office without first signing an instrument by which the appointee accepts his or her position and agrees to carry out the terms of this Trust Agreement.  The appointee shall be deemed to take office upon signing the instrument of acceptance.

Any instrument effecting the appointment of a Trustee pursuant to this Article may be amended or revoked,

- 11 -

0092N

as to any appointee who has not taken office as Trustee, by instrument in writing signed by the person who at the time of such amendment or revocation is empowered by this Article to effect a new appointment.

TENTH:    Any Trustee at any time in office hereunder may resign, provided that a Co-Trustee is then serving or a successor Trustee has been appointed and accepted his or her appointment pursuant to Article NINTH, by mailing or delivering a written notice of resignation, signed and acknowledged, to the Settlor, or if he is not living or if he is lacking legal capacity, to each other Trustee then in office or to such successor Trustee.  Such resignation shall take effect upon the date specified in such notice, whereupon all duties of the Trustee so resigning shall cease, other than the duty to account.

Any Trustee so resigning shall take all steps necessary to effect and perfect the delivery and transfer of all property then held under this Trust Agreement to each remaining Trustee, if any, and/or each successor to the resign-ing Trustee.  No successor Trustee shall be obliged to examine the accounts, records, and acts of any previous Trustee or any allocations of receipts or disbursements as between principal and income made by any previous Trustee.

ELEVENTH: (A)  If the Settlor and any beneficiary, or any prior beneficiary and any subsequent beneficiary designated

- 12 -

0092N

in the Agreement, shall die under circumstances making it difficult or impossible to determine who predeceased the other, then, without regard to who survived the other, it shall be deemed for purposes of the Agreement that the Settlor or such prior beneficiary, as the case may be, survived and the Trustees shall continue to hold or dispose of the trust property accordingly.

(B)   Any beneficiary whose entitlement to property (whether income or principal and whether outright or in trust) depends under this Trust Agreement upon his or her surviving the occurrence of some contingency, shall be deemed not to have done so unless the beneficiary survives such contingency by at least fourteen (14) days.

TWELFTH:   (A)   All questions pertaining to the validity and construction of this Trust Agreement and to the administration of the trust, shall be determined in accordance with the laws of the State of New York in effect from time to time.

(B)   Notwithstanding the application of New York law, the actual administration of the trust may be conducted in such location, and the location of its assets may be changed, as the Trustees in their discretion may determine from time to time.

(C)   No bond or other security shall be required of any Trustee serving hereunder at any time, including any successor, any provision of law to the contrary notwithstanding.

0092N

(D)    In addition to and not in limitation of any law authorizing Trustees to act by a majority, the Settlor directs that ministerial duties of the Trustees (such as signing of checks, execution of brokerage transactions relating to securities or commodities, and the like) may be executed by any one Trustee.

(E)    All references to the "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended, and as the same may hereafter be amended from time to time.

(F)    The Settlor hereby requests that the Trustees shall retain ALAN S. LIEBMAN and the firm of Holtzmann, Wise & Shepard (or any firm with which he is associated) as attorney for "The Sam Shaw Family Trust".

(G)    No Trustee of this Trust Agreement shall be entitled to any trustee's commission.

THIRTEENTH:    To the same effect as if it were the original, anyone may rely upon a copy certified by a notary public to be a counterpart of this instrument (and of the writings, if any, endorsed thereon or attached thereto). Anyone may rely upon any statement of fact certified by any one who appears from the original document or a certified copy to be a Trustee hereunder.