☑002

1

1

2    SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:   CIVIL TERM
3    -----------------------------------------X
     EDITH SHAW MARCUS and META SHAW STEVENS,
4    as Temporary Administrators of the
     Estate of SAM SHAW,
5
                    Plaintiffs,
6                                              Index No.
              - against -                      123783/94
7
     MARTIN BRESSLER, LARRY SHAW,
8    SUSAN SHAW, BRESSLER & BRESSLER,
     VALERIE GOODMAN, 1912 PRODUCTIONS,
9    INC., MARC WEINSTEIN, individually
     and d/b/a COLOR GROUP,
10
                    Defendants.
11   -----------------------------------------X
                         80 Centre Street
12                       New York, New York 10007
                         June 5, 2002
13

14
     B E F O R E:
15
              HONORABLE MARTIN EVANS,
16                      Judicial Hearing Officer

17

18   A P P E A R A N C E S:

19           MEYER, GREENAWALT, TAUB & WILD, LLP
             Attorneys for the Plaintiffs
20           230 Park Avenue
             New York, New York 10169
21           BY:  WILLIAM GREENAWALT, ESQ.
                        -and-
22           SAUL RUDES, ESQ.
             605 Third Avenue
23           New York, New York 10158

24

25

26

             DEBRA SALZMAN, RMR, Official Court Reporter

2

1                          Proceedings

2        A P P E A R A N C E S: (Cont'd)

3                  JEFFREY P. TUNICK, ESQ.
                   Attorneys for Defendants
4                  150 Main Street
                   Nyack, New York 10960
5                       -and-
                   MICHAEL J. MARINO, ESQ.
6
                   RUBIN & SHANG
7                  Attorneys for the Plaintiff
                   9 East 40th Street
8                  New York, New York 10016
                   BY:  JEFFREY RUBIN, ESQ.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                DEBRA SALZMAN, RMR, Official Court Reporter

3

Proceedings

1     AFTERNOON SESSION

2     MR. MARINO: It is hereby stipulated and

3     agreed by and between the parties to the within action

4     and their attorneys, all of which are present, that

5     the above entitled action is hereby settled on the

6     following terms and conditions:

7     Number 1. An entity will be formed.

8     Whether that entity be a corporation, limited

9     liability partnership, joint venture, what type of

10    entity it will be will be determined by what is most

11    reasonably efficient with respect to making money, tax

12    consequences and the like.

13    The name of that entity will be the Shaw

14    Family Archives. Whether it be Shaw Family Archives

15    Inc., LLC, partnership, "Shaw Family Archives" will be

16    the primary name.

17    Larry Shaw, Meta Shaw Stevens and Edith Shaw

18    Marcus shall be principals in that entity and their

19    respective interests in that entity will be the

20    following: Larry Shaw shall own 50 percent of that

21    entity. Meta Shaw Stevens and Edith Shaw Marcus --

22    off the record.

23    (Discussion held off the record.)

24    MR. MARINO: Meta Shaw Stevens shall own 25

25    percent of that entity and Edith Shaw Marcus shall own

26

DEBRA SALZMAN, RMR, Official Court Reporter

4

1          Proceedings

2       25 percent of that entity.

3               That entity shall own and take possession

4       of, in a manner set forth below, all of the

5       photographs involved in this litigation.  That

6       includes --

7               MR. RUBIN:  Off the record.

8               (Discussion held off the record.)

9               MR. MARINO:  That includes each and every

10      photograph shot by either Sam Shaw or Larry Shaw

11      during the course of their respective careers,

12      lifetimes --

13              JHO EVANS:  Excuse me.  Wait a minute.

14              There were some photographs that were

15      claimed by both Sam and Larry Shaw, but Sam Shaw's

16      attorneys weren't aware they were taken by her but

17      owned by Columbia pictures.  If you want to dispose of

18      those photographs, they're not a party to it.

19              MR. MARINO:  Your Honor, I don't think we

20      can dispose of them via stipulation.

21              JHO EVANS:  From the point of view of the

22      stipulation you can.

23              (Discussion held off the record.)

24              MR. MARINO:  The photographs included in the

25      collection to be owned by the Shaw family foundation

26      entity include -- Shaw Family Archives entity include

DEBRA SALZMAN, RMR, Official Court Reporter

5

|    | Proceedings |
|----|-------------|
| 1  | |
| 2  | all of those photographs now in the possession -- I |
| 3  | can't do that either. |
| 4  | (Discussion held off the record.) |
| 5  | MR. MARINO:   (Continuing) All of the |
| 6  | photographs taken -- snapped by Sam Shaw and/or Larry |
| 7  | Shaw during the course of their lifetimes, together |
| 8  | with those photographs taken by third parties which |
| 9  | either of them claim as being owned by them via some |
| 10 | gift or sale from a third party, all subject to claims |
| 11 | by said third parties. |
| 12 | There shall be appointed what we have termed |
| 13 | a "superagent."  The superagent shall have two roles: |
| 14 | number one, the primary role shall be the custodian of |
| 15 | all the photographs hereinbefore mentioned.  However, |
| 16 | it is in the interest of all the parties to keep that |
| 17 | group of photographs within the possession of the |
| 18 | superagent at a minimum in order to save costs. |
| 19 | Let me go back for a minute.  The primary or |
| 20 | one of the roles of the super agent shall be to |
| 21 | warehouse and maintain all of the photographs subject |
| 22 | to a reduction in that collection pursuant to the |
| 23 | agreement of the principals: Larry, Meta and Edith. |
| 24 | The second role for the super agent is to |
| 25 | determine the commercial reasonableness of each and |
| 26 | every deal brought to the Shaw Family Archive entity. |

DEBRA SALZMAN, RMR, Official Court Reporter

6

Proceedings

Each and every deal brought to the Shaw Family entity

upon which there is not agreement between Larry, Edith

and Meta, and with respect to that their votes are 50

percent Larry, and 50 percent total for Edith and

Meta, 25 percent each.

In the event of a deadlock, 50/50 deadlock,

the super agent will determine whether or not a deal

shall go forward depending on its commercial

reasonableness.  The respective voting power is 50

percent Larry, no matter what the entity; 25 percent

Edith, 25 percent Meta.

Let me try to back up.  With respect to all

types of transactions other than outright sales of

photographs, the procedure is as follows: If the

parties agree either to do or to not do the

transaction, the super agent need not be involved.

If, however, there is a deadlock on whether

or not to do the transaction the transaction must go

to the super agent who will determine whether or not

it is commercially reasonable to do and his

determination shall be final.

However, with respect to the outright sale

of an image, photograph -- if with respect to the

outright sale of a photograph, negative or

transparency, photographic print, negative or

DEBRA SALZMAN, RMR, Official Court Reporter

7

Proceedings

transparency, again, if the parties -- withdraw that.

If any of the parties wishes not to do the transaction and even if it is a minority position, then -- withdrawn. That's not right.

MR. RUBIN: Keep going.

MR. MARINO: If it is a minority position, and the super agent makes the determination that the deal is commercially reasonable, the party, either Larry, Edith or Meta, dissenting, or parties, will have the right of first refusal to make that deal.

JHO EVANS: Off the record.

(Discussion held off the record.)

MR. MARINO: Let's back up a little bit.

In the event --

MR. RUBIN: Off the record.

(Discussion held off the record.)

MR. MARINO: Let me back up.

With respect to an outright sale as previously stated, if any of the parties -- with respect to the outright sale of a photographic print, negative or transparency, if any of the parties -- let me continue.

With respect to the outright sale of a photographic print, negative or transparency or contact sheet, which is a print, in the event of

DEBRA SALZMAN, RMR, Official Court Reporter

☑009

8

Proceedings

1
2      unanimity between the parties, the deal shall go
3      forward.

4          In the event that there is a majority in
5      favor of the deal, the dissenting party may
6      nonetheless match the deal presented within five days,
7      and if said deal is not matched by this dissenting
8      party within said five-day period the deal shall go
9      forward.

10         In the event there is a deadlock that the
11     decision as to whether or not to go forward with that
12     transaction shall be in the hands of the super agent,
13     and if the super agent makes the determination that
14     the deal should go forward because it is commercially
15     reasonable, then any of the dissenting parties to that
16     deal among the principals shall have the right, within
17     five days after the super agent makes determination,
18     to go forward to match the deal. If they cannot match
19     the deal within that said five-day period the deal
20     goes forward.

21         Now, all of the principals, Larry, Edith and
22     Meta, may act as subagents for the collection, and
23     they shall be compensated by the entity for each deal
24     that is brought to the super agent -- excuse me --
25     each deal that is brought to the entity via the super
26     agent in an amount which is commercially reasonable

DEBRA SALZMAN, RMR, Official Court Reporter

9

Proceedings

given industry standards.

To clarify, they shall be compensated an agency commission in an amount which is reasonable in accordance with industry standards for all deals brought and consummated. Said compensation upon consummation shall only be paid in the event money is received with respect to that transaction by the entity.

With respect to any monies coming in, any monies generated by the collection as described previously, all monies shall be paid directly to the entity, and any commissions or expenses as will be laid out below will all be paid by the entity after receipt of said -- off the record.

(Discussion held off the record.)

MR. MARINO: In the event any income generated by the collection is payable to anyone other -- any one or any entity other than the Shaw Family Archives, the person or entity receiving that check or money or cash shall immediately endorse it over and deliver it to the super agent on behalf of the Shaw Family Archives.

The commission paid to the subagent shall be a percentage based on the gross amount generated and collected in connection with the transaction, and such

DEBRA SALZMAN, RMR, Official Court Reporter

### Proceedings

commissions shall be paid by the entity to the agent
after said generated money is deposited and cleared in
the entity bank account.

All expenses incurred by agents, whether
they be Larry, Meta or Edith, or any other outside
agents shall be borne by the agent as the agent's cost
of doing business.

However, in the event either Larry, Meta or
Edith, or any other outside agent request that certain
expenses be borne by the entity because of
extraordinary circumstances, then if Meta, Larry and
Edith agree they will be borne by the entity.  If
there is a deadlock -- withdrawn.

A majority of the parties may agree to have
the entity bear such expenses, or a majority of the
parties may agree that the expenses should not be
borne by the entity.  In the event of a deadlock, the
super agent will determine the expenses sought to be
borne by the entity using a commercially reasonable
standard.

Any such expenses advanced by a subagent
without the prior written approval of the entity --
forget that.  Forget that.  It's assumed.

The parties herein, Larry, Meta and Edith,
shall each be entitled to a percentage of the net

11

Proceedings

1 proceeds of all income-generating transactions after

2 the payment of all reasonable and necessary expenses,

3 which shall include the agency commission, if any,

4 subagency commission, if any, and after the payment of

5 all expenses reasonable and necessary to house and

6 maintain the collection, including any and all fees,

7 reasonable and necessary fees paid to the super

8 agent.

9 JHO EVANS:  Off the record.

10 (Discussion held off the record.)

11 MR. MARINO:  Just by way of example only,

12 expenses shall include the super agent's fee, the cost

13 of housing and maintaining the collection -- by

14 "maintaining," I mean kept boxes, glassine envelopes,

15 folders, maintain -- but it shall also include the

16 administration of the entity's business affairs and

17 shall also include the scanning and inventorying of

18 all the images in the collection.

19 The net proceeds after the deduction of the

20 aforementioned expenses shall be split in the

21 following manner: 50 percent to Larry Shaw; 25 percent

22 to Meta Shaw Stevens; 25 percent to Edith Shaw

23 Marcus.

24 JHO EVANS:  Off the record.

25 (Discussion held off the record.)

DEBRA SALZMAN, RMR, Official Court Reporter

12

Proceedings

MR. MARINO: Any reference herein to the
principals' ownership of a share in the entity -- I
said that wrong. The principals of the entity shall
herein -- the next subject.

The parties, each of them individually,
Larry Shaw, Meta Shaw Stevens Edith Shaw Marcus
individually, indemnify and hold the other harmless,
including the entity, for any and all claims, losses
or liabilities incurred by any of the parties or the
entity.

Each of the individual parties agrees to
indemnify and hold harmless --

MR. RUBIN: Each of the principals of the
entity agree to indemnify and hold harmless the entity
and each other from any claims made against them for
any transaction that they conducted in relation to the
subject of the entity prior to this date.

JHO EVANS: Can you tell me what it is
you're referring to?

MR. RUBIN: What we're referring to is in
the event one of the parties had done a transaction --
off the record.

(Discussion held off the record.)

MR. RUBIN: From any claims including any
lawsuits, including but not limited to any lawsuits

DEBRA SALZMAN, RMR, Official Court Reporter

13

Proceedings

1

2 which are made against any of the principals for any

3 transaction conducted by such principals or their

4 agents, each respective principal or their agents in

5 relation to the corpus of the entity.

6 JHO EVANS: I take it that what you're

7 referring to is if any claims are made against this

8 proposed entity, whatever it is, corporation or LLC,

9 by an·    ·rd person arising out of any activities that

10 ·'            any of these three individuals who are

11             before today, those individuals will

12             ·rmless and indemnify the entity

13             ·rising out of those claims.  Is

14

15             ·ect, your Honor.

1f             ·ntity and each other.

         ·:  And the other principals.

      ·ARINO:  Individually.

      ·HO EVANS:  Indemnify each other from the
      made against them.·

      MR. MARINO:  Exactly what you said, except
the indemnity also extends to the individuals.

      ·MR. GREENAWALT:  And would also be, your
24 Honor, for acts of those parties if the parties have

25 agents and have done things in their name, then that

26 would also apply.

DEBRA SALZMAN, RMR, Official Court Reporter

☑015

14

## Proceedings

1

2          MR. MARINO:  And I am saying it has to be

3     authorized agents.

4          MR. RUBIN:  Our problem is Darius, where

5     there is a claim by Larry that he is acting without

6     authority.

7          JHO EVANS:  What you're saying is if he

8     makes any claim against the entity, Larry Shaw will

9     hold the entity harmless against them.  Is that

10    right?

11         MR. RUBIN:  That's what it should be.  We

12    didn't have any dealings with them.

13         JHO EVANS:  Is that true?

14         MR. MARINO:  That's what they are

15    suggesting.  All I'm saying is that the agent be an

16    authorized agent in order for the indemnity to take

17    effect, and then the issue of whether it was

18    authorized or not is --

19         MR. RUDES:  Just a second on that.

20         JHO EVANS:  If this fellow was not an

21    authorized agent and he makes some claim again the

22    entity, even though he was unauthorized, and suppose

23    somebody is from Australia and says they were

24    authorized by Meta Stevens to sell these photographs

25    and he wasn't, should there be an indemnity by Meta

26    Stevens against the entity?

DEBRA SALZMAN, RMR, Official Court Reporter