# Shaw Family Archives, Ltd

The official website of Sam Shaw and his photographs

Sam Shaw Photographic Collection



Sam Shaw and Marilyn Monroe - 1954

- Biography
- Americana
- Filmography
- Marilyn Monroe
- Personality Images
- Publications
- Exhibitions
- Contact Information

Copyright Shaw Family Archives. All rights reserved.



EXHIBIT "C"

**BRESSLER & BRESSLER**
ATTORNEYS AT LAW
1133 AVENUE OF THE AMERICAS
44/45TH FLOOR
NEW YORK, N.Y. 10036

(212) 768-7184

FAX (212) 840-1925

MARTIN BRESSLER
ROSALIND LUBETSKY BRESSLER

MEMBERS NEW YORK AND NEW JERSEY BARS

NEW JERSEY OFFICE
SUITE 111
ONE SUSSEX STATION
SUSSEX, N.J. 07461

(201) 702-1725
FAX (201) 702-1335

June 11, 1993

Mr. Lawrence Shaw
225 Hudson Terrace
Piermont, New York 10968

RE: Right to Commercially Exploit
Marilyn Monroe Photographs
by Sam Shaw

Dear Mr. Shaw:

You have asked our opinion as to whether Sam Shaw may commercially exploit the photographs of the late Marilyn Monroe, taken by him, free of any claim by the Estate of Marilyn Monroe, or by any agent or representative of the Estate.

As outlined below, it is our opinion that, as the law now stands, Mr. Shaw has the unfettered right to utilize such photographs in any way he wishes, free and clear of any claim by Ms. Monroe's estate or her representatives. The basis of our conclusion is as follows:

a. The Estate of Marilyn Monroe has no right of publicity in her persona.

b. The trademarks obtained in Ms. Monroe's name do not extend to photographs of her which photos may be identified as being of her.



BRESSLER & BRESSLER

Mr. Lawrence Shaw
June 11, 1993
Page 2


I.  **Rights of Publicity**

Ms. Monroe's estate was offered for probate in New York City and letters testamentary and letters of trusteeship were issued on October 30, 1962 by the Surrogate's Court of New York to the executor and trustee, Aaron R. Frosch.

The petition for probate filed with the Court on October 26, 1962 states that Ms. Monroe was "late of the City of New York".

In order for Ms. Monroe's estate to be probated in New York, it is necessary that the petition recite that the deceased was domiciled in New York.  See New York Surrogate's Court Procedure Act, Section 204; 1 Warren's Heaton on Surrogate's Courts, Section 32, par. 2(aa).  This was done.

As a New York domiciliary, the Monroe Estate is bound by the law of New York as to whether or not it has the benefit of the right of publicity.  See e.g., Factors Etc. v. Pro Arts, Inc., 652 F.2d 278, 281 (2d Cir. 1981) where the Court applied the laws of Tennessee to determine whether the Estate of Elvis Presley had posthumous rights of publicity.  It did so since Presley died a domiciliary of Tennessee.

See also, Acme Circular Operating Co., Inc. v. Kuperstock, 711 F.2d 1538, 1541 (11th Cir. 1983) in which the Federal Court utilizing the laws of California determined that the law of the state of domicile of the deceased would determine whether a right of publicity existed in such deceased.

Thus the appropriate conflicts of law rule to determine whether an estate of a deceased personality can assert a right of publicity is to look to the state of the deceased's domicile. See generally, McCarthy, Right of Publicity.  Thus, in the case of Marilyn Monroe, the laws of New York applies.

New York has no right of publicity independent of its right of privacy statute (Sec. 50, 51 New York Civil Rights Law). Stephano v. News Group Publications, 64 NY2d 182 (Court of Appeals 1984).  Since the New York right of privacy, under the Civil Rights law, terminates upon death, the right of publicity terminates as well.  See Pirone v. MacMillan, Inc., 894 F.2d 579, 586 (2nd Cir. 1990).

BRESSLER & BRESSLER

Mr. Lawrence Shaw
June 11, 1993
Page 3

Significantly, the Estate of Marilyn Monroe attempted to enforce a right of publicity in New York and failed.

In Frosch v. Grosset & Dunlap, Inc., 427 N.Y.S.2d 828 (1st Dep't. 1980) the Monroe executor claimed a right of publicity under New York law. The Court rejected the Estate's position because the right of privacy terminates upon death, and non-statutory rights of publicity have not been recognized in New York Courts.

See also, e.g., James v. Delilah Films, 12 U.S.P.2d 1387 N.Y. Co., 1989).

Since Marilyn Monroe died a domiciliary of New York, and New York law is deemed to apply to whether her estate has a right of publicity, and since New York law holds quite clearly, that the estates of its deceased domiciliaries do not have such right of publicity, then Ms. Monroe's estate cannot assert a valid claim of a right of publicity[1].

II.   Trademark Rights

The Estate of Marilyn Monroe has filed for trademark registration in her name. Its having done so does not permit the Estate to control usage of her photographs or otherwise indirectly grant the estate rights of publicity it otherwise does not have.

In Pirone v. MacMillan, Inc., supra, the Estate of Babe Ruth, and its licensing agent, Curtis Management Corp. argued that its registered trademarks in Babe Ruth, also protected the photographs of Ruth.

The Court rejected this contention saying that the commercial use of photographs of Babe Ruth are not used in a trademark sense -to indicate the source of the product - they are used as part of the product itself. This principal clearly applies to Marilyn Monroe photographs as well.

---

[1] It is to be noted, parenthetically that any claim of rights under California Civil Code Section 990 is irrelevant and invalid.

BRESSLER & BRESSLER

Mr. Lawrence Shaw
June 11, 1993
Page 4

    Once the photographs of Marilyn Monroe can be reproduced, they can be identified as being of her, notwithstanding trademark protection of her name by the Estate.

    See e.g., <u>Shaw - Time- Life Records</u>, 38 N.Y.2d 201 (N.Y. Court of Appeals, 1975)

Conclusion

    It is this writer's opinion that Sam Shaw is free to use photographs taken by him of Marilyn Monroe free of interference of the Marilyn Monroe Estate and without the necessity of its approval. It can do so because the law of New York, which is applicable to any claim of protection, does not grant a posthumous right of publicity to its domiciliaries.

    Trademark protection in the name of Marilyn Monroe does not cover photographs and the photographs can be identified as being of her since such identification is not a trademark use of her name.

    If you or any others at your suggestion, have any questions regarding the above, I will be glad to respond.

Very truly yours,

Martin Bressler

MB:nm

# IMAGE LICENSING AGREEMENT

This PRODUCTION AGREEMENT is between the following parties: Mr. Schani Krug/Valhalla Productions (heretofore known as LICENSEE), a film production company based at: PO BOX 4211 Portsmouth, NH, 04211, and Mr. Larry Shaw of Shaw Family Archives, hereto known as LICENSOR, residing at: 225 Hudson Terrace, Piermont, NY 10968.

## THE PROJECT

This Production Agreement involves the production and filming of a 2 hour biographical documentary film/video/DVD of Mr. Jim Dougherty's life story, known as "Marilyn's Man." This PROJECT will be produced by Valhalla Productions, and directed and Produced by Schani Krug. The image merchandising of said PROJECT will be known as "The Shaw Family Archives Marilyn Monroe Limited Edition Collection," and will be merchandised by Bradford Licensing.

## DISBURSEMENT OF DIVIDENDS

All parties agree to the following: VALHALLA PRODUCTIONS/LICENSEE will pay and dispense any revenues immediately to Larrry Shaw (LICENSOR) within 30 days of any profits or revenues generated by PROJECT upon receipt of any advance, monies from distributors, merchandisers, television/cable networks and publishers, and Bradford Licensing.

## FORM OF PAYMENT

All dividends from ~~or the SK~~ PROJECT will be paid in U.S. funds, unless parties agree to an amended or additional agreement or addendum to this effect. The LICENSEE will pay LICENSOR a royalty of 60 percent in U.S. funds of any Marilyn Monroe image licensed by SHAW FAMILY ARCHIVES for said PROJECT ~~after adjusted~~ gross from royalties Licensee derives from Bradford Licensing of photo images of Marilyn Monroe taken by Sam Shaw or Larry Shaw. The remaining 40 percent will go to Licensee.

*Additionally, licensee will receive 1 point in the film's gross, including all ancillary rights sk*

Page 1 of 3



## IMAGE RIGHTS

The above parties agree to allow the IMAGE RIGHTS, likeness, art rendering, and any and all images mutually selected of Marilyn Monroe, taken by Sam Shaw or Larry Shaw to be used in the PROJECT for the duration of this agreement for promotional purposes, as well as in any format (i.e., video, DVD, CD, advertisement, audio cassette, etc.), as well as market and media, and merchandising of said images by Valhalla Productions throught their merchandising agent, Bradford Licensing, during the interim of the COPYRIGHT of said PROJECT.

## DURATION OF AGREEMENT

The duration of this PRODUCTION AGREEMENT extends from the signing of this agreement by all parties, through the final day of the life of the U.S. COPYRIGHT of said PROJECT, as per the laws of the United States Copyright Office.

## BINDING EFFECT

This AGREEMENT shall be binding on and insure to the benefit of the respective parties, their heirs, successors, administrators, executors and assigns. In the event of the death of any of the above-mentioned parties, his or her executors will honor the terms and conditions of this agreement in full.

## FORMAT OF IMAGES

LICENSOR will suppy to LICENSEE high resolution scans of said images of Marilyn Monroe suitable for reproduction from the Shaw Family Archives.

## ENTIRE AGREEMENT

This PRODUCTION AGREEMENT constitutes the entire agreement between all parties, and may be modified only in writing signed and agreed to by all parties. This PRODUCTION AGREEMENT may be signed in counterparts, each of which shall be deemed an original, but which together shall constitute one PRODUCTION AGREEMENT. If any provision of this PRODUCTION AGREEMENT is determined by a court of competent jurisdiction to be enforceable, the remaining provisions shall continue in full force and effect. If any disputes arise between the parties they must notify each other in writing by certified mail within 30 days of this dispute, outlining these disputes and any possible resolutions thereof.



Page 2 of 3

SIGNED AND AGREED TO BY ALL PARTIES    DATE: February 14, 2004

BY: VALHALLA PRODUCTIONS/MR. SCHANI KRUG

BY: Schani Krug (LICENSEE)    _Schani Krug_

BY:
MR. LARRY SHAW/SHAW FAMILY ARCHIVES
BY: Mr. Larry Shaw    (LICENSOR)    _Larry Shaw_

Page 3 of 3

Personal Items

Search Shortcuts

My Photos

My Attachments


What's your credit score $0


Earn a degree in 1 yr.


Mortgage rates low as 4.625%*


Can't quit? Get a degree online

Larry Shaw
www.spc-promotions.com

----- Original Message -----
**From:** Kitty Monte Alto
**To:** Larry Shaw
**Sent:** Thursday, November 23, 2006 11:21 AM
**Subject:** Marilyn & Friends Exhibit

Dear Larry,

Mark Roesler spent some days here at the office in Rio, when discussed the projects in development. He said we could not continue to work on the Marilyn & Friends Exhibit in Brazil.

With regards,

Kitty Monte Alto
Vice President / Director of
International Operations

http://us.f300.mail.yahoo.com/ym/ShowLetter?MsgId=3420_47738615_7814_1708_218...   11/27/2006

EXHIBIT "F"

Yahoo! Mail - dmmlitigates@yahoo.com

Page 2 of 2

CMG Worldwide
kitty@CMGWorldwide.com

Praia de Botafogo, 228 / 1111
Rio de Janeiro - RJ - Brasil
Tel: 55.21.25548960
Fax: 55.21.25547350
Cel: 55.21.88111111

Delete | Reply ▼ | Forward ▼ | Spam | Move... ▼

Previous | Next | Back to Messages           Save Message Text | Full Headers

Check Mail | Compose          Search Mail | Search the Web

Copyright © 1994-2006 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines - Ad Feedback
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

http://us.f300.mail.yahoo.com/ym/ShowLetter?MsgId=3420_47738615_7814_1708_218...   11/27/2006

11/23/2006  18:28  8453593176                                           PAGE 01

**SHAW FAMILY ARCHIVES, LTD.**
225 Hudson Terrace
Piermont, New York 10968

Tel: 845-359-9528
Fax: 845-359-3176
e-mail: larry@spc-promotions.com

September 22, 2003

CMZ Handbags and Jewelry
1028 A Santee St.
Los Angeles, Ca 90015

Dear Alan:

It has come to my attention that your company is manufacturing and marketing a really nice handbag utilizing a photograph of Marilyn Monroe wearing a white sweater with amber beads around her neck.

Please be advised that this photograph was taken by my father, Sam Shaw, and is copyrighted and registered with the Copyright Office Library of Congress.

I am sure that you did not know such was the case. But it is. It appears, that like it or not, we are destined to be in business together. Alan, I hope you have a sense of humor. I have just spoken with a charming employee of yours, Bano Nusiat, I hope I have her name right.

In any event as long as you are using this photograph we should make this a legal arrangement satisfactory to both parties. I would like to speak with you regarding a formal licensing agreement that would be satisfactory to your company and my company.

Please look at our website it will give you an idea of some of the personalities we have in our archive, all photographs of which were taken either by my father Sam Shaw or myself.

Please get back to me as soon as possible.

Sincerely,

Larry Shaw
Shaw Family Archives, Ltd.
www.spc-promotions.com

EXHIBIT "G"