UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SHAW FAMILY ARCHIVES, LTD., BRADFORD
LICENSING, INC., JAMES E. DOUGHERTY,
and VALHALLA PRODUCTIONS, LLC.

                05 CV 3939 (CM)

      Plaintiffs/Consolidated Deendants,

                **Honorable Colleen McMahon**

    -against-

CMG WORLDWIDE, INC.,
and MARILYN MONROE, LLC,,

      Defendants/Consolidated Plaintiffs
------------------------------------------------------------------x

### DECLARATION OF META STEVENS IN SUPPORT SFA AND BRADFORD'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO MMLLC'S MOTION FOR SUMMARY JUDGMENT.

                Marcus & Greben
                1650 Broadway
                Suite 707
                New York, NY 10019
                Tel: 646-536-7602
                Fax: 212-765-2210

                Attorneys for Plaintiff/Consolidated Defendant SFA, Plaintiff Edith Marcus and Meta Stevens and Consolidated Defendant Bradford Licensing, Inc.

I, META STEVENS, declare as follows:

1. I am over the eighteen years of age and am fully competent to make this Declaration. The facts contained herein are stated upon my personal knowledge.

2. I am currently one of three shareholders and owners of the Shaw Family Archives, Ltd. ("SFA"). I have held this position since the creation of SFA on June 19, 2002. The remaining shareholders/owners of SFA are my sister, Meta Stevens, and my brother, Larry Shaw.

3. Prior to the creation of SFA, Edith Marcus and I communicated with Mark Roesler, the president of CMG Worldwide, Inc. ("CMG"). I first contacted Mark Roesler in 1999, just after my father, Sam Shaw, died. I set up a meeting with Mr.Roesler, with Edith Marcus, her husband, my husband and myself. We discussed the Sam Shaw collection and the possibility of CMG representing this collection and suggested creating a proposal to bring to Larry Shaw to work towards a settlement in a family lawsuit.[1] The meeting was held in 1999. At the meeting, Mr. Roesler requested that we call his attorney in Indiana, Jonathan Farber. I first called Mr. Farber in June of 1999 to discuss the above proposals. Over the next several years, Mark Roesler and I had numerous telephone conversations, both business and personal. Mark and I had an open dialogue and I became the Shaw family's liaison with Mr. Roesler. I told him about the death of my son-in-law and he shared with me the death of his sister. It was clear, at least on my end, that we were developing a friendship. If feel that if Mr. Roesler had a problem with any of the business activities of SFA, he surely would not have hesitated to call me.

---

[1] In 1994, my father commenced an action rrelating to the ownership of photographs taken by Sam Shaw and Larry Shaw (the "photographs").

4. In 2002, I called Mark Roesler and told him that the case was settled. He told me he was very happy and that he wanted to come look at the entire collection. Although he never made it to look at the collection at that time, he remained interested in having his company represent Sam Shaw's photographic collection. These communications did not relate to the transactions at issue in this lawsuit or the Indiana action. Moreover, no contractual relationship developed from these communications.

5. Plaintiffs have made no effort to serve, directly or indirectly, the Indiana market for its services. Indeed, SFA has specifically structured its business activities to avoid conducting business in Indiana.

6. SFA merely licenses to others the right to re-produce the copyrighted images taken by Sam Shaw, SFA is not in the business of creating or selling any merchandise other than prints.

7. My attorney has informed me that defendants' claim that SFA violated Indiana Right of Publicity Law §32-36-1, et seq., is without merit and that essentially no discovery has occurred. My attorney has informed me that the basis for the instant Motion for Partial Summary Judgment was the sale of a single t-shirt bearing a Marilyn Monroe image in a Target Store in Indiana. Defendants claim in this regard is completely incorrect. SFA does not create, license or sell any merchandise containing the images of Marilyn Monroe. SFA merely licenses to others the right to use images controlled by SFA.

8. It should also be noted that Larry Shaw, Edith Marcus and I are all individuals of very modest means. SFA has not yet had a profitable year and continues to struggle today. I believe that SFA's financial difficulties, as well as the related financial burden

that has been shouldered by SFA's shareholders, is a direct result of the improper behavior of defendants.

9. MMLLC, conversely, makes millions of dollars per year, in part, from the blood sweat and tears of my father, and the work of other photographers who also befriended and photographed Marilyn Monroe. We believe that MMLLC, rather than relying on actual law, is using its superior financial position to attack the families of Marilyn's photographers to protect and/or create a right it never had.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 24th day of November, 2006, at New York, New York.

_____
META STEVENS