# Exhibit 4

SUPREME COURT OF THE STATE OF [illegible]
COUNTY OF [illegible]

[illegible]

[illegible]

NOV 18

[illegible]

MEMORANDUM IN SUPPORT OF [illegible]
MAILER'S [illegible]
FOR [illegible]
AND/OR [illegible]

[illegible]

October [illegible]

Introduction

This [illegible] failure to state a cause of action [illegible] judgment. The [illegible] estate of [illegible] the publisher (Grosset & Dunlap, Inc.) [illegible] in the publication of a biography of Miss Monroe [illegible] entitled Marilyn, was published more than ten years after Miss Monroe's death. The [illegible] claims that the publication of this biography [illegible] Monroe's name and likeness [illegible].

The extraordinary claim [illegible] in this case -- namely, that the biography of a [illegible] violates some right belonging to her [illegible] -- is far-reaching, to say the least. If such a claim were sustained, there could be no biographies [illegible] objective biographies (for only biographies authorized by the subjects thereof could be published). Our newspapers and newsmagazines would also have to close their doors, for the heart of any newspaper or newsmagazine is the report of the statements and actions of such public figures, accompanied by their photographs.

Common sense tells us that such a notion is absurd on its face. And in this area, common sense and legal principles fully coincide. As discussed below, the law is quite clear that neither a "right of publicity" nor any other right gives a public figure or his [illegible] any claim against publication of such biographical material. Before considering further the specific claims made in this case, it may be helpful to review briefly the nature of the "right of publicity" relied upon by plaintiff and the law of privacy from which it derives.

A relatively new concept in the law, the right of privacy has developed slowly since the appearance in 1890 of a law review article by Samuel D. Warren and Louis D. Brandeis urging the recognition of such a right. See Warren & Brandeis, "The Right to Privacy," 4 Harv. L. Rev. [illegible] (1890). A right of privacy is now recognized, to some degree at least, by nearly all of the states. Prosser, Law of Torts § 117, at 904 (4th ed. 1971).

In fact, the phrase "invasion of privacy" covers four separate though somewhat related torts, which Dean Prosser has labelled "intrusion," "public disclosure of private facts," "false light in the public eye" and "appropriation." Prosser's categorization and description of these four torts have been

[illegible]

[illegible] Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. [illegible] (1977); Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831 (6th Cir. 1983); Nader v. General Motors Corp., [illegible] (1st Dept. 1969), aff'd 25 N.Y.2d 560 (1970).

"Intrusion," the first of these torts, is concerned with unwanted invasion of an individual's physical solitude or seclusion -- eg., intrusion of the home, peeping, or [illegible] wire-tapping. Prosser, supra, at 807-808. The second tort, "public disclosure of private facts," consists of the publication, in a "highly objectionable" way, of private information about an individual, causing him emotional distress. Id. at 809. The third tort, "false light in the public eye," involves the publication of fictionalized accounts of an individual's life. The "false light" tort is thus a close cousin of the tort of defamation. See id. at 813. The last tort, "appropriation," consists of another's use of an individual's name or likeness for advertising or other commercial purposes. Id. at 804.

"Appropriation" thus differs fundamentally from the other privacy torts in that it is not primarily concerned with plaintiff's feelings -- or, indeed, with his "privacy" in

> [illegible] ordinary sense [illegible] rather than being any ordinary [illegible] of feelings, is an individual's interest in the commercial value of his name and likeness. [illegible] exclusive right in the individual plaintiff, a species of trade name, his own, [illegible]. Id. at 807.

This [illegible] labelled 'appropriation' by Prosser, which others have sometimes referred to as the "right to publicity."

> This fourth type, appropriation of plaintiff's name and likeness for defendant's benefit, has [illegible] the label "right of publicity." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 220 (2d Cir. 1978); and see Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562 (1977).

In New York, the right of privacy is a statutory right, set forth in sections 50 and 51 of the Civil Rights Law. A number of federal courts have concluded that there is also a common-law "right of publicity" in New York. That conclusion was first reached by the Second Circuit in Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866 (2d Cir.), cert. denied, 346 U.S. 816 (1953), and has been followed in subsequent federal court decisions.

The conclusion in these federal decisions that there is a common-law right of publicity in New York is, we believe,

a misnomer. The New York privacy statute was enacted precisely because the New York Court of Appeals had held that an individual had no common-law right against the commercial use of his name or likeness. Roberson v. Rochester Folding Box Co., 171 N.Y. 538 (1902). There is no reason to believe that the Court of Appeals would overrule Roberson and recognize such a common-law right merely because a new name is now given to it. See Paulsen v. Personality Posters, 59 Misc. 2d [illegible] (Sup. Ct. N.Y. [illegible]); [illegible] Lombardo v. Doyle, Dane & Bernbach, Inc., [illegible] App. Div. 2d [illegible] ([illegible] Dept. 1977). However, for the purposes of this motion (and only for the purposes of this motion), it will be assumed that a common-law right of publicity would be recognized in New York.

The primary significance of such a common-law right of publicity -- and the only reason why it was necessary to reach the question of a common-law right in the Topps Chewing Gum case and the subsequent federal cases -- is that the statutory right is purely personal right. It cannot be assigned (Rosemont Enterprises, Inc. v. Urban Systems, Inc., 72 Misc. 2d 788 (Sup. Ct. N.Y. Cty. 1973)) and it does not survive the death of the individual whose name or likeness is used (Schumann v. Loew's Inc., 135 N.Y.S.2d 361 (Sup. Ct.

[illegible] The purported common-law right of publicity, recognized in the federal cases, is descendible and may be devisable at least in certain circumstances. See Factors Etc. Inc. v. Pro Arts, Inc., [illegible] (2d Cir. 1978); Price v. Hal Roach Studios, Inc., [illegible] (S.D.N.Y. 1975).

But even if such a common-law right of publicity exists in New York and is descendible, it cannot and does not preclude the publication of a biography such as the book involved in this case. As will be demonstrated in detail below, this principle is well established and fully disposes of plaintiff's claim.

POINT II. THE RIGHT OF PUBLICITY IS INAPPLICABLE TO BIOGRAPHIES AND OTHER PUBLICATIONS OF PUBLIC INTEREST.

Paragraph 6 of the Complaint describes the right allegedly infringed as merely the "right of publicity." (A copy of the Complaint is Exhibit A to the Curtis moving affidavit.) It contains no reference to any infringement of the statutory right of privacy. This is understandable since, as noted above, any such right of privacy was personal to Marilyn Monroe and terminated upon her death. By contrast, Response No. 4 in plaintiff's Bill of Particulars (Exhibit C to the Curtis affidavit) refers to both the federal cases

recognizing [illegible]

[illegible]

New York will [illegible]

if Miss Monroe were [illegible]

has any application [illegible]

on a matter of public [illegible]

Both the [illegible] right of privacy [illegible] sections 50 and 51 of the New York Civil Rights Law [illegible] common-law right of publicity recognized by the federal courts are limited by the [illegible] dissemination of information relating to matters of public interest. This public policy is of constitutional dimensions.

---

*Plaintiff's Bill of Particulars also refers to section 52 of the Civil Rights Law. We presume that this is a typographical error, since section 52 has no possible relation to the subject matter of this action.

**We are concerned here with the right against commercial appropriation of name and likeness which Prosser called "appropriation" and others, more recently, have referred to as "the right of publicity." As noted above, this is only one of four torts falling under the "privacy" rubric. If Miss Monroe were still alive and if a purposely fictionalized biography of her were published, that would be actionable under the "false light" tort recognized as part of the law of privacy. But that is not the situation here. See Point II infra.

[illegible] dissemination [illegible] would be [illegible] United States Constitution. See, e.g., [illegible] (1957); Paulsen [illegible] (Sup. [illegible] public [illegible] and [illegible] recognized [illegible] Constitutional considerations. The court [illegible] such [illegible] only when [illegible] has been used for advertising or other [illegible] purposes.

[illegible] the same [illegible] Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., supra [illegible] to recognize an actionable [illegible] Judge Dimock observed in Chaplin v. NBC, 15 F.R.D. [illegible] (S.D.N.Y. 1953):

> The same requirement of commercial use which limits the New York right of privacy inheres in [illegible] publicity. It is not every public use of a prominent person's name that he has a right to exploit financially. It is the unauthorized use in connection with the sale of a commodity or for advertising purposes which the Topps Chewing Gum case recognizes as an actionable wrong under New York law. (Emphasis added).

The language of the Chaplin decision has been echoed by numerous New York courts. In Rosemont Enterprises v. Random House, 58 Misc. 2d 1, 5 (Sup. Ct. N.Y. Cty. 1968), aff'd

[illegible]

[illegible]

is the unauthorized use of [illegible] in connection with a commodity or advertising [illegible] is recognized as an actionable wrong under New York [illegible] (Supp. [illegible]), originally [illegible] expressing [illegible] the existence of any common law right [illegible] in New York [illegible] court in [illegible] v. [illegible], [illegible] 450-51 (Sup. Ct. N.Y. Co. 1968), [illegible] stated:

> "Moreover, even where the right of publicity [illegible] as the right of a prominent person [illegible] to exploit financially every public use of name or picture, what is made actionable is the unauthorized use for advertising purposes in connection with the sale of a commodity. [illegible] The right of publicity, therefore, like the right of privacy, is at best a limited one, within the context of an advertising use, and would be held to have no application when the use of name or picture is in connection with a matter of public interest. That such use is constitutionally protected and must supersede any private pecuniary considerations is conceded even by those who urge more widespread recognition of a distinct property right of publicity."

Specifically on the subject of biography, it has long been held, even as to living persons, that publication of biographical and other factual information about public figures or other matters of public interest is outside the ambit of the right of privacy. Sidis v. F-R Publishing Corp., 113 F.2d 806 (2d Cir. 1940); Youssoupoff v. Columbia Broadcasting

[illegible] Random House, [illegible] common-law right of [illegible] publicity [illegible] Rosemont Enterprises, Inc. v. Random House, [illegible] without [illegible] Howard Hughes [illegible] the publication of an unauthorized biography on the grounds that [illegible] violated Hughes' statutory right of privacy and his "right of publicity." The court dismissed the complaint in its entirety:

> The publication of a biography is clearly outside the ambit of the "commercial use" contemplated by the "right of publicity" and such right can have no application to the publication of factual material which is constitutionally protected. Just as a public figure's "right of privacy" must yield to the public interest so too must the "right of publicity" bow where such conflicts with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest. Because of such considerations, a public figure can have no exclusive rights to his own life story, and others need no consent or permission of the subject to write a biography of a celebrity. *Id.* at [illegible]-7 (emphasis added).

Plaintiff is not unaware, of course, of the weight of law against him and seeks to evade its application by what can only be described as an exercise in semantics. The book *Marilyn*, according to the Complaint (¶¶ 8-9), is not a book at

[illegible]

Court of Appeals has held:

> "The law is settled that a picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute *** unless it has no real relationship to the article *** or unless the article is an advertisement in disguise." Murray v. New York Magazine Co., 27 N.Y.2d [illegible] (1971).

The Murray case, in which the Court of Appeals reversed the lower court's denial of summary judgment, involved a photograph whose relationship to the story being told was far more tenuous than the photographs here. In