[illegible]

[illegible] Dept. 1937) (picture on book cover); [illegible] Hillman Periodicals, [illegible] App. Div. [illegible] (1st Dept. 1953) (picture on magazine back cover); Sarat Lahiri v. Daily Mirror, 162 Misc. 776 (Sup. Ct. N.Y. Cty. 1937) (picture illustrating newspaper article).

[illegible] Rand [illegible] contrary [illegible] publication [illegible] [illegible] [illegible] [illegible] [illegible] example, in [illegible] v. Friede [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] effort [illegible] the [illegible] See also [illegible] v. [illegible], Inc., [illegible] Misc. [illegible] (Sup. Ct. Kings Co. [illegible]), [illegible] App. Div. [illegible] (2d Dep't 1951), aff'd [illegible] N.Y. [illegible]. The present case is plainly a fortiori [illegible]. There can be no question that photographs of Miss [illegible] have a legitimate and important place in her biography.

Indeed, even if there were little or no textual matter, the book would still not violate any rights of plaintiff. It is entirely permissible to portray a public

[illegible] a private person involved in some [illegible] of public [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] (Murray v. New York Magazine Co., 27 N.Y. 2d 406 (1971) (magazine cover); [illegible] v. [illegible] Publications, Inc., 22 App. Div. 2d 610 (1st Dept. 1965) ([illegible] story); Pagan v. New York Herald Tribune, 32 App. Div. 2d 341 (1st Dept. 1969) (fashion photographs in magazine supplement); Paulsen v. Personality Posters, 59 Misc. 2d 444 (Sup. Ct. N.Y. Cty 1968) (poster)).

Equally irrelevant are plaintiff's allegations that Marilyn, in addition to containing photographs, "...was not intended to, and did not dispassionately disseminate news and information of public interest..." (Complaint ¶11) and was designed to create "a nostalgic media-image of the

[illegible]

[illegible]

[illegible]

[illegible] constitutional [illegible] [illegible]

[illegible]

[illegible]

The [illegible] Supreme Court has observed in a libel context, cases such as this one must be considered "...against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. Id." New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). "[D]ebate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred...." Garrison v. Louisiana, 379 U.S. 64, 73 (1964).

190

[illegible]

[illegible] whether the [illegible] significant [illegible] presidential [illegible] representation [illegible] number of [illegible] to a matter [illegible] expression which is constitutionally protected and deserving of substantial freedom. [illegible] University of Notre Dame v. 20th Century Fox, 22 [illegible] supra.) [illegible] v. [illegible] Misc. 2d 444, 450 (Sup. Ct. N.Y. [illegible] 1968). [illegible]

[illegible]

[illegible] right [illegible] right [illegible]

[illegible] that [illegible] The [illegible]

[illegible] appears at the [illegible] [illegible] as follows:

[illegible] accurate biographical portrayal [illegible], the said book was intentionally designed and executed by the defendants [illegible] image of the decedent [illegible] maximum commercial exploitation of the [illegible] property right in the decedent's publicity possessed by the decedent and her estate."

It will be noted that the paragraph involves a complete non sequitur. There is no inconsistency between factual accuracy and commercial goals. Moreover, this vague and half-hearted suggestion that the book might be totally accurate --

---

*By pointing out this distinction, we do not of course concede that even the right of publicity survives death. The question has been much debated and we believe that, at least on the facts of this case, no right of publicity survived Marilyn Monroe's death. However, it is unnecessary to reach that question since for the reasons set forth above, this action must be dismissed even if a right of publicity did survive Miss Monroe's death.

[illegible] these inaccuracies, [illegible] substantial fictionalization. See Rosemont Enterprises v. Random House, [illegible] aff'd without opinion, [illegible] (1st Dept. [illegible]); Estate of Hemingway v. Random House, Inc., [illegible] (1968).

Nor would a [illegible] fictionalization be sufficient. As noted above, [illegible] (and Marilyn Monroe was certainly a public figure, see paragraph [illegible] of the Complaint), can recover only if it is proved that defendants acted with knowledge of [illegible] falsity or with reckless disregard of its truth or falsity. Time, Inc. v. Hill, 385 U.S. 374 (1967). There is no such allegation here and, in the absence of such allegation, the Complaint is insufficient to the extent it purports to rest upon fictionalization. Cahill v. Community Newspapers, [illegible] Misc. 2d 574 (Sup. Ct. Nass. Co.), aff'd 27 App. Div. 2d 543 (2d Dept. 1966).

Moreover, if the Complaint suggests that plaintiff was considering a claim that Miss Monroe's life had been fictionalized, he plainly abandoned that claim in the course of this litigation. Plaintiff has conceded that he cannot show such fictionalization and admitted that such fictionalization,

-22-

98

[illegible] particulars, [illegible] the said [illegible] portrayal [illegible] answer (Exhibit [illegible] inaccuracies [illegible] statement [illegible] pictorial [illegible] follows:

"[illegible] who has [illegible] work of other feature writers and [illegible] a book with [illegible] (to join the hungry ranks of those who coin a word), that is, facts which have no existence [illegible] magazine or newspaper, [illegible] which are not [illegible] manipulate emotion in the Silent Majority."

[illegible] of page [illegible]

[illegible] the book contains instead the following:

"[illegible] published show [illegible] conventional approach. The first [illegible] Marilyn Monroe, written [illegible] she was [illegible] filled with interesting psychoanalytical [illegible] the sort one can hear [illegible] New York [illegible] two intelligent people are [illegible] but his material is teamed with overs[illegible]sed and hollow anecdotes, untrustworthy by the very style of their prose, a feature writer [illegible] the old dishes of other feature writers, and so a book which has fewer facts than factoids (to join the hungry ranks of those who coin a word), that is, facts which have no existence before appearing in a magazine or newspaper, creations which are not so much lies as a product to manipulate emotion in the Silent Majority." (emphasis added)

Case 1:06-cv-02619-CM Document 25-8 Filed 12/22/2006 Page 12 of 14

[illegible]

[illegible]

[illegible]

[illegible]

MR. BARRY SINGER (plaintiff's counsel): I would object [illegible]

MR. CURTIS (Kaiser's counsel): May we ask the basis [illegible]

MR. BARRY SINGER: The basis of my objection is that it is irrelevant. It is the same basis for the objection that I made to an interrogatory which asks substantially the same thing.

Following further discussion among counsel, the point was repeated (transcript page 25):

MR. CURTIS: I think you (referring to plaintiff's counsel, Barry Singer) said it was irrelevant. Are you

100

[illegible] any inaccuracies [illegible] that any such [illegible] complaint [illegible] process, the [illegible] is quite distinct from [illegible] against [illegible] may have [illegible] her death [illegible] cannot [illegible] twenty years later.

CONCLUSION

[illegible] all of the foregoing reasons, defendant Norman Mailer's motion to dismiss and/or for summary judgment should be granted. This action is plainly without merit and should not further burden the parties and this Court.

Dated: New York, New York
October 3, 1978

Respectfully submitted,
Rembar & Curtis
Attorneys for defendant
Norman Mailer
19 West 44th Street
New York, New York
(212) 575-2500

State of New York )
County of New York )

[illegible], being duly sworn, deposes and says: [illegible] years [illegible] resides at [illegible] Street, Apartment [illegible], New York, New York 100[illegible]. On October [illegible], 197[illegible] deponent served the within memorandum upon the following attorneys [illegible] herein, by [illegible] a true copy of same [illegible] addressed [illegible] depository under the exclusive care and custody of [illegible]

[illegible]
Attorneys for [illegible]
[illegible]
New York, New York [illegible]

[illegible]
Attorneys for [illegible]
[illegible] Street
New York, N.Y. [illegible]

[illegible]

Sworn to before me this
[illegible] day of October, 197[illegible]

[illegible]
Notary Public, State of New York
No. [illegible]
Qualified in [illegible] County
Commission Expires March 30, 1980