# Exhibit 5

12

DECISION OF GREENFIELD, J.

(pp. 12-15)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : SPECIAL TERM, PART I

- - - - - - - - - - - - - - - -x

(Same Title)                           #48 Nov. 9, 1978

- - - - - - - - - - - - - - - -x

Greenfield, J.:

Plaintiff, the Executor of the Estate of Marilyn Monroe, commenced this action to recover damages for invasion of the publicity rights of Marilyn Monroe. The gravamen of plaintiff's claim in that a book written by defendant Norman Mailer entitled "Marilyn" is not a biography, but rather a product put together for sale and profit in book form to effect a conversion and wrongful exploitation and appropriation of the rights of publicity possessed by decedent and now her estate.

Before the court is a motion by defendant Norman Mailer to dismiss the complaint for failure to state a cause of action pursuant to CPLR 3211(a)(7) or alternatively for summary judgment and cross-motions by defendants Alskog, Inc. and Lawrence Schiller and Grosset & Dunlap, Inc., respectively, seeking the same relief. There is no question that during her lifetime Marilyn Monroe was a public person, and that

she could have made money by using her name to sell or endorse a product. However, the right of publicity does not prohibit a person from writing a biography, and defendant Mailer's book is not converted from a biography to "merchandise" merely because it contains a lot of pictures or because plaintiff might view some of the written material as sensational or sexually oriented.

It is clear that the biographical form is protected by the first amendment (Spahn v. Julian Nessner, Inc., 18 NY 2d 324), and that a biography does not constitute an invasion of the right of publicity (or the right of privacy) of a public figure. It must be recognized that because Marilyn Monroe was a public figure and a celebrity, she had no exclusive rights to her life story. As noted above, a biographer could write a book about her without first obtaining her consent (Rosemont Enterprises, Inc., v. Random House, 58 Misc 2d 1, aff'd 32 AD 2d 892).

Free speech and a free press is not limited to political expression or to comment on public affairs. "Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period" (Thornhill v.

Accordingly, as a matter of law, the claim of wrongful exploitation of the decedent's publicity rights is barred by the first amendment.

In an attempt to survive the instant motion, plaintiff, in opposition to the motion, alleges that the book is a fictionalized text concerning an imaginary person, although the bill of particulars specifically states that the book was a dramatized, sensationalized and fictionalized account of Marilyn Monroe's life, and with respect to the manner in which the book was not factual, contends that the book is fact, embellished with "factoids", i.e. facts which had no existence prior to their appearance in the book. Although, as plaintiff contends, when biography departs from facts and becomes a work of fiction exploiting the name of a well-known person there is an actionable breach of privacy, (See Spahn v. Julian Messner, Inc., supra) any such claim does not survive death, as it is based on injuries to feeling, emotion, and personal pride, as to which "death is a logical conclusion." Factors, etc., Inc., v. Pro Arts, Inc., 579 F.2d 215, 221-222 (2d Cir. 1978).

Although the book may contain imaginary dialogue, this fact does not tip the scales in favor of plaintiff. Unlike

15

[...] or the [...] of Hicks v. Casablanca [...] (76 Civ. 5399, Sept. 14, 1978) where a few scant biographical facts were mere appendages to an essentially fictional account. In the case at bar, other than a few fictionalized conversations, the book is clearly an account of Marilyn Monroe's life and the author's observations thereon are privileged as a "fair comment." Moreover, even in Hicks, after a detailed analysis a New York law, the court held that the right of publicity was not violated by a fictionalized account of the life of a public figure.

Accordingly, summary judgment is granted in favor of the moving defendants.

Settle order.


Dated:  January 29, 1979

                                    s/  E.J.S.
                                        J.S.C.