by law, notice of any adjourned meeting of the Members need not be given if the time and place thereof are announced at the meeting at which the adjournment is taken.

      **Section 6.5 Waiver of Notice.** When any notice is required to be given to any Member, a waiver thereof in writing signed by or on behalf of the Member entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

      **Section 6.6 Quorum.** The Members who own a majority in interest of all the Members, present in person or by proxy, shall constitute a quorum for the transaction of business at any meeting of the Members or any adjournment thereof. In the absence of a quorum at any meeting or any adjournment thereof, any Member may adjourn such meeting from time to time. At any such adjourned meeting at which a quorum is present any business may be transacted which might have been transacted at the meeting as originally called.

      **Section 6.7 Voting.**

      (a)      Each Member shall, at each meeting of the Members, be entitled to vote in person or by proxy the percentage interest of the interests of the Company owned by such Member as of the date of such meeting on the matter in question. At any meeting of the Members of the Company, except as provided in the Certificate of Formation of the Company, this Agreement or the Act, all matters shall be approved by a majority in interest of the Members voting as a single class. The vote at any meeting of the Members on any question need not be by ballot, unless so directed by the chairman of the meeting. On a vote by ballot each ballot shall be signed by the Member voting, or by its proxy if there be such proxy, and it shall state the percentage interest voted.

      (b)      Any such voting rights may be exercised by the Member in person or by proxy appointed by an instrument in writing, subscribed by such Member or its attorney thereunder authorized and delivered to the secretary of the meeting; provided, however, that no proxy shall be voted or acted upon after three (3) years from its date unless said proxy shall provide for a longer period. The attendance at any meeting of a Member who may theretofore have given a proxy shall have the effect of revoking the same with respect to such meeting.

      **Section 6.8 Action Without Meeting.** Any action required to be taken or which may be taken at any meeting of Members of the Company may be taken without a meeting and with prior notice given not less than ten (10) nor more than sixty (60) days before the action is taken to each Member of record entitled to vote at a meeting in accordance with the provisions of Section 6.4 (unless such notice is waived in writing by all of the Members), if a consent in writing, setting forth the action so taken, shall be signed by the Members having not less than a majority in interest (or if the action to be taken requires a different specified percentage or other vote, such specified percentage or such other vote) that would be necessary to authorize or take such action at a meeting at which a quorum were present.

      **Section 6.9 Manager to Preside at Meetings.** Each meeting of Members shall be conducted by the Manager or by such other person that the Manager specifies or, if the Manager fails to do so, that a majority in interest of the Members present in person or by proxy specifies.

## ARTICLE VII

## DISSOLUTION

**Section 7.1  Events of Dissolution.**  Upon the occurrence of any of the following events, the Company shall be dissolved:

(a)    By the election of the Manager to dissolve the Company after thirty (30) days prior written notice to the Members; or

(b)    By the election of Members holding a majority in interest in the Company to dissolve the Company in a written notice to all other Members by certified or registered mail or by personal delivery.

**Section 7.2  Right to Continue Business.**  In the event of the death, insanity, incompetency or removal of a Member, the business of the Company shall continue unless a majority in interest of all Members determine to dissolve the Company.

**Section 7.3  Winding Up.**  Upon dissolution of the Company, unless all Members otherwise agree, the Manager, or if there is no Manager then acting, one (1) or more persons designated by the Members to do so, shall wind up the affairs of the Company and settle accounts between the Members in the following manner:

(a)    Such of the assets other than cash, as the Manager determines, shall be sold.  All Members shall have the right to bid on and purchase any or all of the assets being sold;

(b)    All of the debts and obligations of the Company other than secured obligations without recourse to the assets and credit of the Company, if any, shall be paid in full or otherwise provided for;

(c)    If the fair market value of any Company asset is more or less than its book value, each Member's capital account shall be adjusted by such Member's allocable share (determined as provided in Section 4.2) of the net unrealized gain or loss which would have been realized had said asset been sold at its fair market value;

(d)    All funds on hand after the foregoing shall be paid and all unsold assets shall be distributed among the Members such that money and/or assets having a value equal to the remaining balance in each Member's capital account shall be distributed to each said Member by the end of the taxable year in which the liquidation occurs (or, if later, within ninety (90) days after the date of such liquidation).

**Section 7.4  Publication of Notice.**  In the event of dissolution of the Company or the continuation of the business of the Company pursuant to Section 7.2, the remaining Members shall cause to be prepared, published, filed and served all notices and certificates required by law.

**Section 7.5  No Obligation to Restore Deficit Capital Account Balance.**  If any Member has a deficit in his capital account, that Member shall have no obligation to contribute cash to the Company to restore such deficit.

# ARTICLE VIII

## INDEMNIFICATION

**Section 8.1  Right to Indemnification.**  Subject to the limitations and conditions as provided in this Article VIII, each person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative (hereinafter a "Proceeding"), or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding, by reason of the fact that he, or a person of whom he is the legal representative, is or was a Manager or officer of the Company or while a Manager or officer of the Company is or was serving at the request of the Company as a Manager, director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise shall be indemnified by the Company to the fullest extent permitted by the Delaware Act, as the same exist or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said law permitted the Company to provide prior to such amendment) against judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and reasonable expenses (including, without limitation, attorneys' fees) actually incurred by such person in connection with such Proceeding, and indemnification under this Article VIII shall continue as to a person who has ceased to serve in the capacity which initially entitled such person to indemnity hereunder.  The rights granted pursuant to this Article VIII shall be deemed contract rights, and no amendment, modification or repeal of this Article VIII shall have the effect of limiting or denying any such rights with respect to actions taken or Proceedings arising prior to any such amendment, modification or repeal.  It is expressly acknowledged that the indemnification provided in this Article VIII could involve indemnification for negligence or under theories of strict liability.

**Section 8.2  Advance Payment.**  The right to indemnification conferred in this Article VIII shall include the right to be paid or reimbursed by the Company the reasonable expenses incurred by a person of the type entitled to be indemnified under Section 8.1 who was, is or is threatened to be made a named defendant or respondent in a Proceeding in advance of the final disposition of the Proceeding and without any determination as to the person's ultimate entitlement to indemnification; provided, however, that the payment of such expenses incurred by any such person in advance of the final disposition of a Proceeding shall be made only upon delivery to the Company of a written affirmation by such Manager or officer of his good faith belief that he has met the standard of conduct necessary for indemnification under this Article VIII and a written undertaking, by or on behalf of such person, to repay all amounts so advanced if it shall ultimately be determined that such indemnified person is not entitled to be indemnified under this Article VIII or otherwise.

**Section 8.3  Indemnification of Employees and Agents.**  The Company, by adoption of a resolution of the Manager, may indemnify and advance expenses to an employee or agent of the Company to the same extent and subject to the same conditions under which it may indemnify and advance expenses to Manager and officers under this Article VIII; and the Company may indemnify and advance expenses to persons who are not or were not Manager, officers, employees or agents of the Company but who are or were serving at the request of the Company as a manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation,

14

partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise against any liability asserted against him and incurred by him in such a capacity or arising out of his status as such a person to the same extent that it may indemnify and advance expenses to Manager and officers under this Article VIII.

Section 8.4 **Appearance as a Witness.** Notwithstanding any other provision of this Article VIII, the Company may pay or reimburse expenses incurred by a Manager or officer in connection with his appearance as a witness or other participation in a Proceeding at a time when he is not a named defendant or respondent in the Proceeding.

Section 8.5 **Nonexclusivity of Rights.** The right to indemnification and the advancement and payment of expenses conferred in this Article VIII shall not be exclusive of any other right which a Manager, officer or other person indemnified pursuant to Section 8.3 may have or hereafter acquire under any law (common or statutory), the Certificate of Formation of the Company or this Agreement, agreement, vote of Members or disinterested Manager or otherwise.

Section 8.6 **Insurance.** The Company may purchase and maintain insurance, at its expense, to protect itself and any person who is or was serving as a Manager, officer, employee or agent of the Company or is or was serving at the request of the Company as a Manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise against any expense, liability or loss, whether or not the Company would have the power to indemnify such person against such expense, liability or loss under this Article VIII.

Section 8.7 **Member Notification.** To the extent required by law, any indemnification of or advance of expenses to a Manager or officer in accordance with this Article VIII shall be reported in writing to the Members within the 12-month period immediately following the date of the indemnification or advance.

Section 8.8 **Savings Clause.** If this Article VIII or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, the Company shall nevertheless indemnify and hold harmless each Manager, officer or any other person indemnified pursuant to this Article VIII as to costs, charges and expenses (including, without limitation, attorneys' fees), judgments, fines and amounts paid in settlement with respect to any action, suit or proceeding, whether civil, criminal, administrative or investigative, to the full extent permitted by any applicable portion of this Article VIII that shall not have been invalidated and to the fullest extent permitted by applicable law.

Section 8.9 **Outside Businesses.** Any Member or Affiliate thereof may engage in or possess an interest in other business ventures of any nature or description, independently or with others, similar or dissimilar to the business of the Company, and the Company and the Members shall have no rights by virtue of this Agreement in and to such independent ventures or the income or profits derived therefrom, and the pursuit of any such venture, even if competitive with the business of the Company, shall not be deemed wrongful or improper unless in direct violation of any covenant set forth herein or in any other agreement executed by any of the parties in connection herewith. No Member or Affiliate thereof shall be obligated to present any particular investment opportunity to the Company even if such opportunity is of a character that, if presented to the Company, could be taken by the Company, and any Member or Affiliate

15

thereof shall have the right to take for its own account (individually or as a partner, shareholder, fiduciary or otherwise) or to recommend to others any such particular investment opportunity.

## ARTICLE IX

## REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE MEMBERS

Section 9.1 **Representations and Warranties.** Each Member hereby represents and warrants to the Company and to the other Members that:

(a)    Such Member understands and acknowledges that such Member's respective interest in the Company has not been registered under the Securities Act or any state securities laws;

(b)    Such Member understands and acknowledges that its interest in the Company may not be sold unless it is registered under the Securities Act and applicable state securities laws, or pursuant to an exemption from such registration requirements;

(c)    The limitations on transfer contained in this Section 9.1 and in Article II of this Agreement create an economic risk that such Member is capable of bearing;

(d)    Such Member is acquiring its interest in the Company for investment and not with a view to the resale or distribution thereof;

(e)    All property contributed to the Company as part of such Member's Capital Contribution has been or will be contributed free and clear of all liens, pledges, claims, security interests, encumbrances and similar interests of any kind whatsoever;

(f)    If such Member is an entity, it is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization with all requisite power and authority to enter into this Agreement and to perform its obligations hereunder;

(g)    This Agreement constitutes the legal, valid and binding obligation of such Member enforceable against such Member in accordance with its terms;

(h)    No consents or approvals from, or notification of or filings with any governmental authority or other person or entity are required for such Member to enter into this Agreement. All action on the part of such Member necessary for the authorization, execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, have been duly taken; and

(i)    The execution and delivery of this Agreement by such Member and the consummation of the transactions contemplated hereby by such Member do not conflict with or contravene the provisions of any organizational document, agreement or instrument by which such Member or such Member's properties are bound or any law, rule, regulation, order or decree to which such Member or such Member's properties are subject.

16

## Section 9.2  Confidentiality.

(a)    Confidential Information.  Each Member shall, except as may be specifically permitted hereunder, (i) use its best efforts to protect the proprietary or confidential information of the Company, (ii) not disclose to any other person or entity the existence or terms of this Agreement, or any other contract or agreement between the Company, the Members or any Affiliate of such Member (as defined below) unless all Members have consented thereto, and (iii) not use the confidential and proprietary information of the others except to the extent and for the purposes contemplated in this Agreement or permitted by any other contract or agreement between the Company, the Members or any of the Members' Affiliates.  As used herein, "Affiliate" shall mean any person or entity that directly or indirectly controls, is controlled by, or is under common control with, a Member.  For the purposes of the definition of "Affiliate" only, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through ownership of voting securities, by contract or otherwise.

(b)    Exceptions.  The obligations of confidentiality and nonuse imposed under this Section 9.2 shall not apply to any confidential or proprietary information of the disclosing party which:

(i)    is or becomes public or available to the general public otherwise than through any act or default of the non-disclosing party;

(ii)    is obtained or derived from a third party which, to the best knowledge of the non-disclosing party, is lawfully in possession of such information and does not hold such information subject to any confidentiality or nonuse obligations; or

(iii)    is required to be disclosed by one of the parties pursuant to applicable law, or under a government or court order; provided, however, that (A) the obligations of confidentiality and nonuse shall continue to the fullest extent not in conflict with such law or order, and (B) if and when a party is required to disclose such confidential or proprietary information pursuant to any such law or order, such party shall use its best efforts to (1) give the other party prompt notice of such requirement so as to permit such party time in which to appeal, oppose or take other protective action and (2) obtain a protective order or take such other actions as will prevent or limit, to the fullest extent possible, public access to, or disclosure of, such confidential or proprietary information.

## ARTICLE X

## MISCELLANEOUS

Section 10.1  Notices.  All notices, requests, demands and other communications called for or contemplated by this Agreement shall be in writing and shall be deemed to have been duly given or delivered when mailed by United States certified or registered mail, postage prepaid, addressed to the Members, their successors in interest or their assignees, and to any attorney-in-fact appointed by a Member pursuant to Section 2.1 of this Agreement, at the addresses set forth hereinabove or at such other addresses as they may from time to time designate by written notice in the aforesaid manner.

**Section 10.2  Attorneys' Fees.** If any litigation is commenced between the parties hereto or their personal representatives concerning any provision of this Agreement or the rights and duties of any person in relation thereto, the party or parties prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to actual costs and expenses (including without limitation expert witness fees) and to a reasonable sum as and for his or their attorneys' fees in such litigation. This Section 10.2 shall not apply to arbitration proceedings pursuant to Section 10.8 of this Agreement or to any court proceeding in aid of such arbitration or to confirm the arbitrator's award.

**Section 10.3  Entire Agreement.** This Agreement constitutes the entire understanding between the Members with respect to the subject matter hereof, superseding all negotiations, prior discussions and preliminary agreements or understandings, written or oral.

**Section 10.4  Power of Attorney.** Each Member irrevocably constitutes and appoints the person or any of the persons that may be acting as Manager from time to time as his attorney-in-fact, in his name, place and stead to make, execute, acknowledge, file and record:

(a)  Any instrument that may be required to be recorded or filed by the Company;

(b)  All documents that may be required to effectuate the dissolution and termination of the Company; and

(c)  Any other document that may be required to be filed or recorded by the Company or which the Manager deems advisable.

It is expressly understood and agreed that the grant of this power of attorney is coupled with an interest and shall survive the delivery of an assignment of a Company interest. In the event of any conflict between the provisions of this Agreement or any amendment to it and any document executed, acknowledged, sworn to, or filed by the Manager under this power of attorney, this Agreement and its amendments shall govern.

**Section 10.5  Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective executors, administrators, successors in interest and assigns.

**Section 10.6  Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall constitute a binding and enforceable agreement, but all of which shall together constitute one and the same instrument.

**Section 10.7  Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of Delaware.

**Section 10.8  Arbitration.**

(a)  Agreement to Arbitrate. Any controversy, dispute or claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement, including any claim based on contract, tort or statute, shall be settled, upon the written request of any Member, before a sole arbitrator conducted in Los Angeles, California, or such other location upon which the parties may mutually agree, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal court having jurisdiction thereof. Any

18

controversy concerning whether a dispute is an arbitrable dispute shall be determined by the arbitrator. The parties intend that this agreement to arbitrate be valid, specifically enforceable and irrevocable. The designation of a situs or specifically a governing law for this agreement or the arbitration shall not be deemed an election to preclude application of the Federal Arbitration Act, if it would be applicable.

(b)    Selection of Arbitrator. The sole arbitrator shall be an attorney admitted to practice in New York or California who has had experience in the field of licensing intellectual property rights in the entertainment industry, but has had no prior relationship with any Member or with the Estate of Marilyn Monroe. The Members shall endeavor to agree upon the selection of the sole arbitrator, but if no arbitrator has been agreed upon within seventy-five (75) days following receipt of a Notice of Objection pursuant to Section 5.10 or Section 5.11 of this Agreement, or within fifteen (15) days following receipt of a written request for arbitration pursuant to this Section 10.8(a) of this Agreement, then each Member shall submit the name of a proposed arbitrator meeting the qualifications set forth above, and the arbitrator shall be chosen by lot from the names submitted.

(c)    Expenses. The arbitrator may, but need not, award to the prevailing party in any arbitration proceeding commenced hereunder, the prevailing party's costs and expenses (including without limitation expert witness expenses and reasonable attorneys' fees) of investigating, preparing and presenting or defending against such arbitration claim or cause of action, and, in the event that such an award of costs and expenses is made, the court shall include such award in its judgment for the prevailing party.

Section 10.9  **Additional Definitions.** Unless the context otherwise requires, the terms defined in this Section 10.9 shall, for the purposes of this Agreement, have the meanings herein specified.

"Capital Account" means, with respect to any Member, the account maintained for such Member in accordance with the provisions of Section 3.6 hereof.

"Capital Contribution" means, with respect to any Member, the aggregate amount of money and the initial Gross Asset Value of any property (other than money) contributed to the Company "Certificate" hereof with respect to such Member's Interest.

"Certificate" means the Certificate of Formation of the Company and any and all amendments thereto and restatements thereof filed on behalf of the Company with the office of the Secretary of State of the State of Delaware pursuant to the Delaware Act.

"Depreciation" means, for each Fiscal Year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset for such Fiscal Year or other period; provided, however, that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Fiscal Year or other period, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization or other cost recovery deduction with respect to such asset for such Fiscal Year or other period bears to such beginning adjusted tax basis; and provided further, that if the federal income tax depreciation, amortization or other cost recovery deduction for such Fiscal Year or other period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Manager.

19

"Fiscal Year" means (i) the period commencing upon the formation of the Company and ending on December 31, 2000, (ii) any subsequent twelve (12) month period commencing on January 1 and ending on December 31, or (iii) any portion of the period described in clause (ii) of this sentence for which the Company is required to allocate Profits, Losses and other items of Company income, gain, loss or deduction pursuant to Article IV hereof.

"Gross Asset Value" means, with respect to any asset, such asset's adjusted basis for federal income tax purposes, except as follows:

(a)     the initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as agreed to by the contributing Member and the Tax Matters Member;

(b)     the Gross Asset Value of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by the Tax Matters Member, as of the following times: (i) the distribution by the Company to a Member of more than a *de minimis* amount of Company assets as consideration for such Member's Interest; (ii) the contribution to the Company by a Member of more than a *de minimis* amount of assets in exchange for an Interest; and (iii) the liquidation of the Company within the meaning of Treasury Regulation § 1.704-1(b)(2)(ii)(g); provided, however, that adjustments pursuant to clause (i) or (ii) of this sentence shall be made only if the Tax Matters Member reasonably determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members in the Company; and

(c)     the Gross Asset Value of any Company asset distributed to any Member shall be the gross fair market value of such asset on the date of distribution, as determined by the Tax Matters Member.

If the Gross Asset Value of an asset has been determined or adjusted pursuant to paragraph (a) or paragraph (b) above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

"Interest" means a Member's share of the profits and losses of the Company and a Member's rights to receive distributions of the Company's assets in accordance with the provisions of this Agreement and the Delaware Act.

"Investment Company Act" means the Investment Company Act of 1940, as amended.

"Net Cash Flow" means, for each Fiscal Year or other period of the Company, the gross cash receipts of the Company from all sources, but excluding any amounts, such as gross receipts taxes, that are held by the Company as a collection agent or in trust for others or that are otherwise not unconditionally available to the Company, less all amounts paid by or for the account of the Company during the same Fiscal Year or other period (including, without limitation, payments of principal and interest on any Company indebtedness and expenses reimbursed to the Members under Section 5.9 hereof), and less any amounts determined by the Manager to be necessary to provide a reasonable reserve for working-capital needs or any other contingencies of the Company. Net Cash Flow shall be determined in accordance with the cash

20

receipts and disbursements method of accounting and otherwise in accordance with generally accepted accounting principles, consistently applied. Net Cash Flow shall not be reduced by depreciation, amortization, cost recovery deductions, depletion, similar allowances or other non-cash items, but shall be increased by any reduction of reserves previously established.

"Permitted Disposition" means:

(i)    A Transfer by any Member who is an individual to his or her spouse, adult lineal descendants, the adult spouses of the Member's lineal descendants or a trust, partnership, limited liability company or a corporation solely for the benefit of the Member, the Member's spouse and/or the Member's minor or adult lineal descendant and/or their spouses;

(ii)    A Transfer of a Member's Interest to the Company;

(iii)    A Transfer, in the event of the death of any Member who is an individual, to his or her (a) personal representatives (in their capacities as such), (b) estate and/or (c) named beneficiaries;

(iv)    A Transfer by a Member which is a trust to the beneficiaries of such trust pursuant to the terms of the agreement or declaration of trust relating to such trust;

(v)    A Transfer by a Member which is an estate to the beneficiaries of such estate pursuant to a court order;

(vi)    A Transfer by a Member which is a partnership to one or more of its partners, by a Member which is a limited liability company to one or more of its members, or by a Member which is a corporation to one or more of its shareholders; or

(vii)    A Transfer of a Member's Interest by a Member to one or more Affiliates of such Member if such Transfer is approved in writing by the Manager prior to such Transfer.

"Profits" and "Losses" means, for each Fiscal Year, an amount equal to the Company's taxable income or loss for such Fiscal Year, determined in accordance with §703(a) of the Code (but including in taxable income or loss, for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to §703(a)(1) of the Code), with the following adjustments:

(a)    any income of the Company exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be added to such taxable income or loss;

(b)    any expenditures of the Company described in §705(a)(2)(B) of the Code (or treated as expenditures described in §705(a)(2)(B) of the Code pursuant to Treasury Regulation § 1.704-1(b)(2)(iv)(i)) and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be subtracted from such taxable income or loss;

(c)    in the event the Gross Asset Value of any Company asset is adjusted in accordance with paragraph (ii) or paragraph (iii) of the definition of "Gross Asset Value" above,

21

the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(d)    gain or loss resulting from any disposition of any asset of the Company with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the asset disposed of, notwithstanding that the adjusted tax basis of such asset differs from its Gross Asset Value; and

(e)    in lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year or other period, computed in accordance with the definition of "Depreciation" above.

"Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"Tax Matters Member" shall be the Manager.

"Transfer" shall have the meaning set forth in Section 2.5 of the Agreement. The terms "Transferring," "Transferor," "Transferee" and "Transferred" shall have meaning correlative to the meaning of "Transfer."

"Treasury Regulations" means the income tax regulations, including temporary regulations, promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

Section 10.9  **Heading.** The headings and subheadings in this Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

IN WITNESS WHEREOF, this Agreement has been executed by the Initial Member as of the date first written above.

---

Anna Strasberg, Administrator C.T.A. of the Estate of Marilyn Monroe, Deceased

22

## SCHEDULE A

### Initial Capital Contributions and Sharing Percentages

|   | Member and Address | Capital Contributed | Agreed Value | Sharing Percentages |
|---|---|---|---|---|
| 1. | Anna Strasberg, Administrator C.T.A. of the Estate of Marilyn Monroe, Deceased | All remaining assets of Estate of Marilyn Monroe including without limitation the assets listed as Exhibit "1". |  | 100% |

# Exhibit 5

## FIRST SUPPLEMENT TO AND AMENDMENT OF LIMITED
## LIABILITY COMPANY AGREEMENT

### MARILYN MONROE LLC

#### a Delaware Limited Liability Company

This First Supplement to and Amendment of Limited Liability Company Agreement (the "Supplement") is entered into as of _____, 2000, by and among Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, Anna Strasberg, as Executor of the Estate of Lee Strasberg and the Anna Freud Centre (collectively the "Members"); and Anna Strasberg, as Manager of Marilyn Monroe LLC.

Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, formed a limited liability company known as Marilyn Monroe LLC (the "Company") under the laws of the State of Delaware for the purposes and on the terms and conditions set forth in a Limited Liability Company Agreement dated as of _____, 2000 (the "Agreement"). Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, and Anna Strasberg, as Manager of Marilyn Monroe LLC, now (1) have agreed to the admission of two new members, namely, Anna Strasberg, as Executor of the Estate of Lee Strasberg, deceased, and the Anna Freud Centre; (2) have agreed to the transfer of the limited liability company interests of Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, to Anna Strasberg, as Executor of the Estate of Lee Strasberg, deceased, and the Anna Freud Centre; (3) have agreed to the withdrawal of Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, as a Member; and (4) desire to set forth in writing the modifications to the Agreement.

Accordingly, the modifications to the Agreement are hereby stated in this Supplement, and the Members agree as follows:

1.      In executing this Supplement Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, and Anna Strasberg, as Manager of Marilyn Monroe LLC, consent, in accordance with the provisions of Section 2.1 of the Agreement, to the admission of two new Members, namely Anna Strasberg, as Executor of the Estate of Lee Strasberg, deceased, and the Anna Freud Centre, and consent, in accordance with the provisions of Section 2.1 of the Agreement, to the transfer of the interests in Marilyn Monroe LLC held by Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, as follows:  seventy-five percent (75%) thereof to Anna Strasberg, as Executor of the Estate of Lee Strasberg, deceased, and twenty-five percent (25%) thereof to the Anna Freud Centre.

2.      In executing this supplement, Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, Anna Strasberg, as Executor of the Estate of Lee Strasberg, deceased, Anna Strasberg, as Manager of Marilyn Monroe LLC, and the Anna Freud Centre agree to the withdrawal of Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased, as a Member of Marilyn Monroe LLC without, however, affecting the Capital

Exhibit 5

Contribution heretofore made to the Company by Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, which shall hereafter remain an asset of the Company and the interests in which shall hereafter be divided as set forth in paragraph "1" above. The Capital Account of each remaining Member shall hereafter reflect the aforesaid division of the Capital Contribution made by Anna Strasberg as Administrator C.T.A. of the Estate of Marilyn Monroe.

3.      In executing this Supplement, Anna Strasberg, as Executor of the estate of Lee Strasberg, deceased, and the Anna Freud Centre, agree, in accordance with the provisions of Section 2.1 of the Agreement, to be bound by the terms and provisions of the Agreement as modified by this Supplement.

4.      Schedule A to the Agreement is hereby amended in its entirety as follows:

## SCHEDULE A

## SHARING PERCENTAGES

|  | Member | Sharing Percentages |
|---|---|---|
| 1. | Anna Strasberg, as Executor of the Estate of Lee Strasberg, deceased | 75% |
| 2. | The Anna Freud Centre | 25% |

IN WITNESS WHEREOF, the Members and Manager have executed this First Supplement to and Amendment of Limited Liability Company Agreement as of the date first shown above.

MEMBERS:

_____
Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, deceased

_____
Anna Strasberg, as Executor of the estate of Lee Strasberg, deceased

THE ANNA FREUD CENTRE

By:  _____
Its:  _____

MANAGER:

_____

Anna Strasberg

# Exhibit 6

## ASSIGNMENT OF MEMBER'S INTEREST

## MARILYN MONROE LLC

### a Delaware Limited Liability Company

Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, Deceased (the "Estate"), hereby assigns the Member's Interest of the Estate in Marilyn Monroe LLC, as follows:

75% to Anna Strasberg, as Executor of the Estate of Lee Strasberg, Deceased

25% to the Anna Freud Center

The aforesaid assignment is authorized by the order of the Surrogate's Court for the County of New York, State of New York, entered on _____, 2000.

IN WITNESS WHEREOF, the undersigned has executed this Assignment as of _____, 2000.

_____
ANNA STRASBERG, Administrator C.T.A.
of the Estate of Marilyn Monroe, Deceased

## CONSENT TO ASSIGNMENT

The undersigned, as Members of Marilyn Monroe LLC, hereby consent, in accordance with the provisions of Section 2.1 of the Limited Liability Company Agreement of Marilyn Monroe LLC, to the above assignment.

IN WITNESS WHEREOF, the undersigned have executed this Consent to Assignment as of the dates set forth below:

Dated: _____, 2000

_____
ANNA STRASBERG, Administrator C.T.A.
of the Estate of Marilyn Monroe, Deceased

Dated: _____, 2000

_____
ANNA STRASBERG, Executor of the
Estate of Lee Strasberg, Deceased

Dated: _____, 2000

THE ANNA FREUD CENTER

By:_____
Its:_____

Exhibit 6

## ACKNOWLEDGMENT OF RECEIPT OF ASSIGNMENT

### AND

### CONSENT TO ASSIGNMENT

The undersigned, as Manager of Marilyn Monroe LLC, hereby acknowledges receipt of the above Assignment and Consent to Assignment.

IN WITNESS WHEREOF, the undersigned has executed this Acknowledgement of Receipt of Assignment and Consent to Assignment as of _____, 2000.

_____
ANNA STRASBERG, Manager of
Marilyn Monroe LLC

# Exhibit 7

## CERTIFICATE OF FORMATION

### OF

### MARILYN MONROE LLC

#### a Delaware Limited Liability Company

This Certificate of Formation of MARILYN MONROE LLC (the "LLC"), dated _____, 2000, is being duly executed and filed by Anna Strasberg, Administrator C.T.A. of the Estate of Marilyn Monroe, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del. C. § 18-101, *et seq*).

FIRST.  The name of the limited liability company formed hereby is:

MARILYN MONROE LLC.

SECOND.  The address of the registered office of the LLC in the State of Delaware is c/o National Registered Agents, Inc., 9 East Loockerman Street, Dover, County of Kent, DE 19901.

THIRD.  The name and address of the registered agent for service of process on the LLC in the State of Delaware is National Registered Agents, Inc., 9 East Loockerman Street, Dover, County of Kent, DE 19901.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written.

_____
Anna Strasberg, Administrator C.T.A. of the
Estate of Marilyn Monroe,
Authorized Person

# Exhibit 8

A:106.txt[1]

At Chambers of the Surrogate's Court
in and for the County of New York,
held at 31 Chambers Street, in said
County, on the 25 — day of June,
1990

PRESENT:

HON. MARIE M. LAMBERT
Surrogate

- - - - - - - - - - - - - - - - - - - X

Proceeding for Construction of
The Last Will of                                    :

MARILYN MONROE,                                :

                    Deceased.                        :

                                                      :

- - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of              :
ANNA STRASBERG, Executrix of the
Estate of Lee Strasberg, to be Appointed         :
Administratrix, c.t.a., of the Estate of
MARILYN MONROE, Deceased.

- - - - - - - - - - - - - - - - - - - X

In the Matter of the Application of              :
THE ANNA FREUD CENTRE to Appoint a
Successor Fiduciary of the Estate of             :
MARILYN MONROE, Deceased.
                                                      :

- - - - - - - - - - - - - - - - - - - X

File No. 2781/62

ORDER TO COMPEL

FIDUCIARIES TO

ACCOUNT

CERTIFICATES
FILED

Marilyn Monroe, having died on August 5, 1962, a

resident of the City, County and State of New York, and

Exhibit 8

having left a Will dated January 14, 1961 (the "Will") in which she named Aaron Frosch as Executor; and

The Will having been admitted to probate by this Court on October 30, 1962 and Letters Testamentary having been issued to Aaron Frosch on the same date; and

The Anna Freud Centre having filed with this Court a verified petition dated March 13, 1989 for the removal of Aaron Frosch as Executor and for the appointment of a successor fiduciary; and

Aaron Frosch having died on April 29, 1989 while such application was pending; and

The Anna Freud Centre having file an amended verified petition dated June 28, 1989 for the appointment of Joseph D. Garon as Administrator, c.t.a.; and

Anna Strasberg having filed a verified answer and cross-petition dated July 6, 1989 for the appointment of herself as Administratrix, c.t.a. of the Estate of Marilyn Monroe;

And this Court having considered the petition and amended petition, and having signed a decree on July 20, 1989 appointing Anna Strasberg Administratrix, c.t.a. of the Estate of Marilyn Monroe; and

2

Letters Testamentary issued to Aaron Frosch having been revoked by this Court on July 20, 1989 and Letters of Administration with Will Annexed having been issued to Anna Strasberg on the same date; and

Anna Strasberg, Administratrix, c.t.a. of the Estate of Marilyn Monroe, having filed with this Court a verified petition, together with an affirmation of Irving P. Seidman, both dated July 28, 1989, for construction of Articles FIFTH and SIXTH of the Will and Article SIXTH of the Last Will and Testament of Dr. Marianne Kris dated June 8, 1976; and

This Court having rendered a decision published in the New York Law Journal on March 12, 1990, finding The Anna Freud Centre to be the legatee and properly entitled to (i) the remainder of the preresiduary trust under Article FIFTH of the Monroe Will, and (ii) 25% of the entire residuary estate under Article SIXTH of the Monroe Will; and

A decree having been signed by this Court on April 30, 1990 declaring The Anna Freud Centre to be the proper legatee of the bequests under Articles FIFTH and SIXTH of the Monroe Will; and

A conference on notice having been held before this Court, at which The Anna Freud Centre requested that (i) the Estate of Aaron Frosch be required to file a final accounting,

3

and (ii) Anna Strasberg, Administratrix, c.t.a. of the Estate of Marilyn Monroe, be required to file an intermediate accounting for the period from the date of her appointment as Administratrix, c.t.a. to date, and Anna Strasberg, Administratrix, c.t.a., having joined The Anna Freud Centre's application for an accounting by the Estate of Aaron Frosch, and this Court having taken such request under advisement; and

A conference on notice having been held before this Court on May 15, 1990, at which The Anna Freud Centre renewed its application, and Anna Strasberg, Administratrix, c.t.a., having again joined in the application with respect to a final accounting by the Estate of Aaron Frosch, and this Court having granted the application in its entirety and having orally directed (i) the Estate of Aaron Frosch to file a final accounting and (ii) Anna Strasberg, Administratrix, c.t.a. to file an intermediate accounting,

IT IS HEREBY,

ORDERED, that Marjorie N. Frosch, as Executrix of the Estate of Aaron Frosch, file and judicially settle a final accounting with respect to the Estate of Marilyn Monroe within thirty (30) days after service of a copy of this order with notice of entry thereon; and it is further

4

ORDERED, that Anna Strasberg, Administratrix, c.t.a., file and judicially settle an intermediate accounting for the period from July 20, 1989 through May 31, 1990 within thirty (30) days after service of a copy of this order with notice of entry thereon.

_Surrogate_

# Exhibit 9

11683-001

STATE OF NEW YORK SURROGATE'S COURT
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
Proceeding for Construction of                    :
The Last Will of                                   :        File No. 2781/62
                                                   :
        MARILYN MONROE,                            :
                            Deceased.              :        STIPULATION
                                                   :
- - - - - - - - - - - - - - - - - - - - X
In the Matter of the Application of           :
ANNA STRASBERG, Executrix of the
Estate of Lee Strasberg, to be Appointed      :
Administratrix, c.t.a., of the Estate of
MARILYN MONROE, Deceased.                     :

- - - - - - - - - - - - - - - - - - - - X
In the Matter of the Application of           :
THE ANNA FREUD CENTRE to Appoint a
Successor Fiduciary of the Estate of          :
MARILYN MONROE, Deceased.
                                              :
- - - - - - - - - - - - - - - - - - - - X

        WHEREAS this Court, on June 25, 1990, signed an

Order to Compel Fiduciaries to Account; and

        WHEREAS Marjorie N. Frosch, as Executrix of the

Estate of the Estate of Aaron Frosch (the deceased executor

of the Estate of Marilyn Monroe), had theretofore filed a

final accounting with respect to the Estate of Marilyn

Monroe; and

        WHEREAS the parties had therefore agreed that Anna

Strasberg, as administratrix, c.t.a., of the Estate of

Marilyn Monroe, need not file her intermediate accounting

Exhibit 9

with respect to the Estate of Marilyn Monroe until after the final settlement of the Frosch accounting;  NOW THEREFORE,

IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned counsel for the parties, that the parties respectfully request the Court to vacate the Order to Compel Fiduciaries to Account of June 25, 1990.

Dated:    New York, N.Y.
          August 7, 1990


_____
Paul, Weiss, Rifkind, Wharton & Garrison
Attorneys for The Anna Freud Centre,
   and for Anton O. Kris and
   Anna Kris Wolff as Executors of the
   Estate of Marianne Kris


_____
Irving P. Seidman, P.C.
Attorneys for Anna Strasberg


_____
Stroock & Stroock & Lavan
Attorneys for Marjorie N. Frosch
   as Executrix of the
   Estate of Aaron Frosch

2

# Exhibit 10

1  GIBSON, DUNN & CRUTCHER LLP
   Randy M. Mastro, Esq.
2  200 Park Avenue
   New York, New York  10166
3  Telephone: (212) 351-4000

4  Attorneys for Anna Strasberg, Administrator C.T.A.

5

6  SURROGATE'S COURT

7  COUNTY OF NEW YORK

8

9  ACCOUNTING BY                    FILE NO. P2781/1962

10 MARJORIE M. FROSCH               RECEIPT AND RELEASE

11 EXECUTRIX OF THE ESTATE OF AARON
   R. FROSCH, EXECUTOR
12
   of the ESTATE OF MARILYN MONROE,
13
                    Deceased
14

15

16      The undersigned, being of full age, sound mind and under no

17 disability, and entitled to receive the residue of the estate of the

18 above named decedent as successor Administratrix C.T.A. acknowledges

19 that Marjorie M. Frosch has fully and satisfactorily accounted for

20 all assets of the estate; and acknowledges receipt of money

21 transferred in the sum of $33,904.18, plus interest in the sum of

22 $469.48, for a total of $34,373.66.  The undersigned releases and

23 discharges Marjorie M. Frosch from all liability for any and all

24 matters relating to or derived from the administration of the

25 estate; and authorizes the Surrogate to make and enter a decree

26 settling the account and fully releasing and discharging the

27 ficuciary named above as to all matters in these proceedings.

28
                         Exhibit 10

Gibson, Dunn &
Crutcher LLP

Date: 10·18·00

Anna Strasberg,
Administratrix C.T.A.

STATE OF NEW YORK      )
COUNTY OF  New York    )  ss.:

On  10·1 8      , 2000, before me personally appeared

ANNA Strasberg                to me known and known to me to
be the person described in and who executed the foregoing Receipt
and Release and duly acknowledged the execution thereof.

Notary Public
Commission Expires: 7·6·2000
(Affix Notary Stamp of Seal)

PATRICIA ROSADO
Notary Public, State of New York
No. 01RO5014712
Qualified in New York County
Commission Expires July 6, 2001

Name of Attorney: Randy M. Mastro, Esq. Tel. No. 212-351-4000

Address of Attorney: Gibson, Dunn & Crutcher LLP, 200 Park Avenue,
New York, NY 10166

20088510_1.DOC

Gibson, Dunn &
Crutcher LLP

SURROGATE'S COURT
STATE OF NEW YORK: COUNTY OF NEW YORK

In the Matter of the Judicial Settlement of the Account
of the Proceedings of Anna Strasberg, Administratrix
C.T.A. of the estate of

Marilyn Monroe,

Deceased.

P2781/1962

PETITION FOR JUDICIAL SETTLEMENT OF FINAL
ACCOUNT OF ADMINISTRATRIX C.T.A. AND FOR
AN ORDER AUTHORIZING PETITIONER TO (1)
EXECUTE LIMITED LIABILITY AGREEMENT; 2)
ESTABLISH AND OPERATE LIMITED LIABILITY
COMPANY; 3) USE ESTATE ASSETS TO
ESTABLISH LIMITED LIABILITY COMPANY; 4)
DISTRIBUTE INTERESTS TO RESIDUARY
BENEFICIARIES 5) MAKE PAYMENT OF
ATTORNEYS FEES; AND 6) FOR ORDER
VACATING ORDER TO COMPEL FIDUCIARIES TO
ACCOUNT; AND, DISCHARGE OF PRIOR
EXECUTOR

GIBSON, DUNN & CRUTCHER
Attorneys for Petitioner
200 Park Avenue
New York, New York 10166-0193

20104343_1.DOC